1  BRYAN A. MERRYMAN (SBN 134357)
   bmerryman@whitecase.com
2  CATHERINE S. SIMONSEN (SBN 307325)
   catherine.simonsen@whitecase.com
3  WHITE & CASE LLP
   555 S. Flower Street, Suite 2700
4  Los Angeles, CA  90071-2433
   Telephone:  (213) 620-7700
5  Facsimile:  (213) 452-2329

6  Attorneys for Defendant
   QUICK QUACK CAR WASH HOLDINGS, LLC
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11

12 RANDY CURRAN, individually and on behalf          Case No.
   of all others similarly situated,
13
                    Plaintiff,                        **EXHIBIT 1 TO NOTICE OF**
14                                                    **REMOVAL**
        v.
15
   QUICK QUACK CAR WASH HOLDINGS,
16 LLC, a Delaware Limited Liability Company;
   and Does 1-50 inclusive,
17
                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
                                    EXHIBIT 1 TO NOTICE OF REMOVAL

## TABLE OF CONTENTS

**EXHIBIT 1:** Documents Filed in State Court Action

**Description**                                                                                                      **Page**

Civil Case Cover Sheet……………………………………………………………………..3-4

Class Action Complaint…………………………………………………………………...5-53

Summons………………………………………………………………………………..54

Declaration of Randy Curran…………………………………………………………...55-56

Notice of Case Management Conference……………………………………………..57-58

Notice of Consent by All Parties to Electronic Service …………………………………...59-62

Proof of Service of (1) Notice and Order of Complex Case Determination and (2) Notice of Case Management Conference and Complex Case Management Procedures Including COVID -19 Protocols…………………………………………………………………………………63-74

Defendant Quick Quack Car Wash Holding, LLC's Motion to Compel Arbitration and to Dismiss or Stay Action………………………………………………………………………..75-88

Declaration of Joseph Steele in Support of Motion to Compel Arbitration and to Dismiss or Stay Action and Exhibits 1-5 …………………………………………………………………89-117

Declaration of Johnathan Souza in Support of Motion to Compel Arbitration and to Dismiss or Stay Action ……………………………………………………........................118-120

Plaintiff's Opposition to Motion to Compel Arbitration and to Dismiss or Stay Action…………………………………………………………………………………...121-128

Declaration of Randy Curran in Opposition to Motion to Compel Arbitration and to Dismiss or Stay Action………………………………………………………………………………129-131

Plaintiff's Objections to the Joseph Steele and Johnathan Souza Declarations…………132-134

Proof of Service…………………………………………………………………………...135

Defendant Quick Quack Car Wash Holding, LLC's Reply in Support of Motion to Compel Arbitration and to Dismiss or Stay Action……………………………………………136-151

Supplemental Declaration of Joseph Steele in Support of Motion to Compel Arbitration and to Dismiss or Stay Action………………………………………………………………152-159

- 1 -

EXHIBIT 1 TO NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Declaration of Bryan Merryman in Support of Motion to Compel Arbitration and to Dismiss or Stay Action……………………………………………………………………160-165

Notice of Lodging of Electronic Sound Recordings……………………………………166-168

Defendant Quick Quack Car Wash Holding, LLC's Objections to the Declaration of Randy Curran……………………………………………………………………………..169-171

Defendant Quick Quack Car Wash Holding, LLC's Response to Plaintiff's Objections to the Joseph Steele and Johnathan Souza Declarations……….. …………………………...172-177

Joint Stipulation and Order to Extend Time for Defendant Quick Quack Car Wash Holdings, LLC to Respond to Plaintiff Randy Curran's Complaint by 30 Days, to November 30, 2020..178-181

Minute Order ……………………………………………………………………182-183

Second Joint Stipulation and Order to Extend Time for Defendant Quick Quack Car Wash Holdings, LLC to Respond to Plaintiff Randy Curran's Complaint by 23 Days, to December 23, 2020………………………………………………………………………..184-187

Plaintiff's First Amended Complaint (December 21, 2020)……………………………188-218

15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1 TO NOTICE OF REMOVAL

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

James T. Hannink (131747)
Zach P. Dostart (255071)
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530, La Jolla, CA 92037
TELEPHONE NO.: (858) 623-4200    FAX NO.: (858) 623-4299
ATTORNEY FOR (Name): Plaintiff Randy Curran

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME: Gordon D. Schaber

**FILED/ENDORSED**

**JUL 2 4 2020**

CASE NAME:
Curran v. Quick Quack Car Wash Holdings, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 34-2020-00282263 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [X] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties    d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief   c.[ ]punitive
4. Number of causes of action (specify): 1) False Advertising; 2) Violation of CLRA; and 3) Unfair Competition
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 24, 2020

Zach P. Dostart
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

BY FAX

**EXHIBIT 1 - Page 3**

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**
## EXHIBIT 1 - Page 4

FILED/ENDORSED

JUL 2 4 2020

By: _____T. Crowther_____
                Deputy Clerk

1   JAMES T. HANNINK (131747)
    jhannink@sdlaw.com
2   ZACH P. DOSTART (255071)
    zdostart@sdlaw.com
3   DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Drive, Suite 530
4   La Jolla, California 92037-1474
    Tel:  858-623-4200
5   Fax:  858-623-4299

6   Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SACRAMENTO

10

11  RANDY CURRAN,                          CASE NO. 34-2020-00282263
    individually and on behalf of all others
12  similarly situated,                    CLASS ACTION

13              Plaintiff,                  COMPLAINT FOR:

14  vs.                                     (1) FALSE ADVERTISING (BASED ON
                                            VIOLATION OF THE CALIFORNIA
15  QUICK QUACK CAR WASH HOLDINGS,          AUTOMATIC RENEWAL LAW)
    LLC, a Delaware limited liability company;   [Bus. & Prof. Code, § 17600 et seq. and
16  and DOES 1-50, inclusive,              § 17535];

17              Defendants.                 (2) VIOLATION OF THE CALIFORNIA
                                            CONSUMERS LEGAL REMEDIES ACT
18                                          [Civ. Code, § 1750 et seq.]; and

19                                          (3) UNFAIR COMPETITION
                                            [Bus. & Prof. Code, § 17200 et seq.].
20

21                                          DEMAND FOR JURY TRIAL

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

EXHIBIT 1 - Page 5

**INTRODUCTION**

1.    This class action complaint alleges that defendant Quick Quack Car Wash Holdings,  LLC ("Quick Quack") violates California law in connection with a subscription program operated under the name Unlimited Car Wash Membership (the "Membership").  Among other things, Quick Quack enrolls consumers in the Membership program without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported membership charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of California's False Advertising Law; the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"); and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

**THE PARTIES**

2.    Plaintiff Randy Curran ("Plaintiff") is an individual residing in Sacramento County, California.

3.    Plaintiff is informed and believes and thereon alleges that defendant Quick Quack Car Wash Holdings,  LLC ("Quick Quack") is a limited liability company organized under the laws of Delaware and has its principal place of business in Roseville, California.  Quick Quack has car wash locations throughout the State of California in addition to other locations within the United States.

4.    Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known.  Plaintiff alleges on information and belief that each of the DOE defendants is affiliated in some respect with the named defendant and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants.  For ease of reference, Plaintiff will refer to the named defendant and the DOE defendants collectively as "Defendants."

2

CLASS ACTION COMPLAINT    **EXHIBIT 1 - Page 6**

**VENUE**

5.     Venue is proper in this judicial district because Defendants do business in this judicial district and a material part of the complained of conduct occurred in this judicial district.

**SUMMARY OF APPLICABLE LAW**

6.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 *et seq.* (the California Automatic Renewal Law or "ARL").) (Unless otherwise stated, all statutory references are to the Business & Professions Code). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 1 at p. 4.)

7.     The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 2 at p. 8.)

8.     The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a.     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal

3

1  proximity, to the request for consent to the offer.  For this purpose, "clear and conspicuous" means

2  "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding

3  text of the same size, or set off from the surrounding text of the same size by symbols or other

4  marks, in a manner that clearly calls attention to the language." (§ 17601(c).)  "In the case of an

5  audio disclosure, 'clear and conspicuous' … means in a volume and cadence sufficient to be

6  readily audible and understandable." (*Ibid.*)  The statute defines "automatic renewal offer terms"

7  to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or

8  purchasing agreement will continue until the consumer cancels; (2) the description of the

9  cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the

10  consumer's credit or debit card or payment account with a third party as part of the automatic

11  renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and

12  the amount to which the charge will change, if known; (4) the length of the automatic renewal

13  term or that the service is continuous, unless the length of the term is chosen by the consumer; and

14  (5) the minimum purchase obligation, if any.  (Bus. & Prof. Code § 17601(b).)

15      b.    Charge the consumer's credit or debit card or the consumer's account with a

16  third party for an automatic renewal or continuous service without first obtaining the consumer's

17  affirmative consent to the agreement containing the automatic renewal offer terms or continuous

18  service offer terms, including the terms of an automatic renewal offer or continuous service offer

19  that is made at a promotional or discounted price for a limited period of time.  (Bus. & Prof. Code

20  § 17602(a)(2).)

21      c.    Fail to provide an acknowledgment that includes the automatic renewal or

22  continuous service offer terms, cancellation policy, and information regarding how to cancel in a

23  manner that is capable of being retained by the consumer.  (Bus. & Prof. Code, § 17602(a)(3).)

24  Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free

25  telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use"

26  mechanism for cancellation.

27      9.    If a business sends any goods, wares, merchandise, or products to a consumer

28  under a purported automatic renewal or continuous service arrangement without first obtaining the

4

1  consumer's affirmative consent to an agreement containing the "clear and conspicuous"

2  disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to

3  be an unconditional gift to the consumer, who may use or dispose of them without any obligation

4  whatsoever. (Bus. & Prof. Code, § 17603.) Violation of the ARL gives rise to restitution and

5  injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof.,

6  Code § 17535. (Bus. & Prof. Code, § 17604(a).) As well, violation of the ARL gives rise to

7  restitution and injunctive relief under the UCL.

8  **PLAINTIFF'S TRANSACTION WITH DEFENDANTS**

9        10.    On July 16, 2020, Plaintiff visited the Quick Quack Car Wash located at 3436

10  Northgate Boulevard, Sacramento, CA 95834 to get a regular car wash at a cost of $7.99. The car

11  wash attendant offered Plaintiff an upgraded car wash at the cost of $9.99, and Plaintiff accepted

12  that offer. Plaintiff provided the car wash attendant with her credit card to complete the $9.99

13  purchase.

14        11.    At the time of purchase, the car wash attendant did not ask Plaintiff if she wanted to

15  enroll in a Membership program, and Plaintiff did not consent to enroll in a Membership. After

16  the credit card transaction was completed, the car wash attendant did not provide Plaintiff with any

17  paperwork regarding a Membership.

18        12.    On July 21, 2020, Plaintiff noticed a charge in the amount of $19.99 on her credit

19  card. Plaintiff immediately called Quick Quack, and she was offered a refund in the amount of

20  $11.00 by the telephone agent. Later that day, Plaintiff realized that the $19.99 charge was an

21  automatically renewing charge, so she called Quick Quack back and asked to speak with a

22  manager. Plaintiff received a call back from the Store Lead, Cat, who admitted wrongdoing by the

23  car wash attendant. The Store Lead offered Plaintiff a six month full service offer, conditioned

24  upon approval of the Regional Supervisor. Plaintiff has not accepted that offer.

25        13.    If Plaintiff had known that Defendants were going to enroll her in an automatically

26  renewing membership program, Plaintiff would not have gone to Quick Quack for a car wash and

27  she would not have paid any money to Defendants.

28

5

CLASS ACTION COMPLAINT    **EXHIBIT 1 - Page 9**

14. Plaintiff alleges that Defendants' act of enrolling her in a Membership without consent is not a singular incident, and that Defendants knowingly implement that practice on a routine basis with respect to other consumers. Moreover, Plaintiff alleges that Defendants' employees do not verbally disclose the terms of Membership to consumers, in violation of California law.

### DISCLOSURES ON DEFENDANT'S WEBSITE

15. On Quick Quack's website (www.dontdrivedirty.com), the only mention of a Membership is under the FAQ tab, where a viewer must physically click down on the question, "When will I get charged for my Unlimited Car Wash Membership." Defendants' answer to that question is simply, "Your credit card will be charged every 30 days from the day that you sign up." This question and answer does not disclose the terms of the Membership as required under California law. A true and correct copy of this FAQ question and answer from Quick Quack's website is attached hereto as Exhibit 3.

16. In order to learn about an automatically renewing Membership, a consumer must first determine which location they are selecting to go to. Once they select the location within the Locations & Pricing page, they are presented with three different options: "BEST – Lucky Duck;" "BETTER;" and "GOOD." Each of the three options has a "Buy One" price and a "Go Unlimited" price. Next to the "Go Unlimited" price, there is an asterisk. In much smaller font below the three pricing options is the following statement: "*Monthly Autopay membership. Additional $5 for 30 day passes. Please see terms and conditions." A true and correct copy of the pricing page from Quick Quack's website is attached hereto as Exhibit 4. As explained below, this disclosure does not meet the requirements of the ARL.

### DEFENDANTS' DECEPTION OF OTHER CONSUMERS

17. Plaintiff is not the only consumer to be victimized by Defendants in connection with the Membership. There are numerous customer complaints about Quick Quack posted on various consumer websites, including the Better Business Bureau ("BBB") and Yelp websites, which illustrate that Defendants' scheme has affected many consumers. Illustrative complaints are set forth below:

CLASS ACTION COMPLAINT    **EXHIBIT 1 - Page 10**

1

**Problems with Product/Service (January 10, 2020).** When they were having a grand opening about 2 months ago in October they were stating they were having a promotional charge of $14.99 compared to $29.99 and shockingly I asked was this for every month up until I decide to cancel, employee working outside, confirmed and stated its the best deal they have right now. I was charged 1st month $14.99 second month I was then charged $29.99 I thought ok, maybe this is like a new Membership fee and let it pass by and I was then charged AGAIN this month (January) $29.99 and I knew they were playing with me. The employee DID NOT disclose that I was going to be charged $29.99 moving forward after the first month. Upon calling them they stated there was nothing they can do about it since I signed.. well yeah when someone tells you I'm gonna be getting this price every month we trust the employee isn't trying to rip us off... Mind you it was a BUSY day and employee was trying to rush and get every car signed up for the "amazing price". I specifically only went there for 1 car wash and that's when the employee was talking how it's the "best" deal but again failed to disclose the after charges and failed to disclose that there was a cancellation fee within the first 45 days. Luckily I didn't have to pay it but that would've been really knowledgeable to know. I have only used the carwash 3 -4 times withing the period of time, I could've said a lot of month by paying just the $9.99 1 car was fee compared to $60 now. They need to be clear and advertise correctly and disclose every detail because otherwise I think many customers would've never signed up for this "promotion". I will never be going back to this business and will be letting everyone know they scam people!!.

2

3

4

5

6

7

8

9

10

11

12

13

14    A true and correct printout of that complaint is attached as Exhibit 5.

15

**Problems with Product/Service (January 2, 2020).** I pulled into the car was and requested the middle level of wash. The representative told me they were running a special and that for only $10 I could have the top level wash and it would be good for the entire month. Sounded real good. After the month, they billed me $29.95 for a subscription car wash. I called corporate and they told me that I should have read the very fine print at the bottom of the I-pad I signed for the credit card transaction. That because I signed, I gave them permission to sign me up for monthly payments. This is very much a poor business practice and very deceptive. As I had not received any car washes after my month was up, they finally agreed to refund the $29.95 but only if I agreed to pay $5 for them to cancel my subscription.

16

17

18

19

20

21    A true and correct printout of that complaint is attached as Exhibit 6.

22

**Problems with Product/Service (December 31, 2019).** I was not aware that getting a monthly unlimited would mean I have a reoccurring bill each month. No paperwork or verbal saying anything about a reoccurring charge. I thought it was a one time occurence. There is no signage either. I reached out to Quick Quack to get a refund and to cancel. This was on 12/18/19. It is now 12/31/19 and my problem is not getting resolved. I have to send multiple emails to even get a response. I was told in the s fr being of emails that an additional charge would be on my card for cancelling. I did not authorize reoccurring charges! I need this resolved immediately.

23

24

25

26

27    A true and correct printout of that complaint is attached as Exhibit 7.

28

7

**Advertising/Sales Issues (December 6, 2019).** In September 2019, I visited their (Hillsdale/ Madison Avenue) location.  The associate sold me on their promotion.  It was their Summer deal and stated it would be $9.99 per month for their 'Best' service.  I agreed and went on my way.  In December I needed to update my payment and noticed they were charging me $29.99.  I called to dispute and told the representative I was sold a service under false terms with misrepresentation.  I did not agree on $29.99, the representative stated she could not refund since I had used the services.  Again, I explain, these weren't terms I agreed to.  What a rip-off of a company, we have other car washes in town and will look elsewhere.  Don't be fooled by the duck!

A true and correct printout of that complaint is attached as Exhibit 8.

18.    There are similar consumer complaints posted on Yelp, as illustrated below:

**Manny L.  Indio, CA (June 9, 2020).** So I spoke with Amanda from OO car wash and she was totally the wrong person to speak to.  First of all people, don't get ripped off!  Because once they got you they got you.  And certainly don't get looking for relief, because Amanda will pick up.  I hope my issues could be resolved without being on hold for 30 mins!

A true and correct printout of that complaint is attached as Exhibit 9.

**John L.  South San Francisco, CA (June 9, 2020).** I have given a solid five-star review on the first two posts (I'm not usually trigger-happy with five-star reviews, by the way), but after getting charged on my credit card, a much higher than my usual agreed-upon monthly charge ($68.98 instead of $54.99) again, I must downgrade my rating.

Here's the story:

I signed up for membership when when the Millbrae facility just opened in December 2019, for $39.99/mo plus $15/mo for a second vehicle.

Last month, when monthly billing resumed after COVID-19 closure, the charge was $68.98 instead of $54.99.  Email customer service.  Ellen P, on 15 May, graciously refunded the entire month, and assured that the old price will resume.

On 18 May, another customer service rep, Caroline, stated that the 2nd vehicle "flock" pricing increased from $15 to $29, close to double the price!!!

Now, I have no problems with OO increasing their price, but it ought to be done the right way.  Here's why I feel this is wrong:

1) I was never PROACTIVELY informed of the price increase

2) the way Caroline explained the means of informing of the price increase (found on social media and on-site) cannot he found.  No where on social media was this disclosed. No where on site in Millbrae was this disclosed.

3) EVEN IF the new price was mentioned on social media or on-site, it only implies new customers to be charged that price.  It does not provide justification or implementation that existing membership will have an increase as well.

8

4) I'm not a lawyer, but I don't see having customers needing to search through social media to discover a price change as being an appropriate means to expect customers to expect a change in charges. (Again, although I do have social media accounts, I don't see the $29 flock pricing anywhere on Facebook or instagram). I think companies ought to proactively inform all customers via email or snail mail of change of terms, which was not provided to me

5) in context with all of the above, telling me that I'm part of 1% of customers not properly informed (I'm sure that statistic is unsubstantiated), implying that 99% of customers were "properly" informed (again I don't think posting on social media or having a sign on-site, neither of which existed, is a proper way of informing) is insulting to me (see photo).

On top of all of this, increasing the price by double and not being able to use the vacuums due to COVID is another form of insult.

A true and correct printout of that complaint is attached as Exhibit 10.

**Sal S. Fontana, CA (March 16, 2020).** Have been trying to contact "customer service" to cancel my monthly subscription. I've called everyday for the past week and nobody ever answers. I've sent in an email and have received no response. I also visited the car wash and every time told the manger is not there. This place is a joke. Beware of getting sucked into a monthly subscription you can't get out of..

A true and correct printout of that complaint is attached as Exhibit 11.

**Bishop V. Pacifica, CA (December 2, 2019).** Customer Beware: SCAM IN PROGRESS WITH THE UNLIMITED MONTH option.

I recently got the unlimited month wash. They will automatically charge you month to month until you cancel with them. The employees told us it will not automatically charge us. On the last day of our month the employee asked "let us know if you decide to renew". We said "no". The next day, we were charged another month. I called customer service and she gave me a ton of attitude stating that "you need to call and cancel the monthly autopay, there is absolutely nothing I can do". It didn't take long for the customer service rep to give me attitude. This is a scam and they know it.

If anyone has gone through this before and got refunded back the month, please let me know how you guys did it so I can proceed. Thanks in advance.

A true and correct printout of that complaint is attached as Exhibit 12.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class: "All individuals in California who were (1) enrolled by Quick Quack Car Wash in an Unlimited Car Wash Membership program on or after December 1, 2010 and (2) charged by Quick Quack Car Wash for a Unlimited Car Wash Membership program

9

1  within the applicable statute of limitations.  Excluded from the Class are all employees of

2  Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is

3  assigned."

4      20.    Ascertainability.  The members of the Class may be ascertained by reviewing

5  records in the possession of Defendants and/or third parties, including without limitation

6  Defendants' marketing and promotion records, customer records, and billing records.

7      21.    Common Questions of Fact or Law.  There are questions of fact or law that are

8  common to the members of the Class, which predominate over individual issues.  Common

9  questions regarding the Class include, without limitation: (1) Whether Defendants present all

10  statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous

11  within the meaning of California law and in visual proximity to a request for consent to the offer

12  (or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the

13  offer); (2) Defendants' policies, practices and procedures for obtaining affirmative consent from

14  customers before charging a credit card, debit card, or third-party payment account; (3) whether

15  Defendants provide consumers with an acknowledgment that includes clear and conspicuous

16  disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding

17  a mechanism for cancellation that is cost-effective, timely, and easy to use; (4) Defendants'

18  record-keeping practices; and (5) the appropriate remedies for Defendants' conduct.

19      22.    Numerosity.  The Class is so numerous that joinder of all Class members would be

20  impracticable.  Plaintiff is informed and believe and thereon allege that the Class consists of at

21  least 100 members.

22      23.    Typicality and Adequacy.  Plaintiff's claims are typical of the claims of the Class

23  members.  Plaintiff alleges on information and belief that Defendants enrolled her and other Class

24  members in automatic renewal or continuous service programs without disclosing all automatic

25  renewal offer terms required by law, and without presenting such terms in the requisite clear and

26  conspicuous manner; charged Plaintiff's and Class members' credit cards, debit cards, or third-

27  party accounts without first obtaining affirmative consent to an agreement containing clear and

28  conspicuous disclosure of all automatic renewal offer terms; and failed to provide the requisite

10

1  acknowledgment with the required disclosures.  Plaintiff has no interests that are adverse to those

2  of the other Class members.  Plaintiff will fairly and adequately protect the interests of the Class

3  members.

4      24.    Superiority.    A  class  action  is  superior  to  other  methods  for  resolving  this

5  controversy.  Because the amount of restitution to which each Class member may be entitled is

6  low in comparison to the expense and burden of individual litigation, it would be impracticable for

7  Class members to redress the wrongs done to them without a class action forum.  Furthermore, on

8  information and belief, Class members do not know that their legal rights have been violated.

9  Class certification would also conserve judicial resources and avoid the possibility of inconsistent

10  judgments.

11      25.    Risk of Inconsistent or Varying Adjudications.  Prosecuting separate actions by

12  individual Class members would create a risk of inconsistent or varying adjudications with respect

13  to  individual  Class  members  that  would  establish  incompatible  standards  of  conduct  for

14  Defendants.  As a practical matter, adjudication with respect to individual Class members would

15  be also dispositive of the interests of others not parties to the individual adjudications or would

16  substantially impair or impede their ability to protect their interests.

17      26.    Defendants Have Acted on Grounds Generally Applicable to the Class.  Defendants

18  have acted on grounds that are generally applicable to each Class member, thereby making

19  appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

20  **FIRST CAUSE OF ACTION**

21  False Advertising (Based on Violation of the California Automatic Renewal Law)

22  (Bus. & Prof. Code, § 17600 et seq. and § 17535)

23      27.    Plaintiff incorporates the previous allegations as though fully set forth herein.

24      28.    Plaintiff is informed and believes and thereon alleges that, during the applicable

25  statute of limitations period, Defendants have enrolled consumers, including Plaintiff and Class

26  members, in an automatic renewal program and have violated the ARL by, among other things,

27  (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a

28  subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer

11

CLASS ACTION COMPLAINT    **EXHIBIT 1 - Page 15**

1  conveyed by voice, in temporal proximity, to a request for consent to the offer; (b) charging the

2  consumer's credit card, debit card, or third-party payment account for an automatic renewal

3  without first obtaining the consumer's affirmative consent to an agreement containing clear and

4  conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an

5  acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer

6  terms, the cancellation policy, and information regarding how to cancel in a manner that is capable

7  of being retained by the consumer and that provides a mechanism for cancellation that is cost-

8  effective, timely, and easy to use, all in violation of § 17602(a) and (b).

9      29.    Plaintiff has suffered injury in fact and lost money as a result of Defendants'

10  violations of the ARL.

11      30.    Pursuant to Bus. & Prof. Code § 17535, Plaintiff and Class members are entitled to

12  restitution of all amounts that Defendants charged to Plaintiff's and Class members' credit cards,

13  debit cards, or third-party payment accounts in connection with an automatic renewal membership

14  program during the four years preceding the filing of this Complaint and continuing until

15  Defendants' statutory violations cease.

16      31.    Unless enjoined and restrained by this Court, Defendants will continue to commit

17  the violations alleged herein.  Pursuant to § 17535, on behalf of herself, the Class members, and

18  for the benefit of the general public of the State of California, Plaintiff seeks an injunction

19  prohibiting Defendants from continuing their unlawful practices as alleged herein.

20              **SECOND CAUSE OF ACTION**

21          Violation of the California Consumers Legal Remedies Act

22              (Civ. Code, § 1750 et seq.)

23      32.    Plaintiff incorporates the allegations of paragraphs 1-26 as though set forth herein.

24      33.    Plaintiff is a "consumer" within the meaning of Civil Code § 1761(d) in that

25  Plaintiff sought or acquired Defendants' goods and/or services for personal, family, or household

26  purposes.

27      34.    Defendants' car washes and membership program pertain to a "good" or "service"

28  within the meaning of Civil Code § 1761(a) and (b).

12

35.     The payments by Plaintiff and Class members are "transactions" within the meaning of Civil Code § 1761(e).

36.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (9), and (14), by representing that Defendants' goods or services have characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; and representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

37.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to Civil Code § 1780(a)(2), on behalf of the Class and also for the benefit of the general public of the State of California, Plaintiff seeks an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## THIRD CAUSE OF ACTION

Violation of the Unfair Competition Law

(Bus. & Prof. Code, § 17200 et seq.)

38.     Plaintiff incorporates the previous allegations as though fully set forth herein.

39.     The Unfair Competition Law defines unfair competition as including any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500.  (Bus. & Prof. Code, § 17200.)

40.     In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes

1  clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation

2  policy, and information regarding a cancellation mechanism that is cost-effective, timely, and

3  easy-to-use, and failing to provide such an acknowledgment in a manner capable of being retained

4  by the consumer, in violation of § 17602(a)(3); (d) representing that Defendants' goods or services

5  have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5);

6  (e) advertising goods and services with the intent not to sell them as advertised, in violation of

7  Civil Code § 1770(a)(9); and (f) representing that a transaction confers or involves rights,

8  remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation

9  of Civil Code § 1770(a)(14).  Plaintiff reserves the right to identify other acts or omissions that

10  constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or

11  misleading advertising, and/or other prohibited acts.

12      41.    Defendants' acts and omissions as alleged herein violate obligations imposed by

13  statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

14  oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

15  attributable to such conduct.

16      42.    There were reasonably available alternatives to further Defendants' legitimate

17  business interests, other than the conduct described herein.

18      43.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were

19  and are false, misleading, and/or likely to deceive the consuming public.

20      44.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of

21  unfair competition.

22      45.    Pursuant to § 17203, Plaintiff and the Class members are entitled to restitution of

23  all amounts paid to Defendants in connection with an automatic renewal membership program in

24  the four years preceding the filing of this Complaint and continuing until Defendants' acts of

25  unfair competition cease.

26      46.    Unless enjoined and restrained by this Court, Defendants will continue to commit

27  the violations alleged herein.  Pursuant to § 17203, on behalf of the Class, and also for the benefit

28

CLASS ACTION COMPLAINT  **EXHIBIT 1 - Page 18**

1  of the general public of the State of California, Plaintiff seeks an injunction prohibiting

2  Defendants from continuing their unlawful practices as alleged herein.

3  **PRAYER**

4      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

5      On the First Cause of Action (False Advertising – Based on Violation of the ARL):

6      1.    For restitution;

7      2.    For injunctive relief, including a public injunction for the benefit of the People of

8  the State of California;

9      On the Second Cause of Action (Violation of the CLRA):

10      3.    For injunctive relief, including a public injunction for the benefit of the People of

11  the State of California;

12      4.    For reasonable attorneys' fees, pursuant to Civil Code § 1780(e);

13      On the Third Cause of Action (Unfair Competition):

14      5.    For restitution;

15      6.    For injunctive relief, including a public injunction for the benefit of the People of

16  the State of California;

17      On All Causes of Action:

18      7.    For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

19      8.    For costs of suit;

20      9.    For pre-judgment interest; and

21      10.    For such other relief as the Court may deem just and proper.

22  Dated: July 24, 2020             DOSTART HANNINK & COVENEY LLP

23

24                          ZACH P. DOSTART

25                          Attorneys for Plaintiff

26

27

28

15

CLASS ACTION COMPLAINT   **EXHIBIT 1 - Page 19**

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands a trial by jury of all claims and causes of action so triable.

3   Dated:  July 24, 2020                          DOSTART HANNINK & COVENEY LLP

4

5                                                   ZACH P. DOSTART

6                                                   Attorneys for Plaintiff

923765.2

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

Exhibit 1

EXHIBIT 1 - Page 21

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

(This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had

(800) 666-1917    LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 22**                     (more)        Exhibit 1
Page 1

SB 340 (Yee)
Page 2 of 7

not requested the automatic renewals until they either received a bill or a charge on
their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case.  After receiving
numerous consumer complaints, the Attorneys General of 23 states, including
California, launched an investigation into Time's automatic renewal subscription offers.
In 2006, the investigation resulted in a settlement agreement between the Attorneys
General and Time that includes a number of reforms to automatic renewals that Time
sends to their customers.  Those reforms include, among others, expanded disclosure
requirements and customers' affirmative consent to automatic renewals.  (*See* Comment
2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition
means and includes any unlawful, unfair, or fraudulent business act or practice and
unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False
Advertising Act (FAA).  (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or
  personal property, to perform services, or to make or disseminate or cause to be
  made or disseminated to the public any statement concerning that real or personal
  property that is untrue or misleading and known or should be known to be untrue
  or misleading; and
- prohibits any person from making or disseminating any untrue or misleading
  statement as part of a plan or scheme with the intent not to sell that personal
  property or those services at the stated or advertised price.  (Bus. & Prof. Code Sec.
  17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by
imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by
both.  (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable
for a civil penalty not to exceed $2,500 for each violation that must be assessed and
recovered in a civil action by the Attorney General or by any district attorney, county
counsel, or city attorney.  (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money
or property as a result of unfair competition may bring a civil action for relief.  (Bus. &
Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties.
(Bus. & Prof. Code Secs. 17203, 17206.)

LEGISLATIVE INTENT SERVICE   (800) 666-1917

**EXHIBIT 1 - Page 23**

Exhibit 1
Page 2

SB 340 (Yee)
Page 3 of 7

<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.	All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.	Both of the following:
a. on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b. the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information.  The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.  In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.  The automatic

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 24**

Exhibit 1
Page 3

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

This bill would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

This bill would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

This bill would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

## COMMENT

1. Stated need for the bill

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

> A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

(800) 666-1917     LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 25**

Exhibit 1
Page 4

SB 340 (Yee)
Page 5 of 7

2. Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with
   Attorneys General; SB 340 modeled after the Assurance

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers. Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science. Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers. The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election." The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal. (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time. In the Assurance, Time agreed to:

- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

3. Remedies available under the bill

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 26**

Exhibit 1
Page 5

SB 340 (Yee)
Page 6 of 7

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4.  Key terms defined

This bill would define the following key terms:
    a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
    b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.

    c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
    d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.  Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices. The rule requires, among other things, that telemarketers make

(800) 666-1917

LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 27**

Exhibit 1
Page 6

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations.  (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6.  <u>Author's amendments</u>

On page 3, line 17, insert:
(c)  "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

<strong><u>HISTORY</u></strong>

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

***********

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 28**

Exhibit 1
Page 7

Exhibit 2

EXHIBIT 1 - Page 29

SB 340
Page 1

Date of Hearing: June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE: 37-0

SUBJECT: AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE: SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN
"AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND
CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES,
AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC
RENEWAL?

FISCAL EFFECT: As currently in print this bill is keyed non-fiscal.

### SYNOPSIS

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to
protect consumers from unwittingly consenting to "automatic renewals" of subscription orders
or other "continuous service" offers. According to the author and supporters, consumers are
often charged for renewal purchases without their consent or knowledge. For example,
consumers sometimes find that a magazine subscription renewal appears on a credit card
statement even though they never agreed to a renewal. Indeed, this problem led 23 state
attorneys general to launch an investigation of Time, Inc., in response to claims that the
company used deceptive practices in signing up customers for automatic subscription renewals.
As part of a settlement of this dispute, Time agreed to institute new practices so that customers
are fully aware of and affirmatively consent to automatic renewals. This bill, following the lead
of the Times' settlement, would require that renewal terms and cancellation policies be clearly
and conspicuously presented to the consumer, whether the offer is made on printed material or
through a telephone solicitation. In addition, the bill would require that the consumer make
some affirmative acknowledgement before an order with an automatic renewal can be
completed. Finally, the bill specifies that violation of the bill's provisions do not constitute a
crime. The author has worked closely with affected business interests and has made several
amendments that appear to address all stakeholders' concerns. There is no registered
opposition to the bill.*

SUMMARY: Requires any business making an "automatic renewal" or "continuous service"
offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the
consumer's affirmative consent to the offer. Specifically, this bill:

1) Makes it unlawful for any business making an automatic renewal offer or a continuous
   service offer to a consumer to do any of the following:



**EXHIBIT 1 - Page 30**

Exhibit 2
Page 8

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed. Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA). (Business & Professions Code Section 17200 *et seq*.)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 31**                    Exhibit 2
                                        Page 9

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price. (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor. (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations. (Business & Professions Code sections 17203, 17206.)

COMMENTS: This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent. This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent. The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc. The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer. According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT: According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to." According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement. Supporters generally

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 32**

Exhibit 2
Page 10

SB 340
Page 4

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

Author's Technical Amendments:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

PRIOR LEGISLATION:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

REGISTERED SUPPORT/OPPOSITION:

Support:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

Opposition:

None on file

Analysis Prepared by:  Thomas Clark / JUD. / (916) 319-2334

(800) 666-1917

LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 33**

Exhibit 2
Page 11

Exhibit 3

EXHIBIT 1 - Page 34

# FAQ

— When will I get charged for my Unlimited Car Wash Membership?

> Your credit card will be charged every 30 days from the day that you sign up.

---

+ Do you have Fleet, Bulk Discount Programs?

---

+ Do you use brushes? Are you touchless?

---

+ Are my tires too wide?

---

+ Why do I have to clean out my truck bed before going through the wash?

---

+ I have a bug shield or bike rack, etc. Is it safe?

---

+ Is my vehicle too tall?

---

+ Are the vacuums really free?

---

+ How do I modify or cancel my Unlimited Membership?

---

+ Why is my car still wet after the dry cycle?

---

+ How does the 48 Hour Rain Check Work?

---

+ What is a Clean Car Guarantee?

---

**EXHIBIT 1 - Page 35**

Exhibit 3
Page 12

Exhibit 4

EXHIBIT 1 - Page 36

# Pricing

**BUY ONLINE**

## BEST - Lucky Duck

| BUY ONE | GO UNLIMITED |
|---|---|
| 19⁹⁹ | 29⁹⁹ |
| | PER MONTH* |

**INCLUDES EVERYTHING!**

**WASH * SHINE * SEAL**

**BETTER WASH PLUS:**

3-Step Paint Sealant Process
Duck BATH
SHINE you can feel
Wax to SEAL

## BETTER

| BUY ONE | GO UNLIMITED |
|---|---|
| 14⁹⁹ | 26⁹⁹ |
| | PER MONTH* |

**GOOD WASH PLUS:**

Rain Repellent
Wheel Bright
Undercarriage Rust Inhibitor
Tire Shine
Triple Foam

## GOOD

| BUY ONE | GO UNLIMITED |
|---|---|
| 7⁹⁹ | 19⁹⁹ |
| | PER MONTH* |

**Wash and Dry**

\* Monthly Autopay membership. Additional $5 for 30 day passes. Please see terms and conditions.



**EXHIBIT 1 - Page 37**

Exhibit 4
Page 13

# Exhibit 5

EXHIBIT 1 - Page 38

**Complaint Type:** Problems with Product/Service    **Status:** Answered ⓘ



01/10/2020

When they were having a grand opening about 2 months ago in October they were stating they were having a promotional charge of $14.99 compared to $29.99 and shockingly I asked was this for every month up until I decide to cancel, employee working outside, confirmed and stated its the best deal they have right now. I was charged 1st month $14.99 second month I was then charged $29.99 I thought ok, maybe this is like a new Membership fee and let it pass by and I was then charged AGAIN this month (January) $29.99 and I knew they were playing with me. The employee DID NOT disclose that I was going to be charged $29.99 moving forward after the first month. Upon calling them they stated there was nothing they can do about it since I signed.. well yeah when someone tells you I'm gonna be getting this price every month we trust the employee isn't trying to rip us off... Mind you it was a BUSY day and employee was trying to rush and get every car signed up for the "amazing price". I specifically only went there for 1 car wash and that's when the employee was talking up how it's the "best" deal but again failed to disclose the after charges and failed to disclose that there was a cancellation fee within the first 45 days. Luckily I didn't have to pay it but that would've been really knowledgeable to know. I have only used the carwash 3 -4 times withing the period of time, I could've said a lot of month by paying just the $9.99 1 car was fee compared to $60 now. They need to be clear and advertise correctly and disclose every detail because otherwise I think many customers would've never signed up for this "promotion". I will never be going back to this business and will be letting everyone know they scam people!!



**Response**                                                                        01/16/2020

Customer was only refunded one charge of $29.99 due to usage on the account. We were not able to refund his December charge. Instead we gave him time on his account to compensate the December billing. Customer was happy with this resolution.

**EXHIBIT 1 - Page 39**

Exhibit 5
Page 14

Exhibit 6

**EXHIBIT 1 - Page 40**

**Complaint Type:** Problems with Product/Service     **Status:** Answered ⓘ



01/02/2020

I pulled into the car was and requested the middle level of wash. The representative told me they were running a special and that for only $10 I could have the top level wash and it would be good for the entire month. Sounded real good. After the month, they billed me $29.95 for a subscription car wash. I called corporate and they told me that I should have read the very fine print at the bottom of the I-pad I signed for the credit card transaction. That because I signed, I gave them permission to sign me up for monthly payments. This is very much a poor business practice and very deceptive. As I had not received any car washes after my month was up, they finally agreed to refund the $29.95 but only if I agreed to pay $5 for them to cancel my subscription.



**Response**

01/07/2020

After speaking to ''', we will not reserve the $5 cancellation fee as it is apart of our company policy. He verbally agreed to the fee at the time of the cancellation since it was within 45 days of the promo.

To ensure customer will reconsider Quick Quack in the future, we gave him an additional 30 days on his membership. He was happy and took the offer.

**EXHIBIT 1 - Page 41**

Exhibit 6
Page 15

Exhibit 7

EXHIBIT 1 - Page 42

**Complaint Type:** Problems with Product/Service    **Status:** Resolved ⑦



12/31/2019

I was not aware that getting a monthly unlimited would mean I have a reoccurring bill each month. No paperwork or verbal saying anything about a reoccurring charge. I thought it was a one time occurence. There is no signage either. I reached out to Quick Quack to get a refund and to cancel. This was on 12/18/19. It is now 12/31/19 and my problem is not getting resolved. I have to send multiple emails to even get a response. I was told in the s fr being of emails that an additional charge would be on my card for cancelling. I did not authorize reoccurring charges! I need this resolved immediately.



**Response**                                                        01/06/2020

We have cancelled out the account and refunded the $25.99 back to customer, even though her husband used the wash after the billing date.

**EXHIBIT 1 - Page 43**                    Exhibit 7
Page 16

Exhibit 8

EXHIBIT 1 - Page 44

**Complaint Type:** Advertising/Sales Issues     **Status:** Answered ⑦

12/06/2019



In September 2019, I visited their (Hillsdale/ Madison Avenue) location. The associate sold me on their promotion. It was their Summer deal and stated it would be $9.99 per month for their 'Best' service. I agreed and went on my way. In December I needed to update my payment and noticed they were charging me $29.99. I called to dispute and told the representative I was sold a service under false terms with misrepresentation. I did not agree on $29.99, the representative stated she could not refund since I had used the services. Again, I explain, these weren't terms I agreed to. What a rip-off of a company, we have other car washes in town and will look elsewhere. Don't be fooled by the duck!



**Response**                                                                  12/19/2019

We have sent three different emails on three different dates to try to schedule a time to speak but no reply.

We also called a few times and left Voicemail messages but no luck either.

We will try to contact this customer again tomorrow.

**EXHIBIT 1 - Page 45**

Exhibit 8
Page 17

Exhibit 9

**EXHIBIT 1 - Page 46**



**Manny L.**
Indio, CA
32 friends
20 reviews
2 photos



6/9/2020

So I spoke to Amanda from QQ car wash and she was totally the wrong person to speak to. First of all people, don't get ripped off! Because once they got you they got you. And certainly don't call looking for relief, because Amanda will pick up. I hope my issues could be resolved without being on hold for 30 mins!

Useful    Funny    Cool

**EXHIBIT 1 - Page 47**                    Exhibit 9
                                                            Page 18

Exhibit 10

EXHIBIT 1 - Page 48



**John L.**
South San Francisco, CA
♦ ♦ **172** friends
🖸 **16** reviews
📷 **15** photos

6/8/2020 · ⟳ Updated review

🖾 I photo

**Update 8 June 2020

I have given a solid five-star review on the first two posts (I'm not usually trigger-happy with five-star reviews, by the way), but after getting charged on my credit card, a much higher than my usual agreed-upon monthly charge ($68.98 instead of $54.99) again, I must downgrade my rating.

Here's the story:

I signed up for membership when when the Millbrae facility just opened in December 2019, for $39.99/mo plus $15/mo for a second vehicle.

Last month, when monthly billing resumed after COVID-19 closure, the charge was $68.98 instead of $54.99. Email customer service, Ellen P, on 15 May, graciously refunded the entire month, and assured that the old price will resume.

On 18 May, another customer service rep, Caroline, stated that the 2nd vehicle "flock" pricing increased from $15 to $29, close to double the price!!!

Now, I have no problems with QQ increasing their price, but it ought to be done the right way. Here's why I feel this is wrong:

1) I was never PROACTIVELY informed of the price increase

2) the way Caroline explained the means of informing of the price increase (found on social media and on-site) cannot be found. No where on social media was this disclosed. No where on site in Millbrae was this disclosed.

3) EVEN IF the new price was mentioned on social media or on-site, it only implies new customers to be charged that price. It does not provide justification or implementation that existing membership will have an increase as well.

4) I'm not a lawyer, but I don't see having customers needing to search through social media to discover a price change as being an appropriate means to expect customers to expect a change in charges. (Again, although I do have social media accounts, I don't see the $29 flock pricing anywhere on Facebook or Instagram). I think companies ought to proactively inform all customers via email or snail mail of change of terms, which was not provided to me

5) in context with all of the above, telling me that I'm part of 1% of customers not properly informed (I'm sure that statistic is unsubstantiated), implying that 99% of customers were "properly" informed (again I don't think posting on social media or having a sign on-site, neither of which existed, is a proper way of informing) is insulting to me (see photo).

On top of all of this, increasing the price by double and not being able to use the vacuums due to COVID is another form of insult.

**EXHIBIT 1 - Page 49**

Exhibit 10
Page 19

Exhibit 11

EXHIBIT 1 - Page 50



**Sal S.**
Fontana, CA
0 friends
1 review

3/16/2020

Have been trying to contact "customer service" to cancel my monthly subscription. I've called everyday for the past week and nobody ever answers. I've sent in an email and have received no response. I also visited the car wash and every time told the manger is not there. This place is a joke. Beware of getting sucked into a monthly subscription you can't get out of.

**EXHIBIT 1 - Page 51**

Exhibit 11
Page 20

Exhibit 12

EXHIBIT 1 - Page 52



**Bishop V.**
**Pacifica, CA**
👥 **0** friends
📷 **35** reviews
📷 **16** photos

⭐      12/2/2019

🖼 1 photo

Customer Beware: SCAM IN PROGRESS WITH THE UNLIMITED MONTH option.

I recently got the unlimited month wash. They will automatically charge you month to month until you cancel with them. The employees told us it will not automatically charge us. On the last day of our month the employee asked "let us know if you decide to renew". We said "no". The next day, we were charged another month. I called customer service and she gave me a ton of attitude stating that "you need to call and cancel the monthly autopay, there is absolutely nothing I can do". It didn't take long for the customer service rep to give me attitude. This is a scam and they know it.

If anyone has gone through this before and got refunded back the month, please let me know how you guys did it so I can proceed. Thanks in advance.



**EXHIBIT 1 - Page 53**

Exhibit 12
Page 21

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**FILED/ENDORSED**

**JUL 2 7 2020**

By: _T. Growther_
Deputy Clerk

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
 QUICK QUACK CAR WASH HOLDINGS, LLC, a Delaware limited liability
 company; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
 RANDY CURRAN, individually and on behalf of all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: (El nombre y dirección de la corte es): Sacramento County Courthouse 720 9th Street Sacramento, CA 95814 | CASE NUMBER: (Número del Caso): 34-2020- CO282263 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es): James T. Hannink; Zach P. Dostart;
DOSTART HANNINK & COVENEY LLP, 4180 La Jolla Village Dr., Ste. 530, La Jolla, CA 92037; (858) 623-4200

| DATE: (Fecha) JUL 2 7 2020 | Clerk, by (Secretario) T. CROWTHER | , Deputy (Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☐ on behalf of (specify):
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

**EXHIBIT 1 - Page 54**

FILED/ENDORSED

JUL 2 4 2020

By: _T. Crowther_
     Deputy Clerk

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel: 858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF SACRAMENTO

10

11  RANDY CURRAN,
    individually and on behalf of all others
12  similarly situated,

13         Plaintiff,

14  vs.

15  QUICK QUACK CAR WASH HOLDINGS,
   LLC, a Delaware limited liability company;
16  and DOES 1-50, inclusive,

17         Defendants.

18

CASE NO. 34-2020-00282263

DECLARATION OF RANDY CURRAN
PURSUANT TO CALIFORNIA CIVIL
CODE SECTION 1780(d)

BY FAX

**EXHIBIT 1 - Page 55**

1       I, Randy Curran, declare as follows:

2       1.     I submit this declaration pursuant to Section 1780(d) of the Cal. Civ. Code.

3       2.     Quick Quack Car Wash Holdings, LLC does business in Sacramento County, and

4 my dealings with Quick Quack Car Wash as described in the Complaint took place in Sacramento

5 County.

6       I declare under penalty of perjury under the laws of the State of California that the foregoing

7 is true and correct. Executed on _____7/24/2020_____, at Elk Grove, California.

8

9       *Randy Curran*

10       RANDY CURRAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1 - Page 56**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**<br>STREET ADDRESS: 720 Ninth STREET<br><br>MAILING ADDRESS: 720 Ninth STREET<br><br>CITY AND ZIPCODE: Sacramento, CA 95814-1311<br><br>BRANCH NAME:  Gordon D Schaber Courthouse<br><br>PHONE NUMBER:  (916) 874-5522 | *FOR COURT USE ONLY* |

| | |
|---|---|
| **SHORT TITLE:**    Curran vs. Quick Quack Car Wash Holdings, LLC, a Delawa | |

| | |
|---|---|
| **NOTICE OF CASE MANAGEMENT CONFERENCE**<br>**AND ORDER TO APPEAR** | CASE NUMBER:<br><br>34-2020-00282263-CU-BT-GDS |

**Hearing Date**

The above entitled action has been set for a case management conference at 08:30 AM on 01/28/2021 in Department  43  In accordance with California Rules of Court 212.  You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Minimum Requirements**

Prior to the filing of the case management statement, the parties should have done the following:
    -Served all parties named in the complaint within 60 days after the summons has been issued
    -Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
    -Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

**Tentative Ruling**

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

**Case Management Orders**

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

**Service of Case Management Notice**

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

**Certification Filed in Lieu of Case Management Statement**

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

---

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR**      **Page: 1**

**EXHIBIT 1 - Page 57**

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 07/27/2020

_____

Thadd A. Blizzard, Judge of the Superior Court

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR**

Page: 2

**EXHIBIT 1 - Page 58**

1  WHITE & CASE LLP
   BRYAN A. MERRYMAN (SBN 134357)
2  bmerryman@whitecase.com
   CATHERINE S. SIMONSEN (SBN 307325)
3  catherine.simonsen@whitecase.com
   555 S. Flower Street, Suite 2700
4  Los Angeles, CA 90071-2433
   Telephone: (213) 620-7700
5  Facsimile: (213) 452-2329

6  Attorneys for Defendant
   QUICK QUACK CAR WASH HOLDINGS,
7  LLC

```
FILED/ENDORSED

SEP 1 0 2020

By: _____ T. Crowther
              Deputy Clerk
```

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on behalf     Case No. 34-2020-00282263
    of all others similarly situated,            (Assigned to Dept. 47)
12
                   Plaintiff,
13                                               **NOTICE OF CONSENT BY ALL
          v.                                     PARTIES TO ELECTRONIC SERVICE**
14
    QUICK QUACK CAR WASH HOLDINGS,               Complaint Filed: July 24, 2020
15  LLC, a Delaware Limited Liability Company;
    and Does 1-50 inclusive,
16
                   Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

BY FAX

                                                        NOTICE OF CONSENT BY ALL
                                                     PARTIES TO ELECTRONIC SERVICE
AMERICAS 103524434

**EXHIBIT 1 - Page 59**

1    TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           NOTICE IS HEREBY GIVEN that all parties expressly consent to receive electronic

3    service of documents in this action in accordance with the following agreement:

4           The parties agree that a party may personally serve a document by sending the document

5    by email no later than 5:00 p.m. Pacific to all of the following email addresses and the document

6    will be deemed served on the date the email is sent:

7    For plaintiff Randy Curran:

8          • zdostart@sdlaw.com

9          • jhannink@sdlaw.com

10         • cklobucar@sdlaw.com

11         • ldozier@sdlaw.com

12   For defendant Quick Quack Car Wash Holdings, LLC:

13         • bmerryman@whitecase.com

14         • catherine.simonsen@whitecase.com

15         • ashley.bean@whitecase.com

16   Such email service is the equivalent for all purposes of personal service and no days will be added

17   to any applicable response date for the method of service.  For clarity, if the email is sent after

18   5:00 p.m. Pacific, the document(s) sent with that email will be deemed served the following

19   business day.

20          This notice is given in accordance with Cal. Civ. Proc. Code § 1010.6(a)(2)(A)(ii) and

21   Cal. R. Ct. 2.251(b)(1)(A).

22

23   Dated: September 10, 2020          WHITE & CASE LLP

24                                       By: _____
                                              Bryan A. Merryman
25

26                                       Attorneys for Defendant
                                         QUICK QUACK CAR WASH HOLDINGS,
27                                       LLC

28
                                        - 1 -

AMERICAS 103524434

**EXHIBIT 1 - Page 60**

1    Dated: September 10, 2020                    DOSTART HANNINK & COVENEY LLP

2
                                                 By: _____
3                                                    Zach P. Dostart
                                                    James T. Hannink
4                                                   DOSTART HANNINK & COVENEY
                                                    LLP
5                                                   4180 La Jolla Village Dr., Ste. 530
                                                    La Jolla, CA 92037-1474
6                                                   Telephone:  (858) 623-4200
                                                    Facsimile:  (858) 623-4299
7
                                                 Attorneys for Plaintiff
8                                                RANDY CURRAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

## PROOF OF SERVICE

1

2    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700,

3    Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose direction the service was made.

4

5    On **Thursday, September 10, 2020** I served the foregoing document(s) described as:

6    **NOTICE OF CONSENT BY ALL PARTIES TO ELECTRONIC SERVICE** on the person(s) below, as follows:

7    Zach P. Dostart
     James T. Hannink
8    DOSTART HANNINK & COVENEY LLP
     4180 La Jolla Village Dr., Ste. 530
9    La Jolla, CA 92037-1474
     Telephone:  (858) 623-4200
10   Facsimile:  (858) 623-4299
     Email: ZDostart@sdlaw.com
11   Email: JHannink@sdlaw.com
     Email: CKlobucar@sdlaw.com
12   Email: LDozier@sdlaw.com

13   Attorneys for Plaintiff
     RANDY CURRAN
14

15   ☒    **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on a court order or
          an agreement of the parties to accept service by e-mail or electronic transmission, I
16        transmitted the document(s) electronically to the person(s) at the e-mail address(es)
          listed above.  The transmission was reported as complete and without error.

17

18   Executed **Thursday, September 10, 2020**, at Los Angeles, California.

19   I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

20

21   _____

22                            Karmella Salgado

23

24

25

26

27

28

- 1 -

JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

| | |
|---|---|
| RANDY CURRAN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>QUICK QUACK CAR WASH HOLDINGS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>          Defendants. | CASE NO. 34-2020-00282263-CU-BT-GDS<br><br><u>CLASS ACTION</u><br><br>**PROOF OF SERVICE OF (1) NOTICE AND ORDER OF COMPLEX CASE DETERMINATION AND (2) NOTICE OF CASE MANAGEMENT CONFERENCE AND COMPLEX CASE MANAGEMENT PROCEDURES INCLUDING COVID-19 PROTOCOLS**<br><br>Judge: Hon. Richard K. Sueyoshi<br>Dept.: 40<br><br>Action Filed: July 24, 2020<br>Trial Date:    None Set |

**EXHIBIT 1 - Page 63**

PROOF OF SERVICE                                    Case No. 34-2020-00282263-CU-BT-GDS

Attachment 1

EXHIBIT 1 - Page 64

**Superior Court of California, County of Sacramento**
720 Ninth Street Sacramento, CA 95814-1380 (916)
874-5522—Website www.saccourt.ca.gov

## NOTICE AND ORDER OF COMPLEX CASE DETERMINATION

Case Title: _Weron vs. Quick Quack Car Wash_    Case Number: _2020-282263_

Having reviewed and considered the pleadings on file, the court orders:

☑ **THE CASE IS DEEMED COMPLEX** and assigned to the Honorable _Sue Yosell_
presiding in Complex Case Management Department _40_ for case management pursuant to California Rules of
Court 3.750, et seq. The case is also pre-assigned for trial, and any motions for consolidation, severance, bifurcation,
intervention and to continue trial shall be heard in such department unless otherwise ordered. This is a limited
purpose assignment under California Rule of Court 3.734. Law and motion matters shall be heard in Departments
53/54 per Local Rule 2.30, et seq., unless otherwise directed by the Complex Case Management Department.

**This action involves one or more of the following:**

☐ Antitrust or trade regulation claims.

☐ Construction defect claims involving many parties or structures.

☐ Securities claims or investment losses involving many parties.

☐ Environmental or toxic tort claims involving many parties.

☐ Claims involving mass torts.

☑ Claims involving class actions.

☐ Insurance coverage claims arising out of any of the claims listed above.

**The action is likely to involve:**

☑ Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve.

☑ Management of a large number of witnesses or a substantial amount of documentary evidence.

☐ Management of a large number of separately represented parties.

☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court.

☐ Substantial post judgment judicial supervision.

☐ Other:_____
_____

Government Code section 70616 establishes the fees for complex cases. Pursuant to Government Code section
70616, any non-exempt party who has appeared in this action, but who has not paid the required complex case
fee, is ordered to pay the fee to the clerk within ten calendar days of the filing of this order. Failure to pay the
required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same
enforcement and penalties (Cal. Gov. Code § 70616(g)).

☐ **THE CASE IS DECLARED NOT COMPLEX**

Any complex case fees that the parties have previously paid pursuant to 70616(a) or (b) shall be reimbursed upon
submission of a refund request together with a copy of this minute order by the paying party to the Court's Civil
General Civil Processing Unit. It may be submitted by mail or placed in one of the Civil Drop Boxes located in
Room 102 and the lobby of the Gordon D. Schaber Courthouse at 720 9th Street, Sacramento CA 95814.

The plaintiff is directed to serve all other parties with a copy of this order.

Date: _9/9/2020_    Signed _____

Presiding Judge of the Superior Court
of California, County of Sacramento

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

Gordon D Schaber Courthouse
720 Ninth STREET
Sacramento, CA 95814-1311

---

**SHORT TITLE:** Curran vs. Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company

---

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**34-2020-00282263-CU-BT-GDS** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of NOTICE AND ORDER OF COMPLEX CASE DETERMINATION was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Sacramento, California, on 09/10/2020.

Clerk of the Court, by: _/s/ P. Banks_____ , Deputy

ZACH P DOSTART
SOSTART HANNINK & COVENEY LLP
4180 LA JOLLA VILLAGE DRIVE # 530
LA JOLLA, CA 92037-1474 US

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

**EXHIBIT 1 - Page 66**

V3 1013a (June 2004)                                                              Code of Civil Procedure , § CCP1013(a)

Attachment 2

**EXHIBIT 1 - Page 67**

FILED/ENDORSED

SEP 1 0 2020

By K. Madden, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA,**

**COUNTY OF SACRAMENTO**

| | |
|---|---|
| RANDY CURRAN individually and on behalf of all others similarly situated, | No. 34-2020-00282263 |
| Plaintiffs, | **NOTICE OF CASE MANAGEMENT CONFERENCE AND COMPLEX CASE MANAGEMENT PROCEDURES INCLUDING COVID-19 PROTOCOLS** |
| v. | |
| QUICK QUACK CAR WASH HOLDINGS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive, | |
| Defendants. | Complex Civil Dept.: 40 |
| | Judge Richard K. Sueyoshi |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

1.     Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, the above-referenced case has been designated as complex, assigned to this department for complex case management, and pre-assigned to this department for trial.  This is a *limited purpose* assignment under California Rule of Court 3.734, such that law and motion matters shall be heard in Departments 53/54 per Local Rule 2.30, et seq., unless otherwise directed by this Court.  Motions for consolidation, severance, bifurcation, intervention and to

1

**EXHIBIT 1 - Page 68**

1    continue trial shall be heard in this department unless otherwise directed by this Court. Other

2    motions referenced in Local Rule 1.05 shall be heard by the Presiding Judge.

3        2.    The Court orders all parties to appear for a **Case Management Conference on**

4    **February 12, 2021, at 10:30 a.m., in Department 40.** Until further notice, all Case

5    Management Conferences will be conducted remotely using the Court's Zoom

6    videoconferencing platform. Login details for the hearing will be provided by the clerk to the

7    parties prior to the hearing. No in-person appearances will be allowed until further notice. Any

8    hearings requiring public access will be live-streamed to the Court's YouTube page. The parties

9    are directed to keep current with COVID-19-related orders regarding the status of Court

10   operations. Court operations and protocols are continuously updated and all administrative

11   orders and public notices are available on the Court's website at www.saccourt.ca.gov.

12       3.    The Court orders the parties to meet and confer prior to the CMC pursuant to

13   California Rule of Court 3.724. The parties' meet-and-confer session shall include discussion of,

14   among other things, the possibility of early mediation, the identification of additional potential

15   parties, and plans for discovery. All such matters shall be reported in the parties' CMC

16   Statements.

17       4.    All parties shall file CMC Statements no later than 15 calendar days prior to the

18   CMC. The Court encourages the parties to file joint CMC Statements. The Court orders that in

19   lieu of using standard form CM-110, the parties may and are encouraged to prepare more

20   descriptive case management statements, providing additional information relevant to the

21   complex case management of this case. Until further notice, CMC statements are be <u>filed by</u>

22   <u>mail or drop box at the Gordon D. Schaber Courthouse, with a courtesy copy emailed to</u>

23   <u>Dept40@saccourt.ca.gov</u>. Due to the COVID-19 pandemic and the Court's health and safety

24   protocols, the main civil filing counter remains closed to in-person filings.

25       5.    Each party shall be prepared to participate effectively in the CMC, including, but

26   not limited to, being thoroughly familiar with the case and able to discuss the suitability of

27   private mediation, arbitration, and/or the use of a special master or referee.

28       6.    Should the parties stipulate and request a continuance of the CMC given the early

1  status of the case, they shall indicate such in their CMC Statements (preferably in a joint CMC

2  Statement), the reasons for such request, and the date range for which they agree to a new CMC

3  date. The Court may or may not approve such stipulated request.

4       7.      Tentative Rulings: The Court may or may not issue a tentative ruling prior to the

5  scheduled CMC. Counsel are directed to check the Court's tentative rulings after 2:00 p.m. the

6  court day prior to the scheduled CMC. Tentative rulings are posted on the Court's website at

7  www.saccourt.ca.gov. If no tentative ruling is posted, the CMC will proceed by remote

8  appearances as scheduled. If a tentative ruling is posted, unless otherwise indicated, such ruling

9  shall become the final order of the Court and no CMC hearing shall occur, unless counsel

10 contacts the Court prior to 4:00 p.m. of the same date to request a hearing and provides notice to

11 all other parties. In such event, the CMC will proceed as scheduled or as otherwise indicated by

12 the Court in its tentative ruling.

13      8.      Law and Motion: As referenced above, this case has been assigned to this

14 department for limited purposes. Pursuant to Local Rule 2.30, et seq., Civil Law and Motion

15 Departments 53/54 shall hear all law and motion matters customarily heard in such departments.

16 This shall include pleading motions, discovery motions and dispositive motions. Motions for

17 preliminary approval and for final approval of settlement shall also be heard in Departments

18 53/54. Motions regarding class certification shall be heard in Departments 53/54 unless this

19 Court directs that such motions may be filed in this department depending on calendaring and

20 other considerations.

21      9.      Other Motions: Motions for consolidation, severance, bifurcation, intervention

22 and to continue trial shall be heard in this department unless otherwise directed by this Court.

23 Trial-related motions shall be heard in this department unless otherwise directed by this Court.

24 Other motions referenced in Local Rule 1.05 shall be heard by the Presiding Judge.

25      10.     Filings: Law and Motion filings shall be made pursuant to Department 53/54

26 procedures. Motions heard in this department shall be filed by mail or drop box at the Gordon D.

27 Schaber Courthouse, with a courtesy copy emailed to Dept40@saccourt.ca.gov. Motions that

28 must be heard by the Presiding Judge pursuant to Local Rule 1.05 shall be filed pursuant to

1  Department 47 procedures. CMC Statements are to be filed as indicated above.

2      11.    Typical Case Progress:

3              a.  After the initial CMC or a subsequent CMC, the Court may or may not issue a

4                  formal *Case Management Order* ("CMO"). In lieu of a formal CMO, the

5                  Court may issue minute orders after CMCs addressing case management

6                  topics. The breadth of such orders may vary depending upon factors such as

7                  the complexity of the case and other circumstances. The Court may issue

8                  subsequent CMOs potentially addressing topics such as discovery cut-offs,

9                  phased discovery, disclosure dates, timing of private mediation, timing of

10                 class certification motions, etc. In some cases, CMOs may be proposed by an

11                 appointed special master or referee with case management authority.

12             b.  Pursuant to the Presiding Judge's Notice and Order of Complex Case

13                 Determination, this Court is the trial department for this case. This Court

14                 remains the trial court unless subsequently ordered otherwise. In rare

15                 instances, a case may be transferred to Department 47 for assignment to a

16                 different trial department if this Court has scheduling conflicts due to another

17                 trial or otherwise is unable to proceed with trial.

18             c.  The Court will schedule a Trial Setting Conference at which time a precise

19                 trial date shall be set in this department. The Court will issue a *Complex Trial*

20                 *Setting Order* ("TSO") which shall set the Mandatory Settlement Conference

21                 in Department 59, a Final Status Conference, a Final Pre-Trial Conference,

22                 and the trial date. The TSO shall also address deadlines for trial-related tasks

23                 and filings, including motions in limine, witness and exhibit lists, proposed

24                 jury instructions, jury questionnaires, etc.

25     12.    The following interim orders shall be in effect:

26             a.  Plaintiff(s) shall diligently locate and serve each defendant. It is the Court's

27                 intention, by this order, that all parties shall be served in sufficient time to

28                 have made an appearance within the time allowed under law prior to attending

1          the first CMC.

2          b.  Counsel shall continuously ensure that they have no legal conflicts of interest

3              as to any present or anticipated parties so that counsel may participate fully in

4              the CMC and this case.

5      13.     The Court strongly encourages the parties to engage in early and meaningful

6  alternative dispute resolution.

7

8      **IT IS SO ORDERED.**

9

10  DATED: __9/10__ , 2020



11                                          HON. RICHARD K. SUEYOSHI

                                            JUDGE OF THE SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

**EXHIBIT 1 - Page 72**

**CASE NUMBER: 34-2020-00282263**                    **DEPARTMENT: 40**
**CASE TITLE:      CURRAN V. QUICK QUACK CAR WASH HOLDINGS LLC**
**PROCEEDINGS: NOTICE OF CASE MANAGEMENT CONFERENCE**

## CERTIFICATE OF SERVICE BY MAILING
### (C.C.P. Sec. 1013a(4))

I, the Clerk of the Superior Court of California, County of Sacramento, certify that I am not a party to this cause, and on the date shown below I served the foregoing **NOTICE OF CASE MANAGEMENT CONFERENCE AND COMPLEX CASE MANAGEMENT PROCEDURES** by depositing true copies thereof, enclosed in separate, sealed envelopes with the postage fully prepaid, in the United States Mail at 720 9th Street, Sacramento, California, 95814 each of which envelopes was addressed respectively to the persons and addresses shown below:

I, the undersigned deputy clerk, declare under penalty of perjury that the foregoing is true and correct.

Dated:  9/10/2020                        Superior Court of California, County of
                                          Sacramento

                                          By:  _K. Madden_____
                                          K.Madden , Deputy Clerk

| | |
|---|---|
| James Hannink<br>Zach Dostart<br>4180 La Jolla Village Drive, Suite 530<br>La Jolla, California 92037 | |

**DEPT          : 40**
**DATE          : 9/10/2020**
**CASE NO.      : 34-2020-00282263**
**CASE TITLE    : CURRAN V. QUICK QUACK CAR**
**                WASH HOLDINGS LLC**

**Superior Court of California,**
**County of Sacramento**

**BY:    K.MADDEN,_____**
**           Deputy Clerk**

**Page 1 of 1**

EXHIBIT 1 - Page 73

1    At the time of service, I was over 18 years of age and **not a party to this action**.  I am

2  employed in the County of San Diego, State of California.  My business address is 4180 La Jolla

3  Village Drive, Suite 530, La Jolla, CA 92037-1474.

4    On September 14, 2020, I served true copies of the following documents described as

5    **NOTICE AND ORDER OF COMPLEX CASE DETERMINATION; and**

6    **NOTICE OF CASE MANAGEMENT CONFERENCE AND COMPLEX**
     **CASE MANAGEMENT PROCEDURES INCLUDING COVID-19 PROTOCOLS**
7

8  on the interested parties in this action as follows:

9    Bryan A. Merryman
     bmerryman@whitecase.com
10    Catherine S. Simonsen
     catherine.simonsen@whitecase.com
11    Ashley Bean
     ashley.bean@whitecase.com
12    WHITE & CASE LLP
     555 South Flower Street, Suite 2700
13    Los Angeles, CA  90071-2433
     Tel: (213) 620-7700
14    Fax: (213) 452-2329

15    *Counsel for Defendant*

16    **BY E-MAIL:**  Based on a court order or an agreement of the parties to accept service by e-

17  mail or electronic transmission, I caused the documents to be sent from e-mail address

18  ldozier@sdlaw.com to the persons at the e-mail addresses listed above.  I did not receive, within a

19  reasonable time after the transmission, any electronic message or other indication that the

20  transmission was unsuccessful.

21    I declare under penalty of perjury under the laws of the State of California that the foregoing

22  is true and correct.  Executed on September 14, 2020, at La Jolla, California.

23

24                                                    _____
                                                      Lisa A. Dozier
25

26  928928.1

27

28

**EXHIBIT 1 - Page 74**

1    WHITE & CASE LLP
     BRYAN A. MERRYMAN (SBN 134357)
2    bmerryman@whitecase.com
     CATHERINE S. SIMONSEN (SBN 307325)
3    catherine.simonsen@whitecase.com
     555 S. Flower Street, Suite 2700
4    Los Angeles, CA 90071-2433
     Telephone: (213) 620-7700
5    Facsimile: (213) 452-2329

6    Attorneys for Defendant
     QUICK QUACK CAR WASH HOLDINGS,
7    LLC

FILED/ENDORSED

SEP 18 2020

By: _____ P. Vue _____
              Deputy Clerk

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF SACRAMENTO

10

11   RANDY CURRAN, individually and on behalf      Case No. 34-2020-00282263
     of all others similarly situated,             (Assigned to Complex Civil Dept. 40
12                                                  Judge Richard K. Sueyoshi)
                          Plaintiff,
13
          v.
14                                                  **DEFENDANT QUICK QUACK CAR
                                                    WASH HOLDINGS, LLC'S:**
15   QUICK QUACK CAR WASH HOLDINGS,
     LLC, a Delaware Limited Liability Company;     **(1) NOTICE OF MOTION AND MOTION
16   and Does 1-50 inclusive,                       TO COMPEL ARBITRATION AND TO
                                                    DISMISS OR STAY ACTION;**
17                        Defendants.
                                                    **(2) MEMORANDUM OF POINTS AND
18                                                  AUTHORITIES; AND**

19                                                  **(3) DECLARATIONS OF JOHNATHAN
                                                    SOUZA AND JOSEPH STEELE**
20
                                                    *[Declarations filed and [Proposed] Order
21                                                  lodged separately]*

22                                                  Date:  October 13, 2020
                                                    Time:  1:30 p.m.
23                                                  Dept.: 53
                                                    Judge:  Hon. David I. Brown
24
                                                    Complaint Filed:  July 24, 2020
25

26

27

28

                                                    DEFENDANT'S MOTION TO COMPEL ARBITRATION
                                                    AND TO DISMISS OR STAY ACTION
AMERICAS 103503414

**EXHIBIT 1 - Page 75**

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        NOTICE IS HEREBY GIVEN that on October 13, 2020, at 1:30 p.m., or as soon

3    thereafter as the motion may be heard, in Department 53 of the Superior Court of California,

4    County of Sacramento, Hall of Justice, 813 6th Street, Sacramento, CA 95814, 2nd floor,

5    defendant Quick Quack Car Wash Holdings, LLC ("Quick Quack") will, and hereby does, move

6    the Court for an order: (1) compelling arbitration of all claims alleged in the complaint; and (2)

7    dismissing the action or staying it pending completion of the arbitration.

8        Quick Quack makes this motion, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4,

9    on the ground that plaintiff Randy Curran and Quick Quack agreed to arbitrate all claims alleged

10    in the complaint.

11        Quick Quack bases this motion on this notice of motion, the memorandum of points and

12    authorities, the declarations of Johnathan Souza and Joseph Steele, all pleadings and records on

13    file, those matters of which the Court may properly take judicial notice, and such argument as the

14    Court may consider at the hearing on this motion.

15        Pursuant to Local Rule 1.06(A), the Court will make a tentative ruling on the merits of

16    this matter by 2:00 p.m., the court day before the hearing.  The complete text of the tentative

17    rulings for the department may be downloaded off the Court's website.  If the party does not have

18    online access, they may call the dedicated phone number for the department as referenced in the

19    local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before

20    the hearing and receive the tentative ruling.  If you do not call the Court and the opposing party

21    by 4:00 p.m. the court day before the hearing, no hearing will be held.

22

23    Dated:  September 18, 2020                    WHITE & CASE LLP

24                                          By:  _____
                                                  Bryan A. Merryman

25
26                                          Attorneys for Defendant
                                            QUICK QUACK CAR WASH HOLDINGS,
27                                          LLC

28

- 2 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................. 6

II.   BACKGROUND .................................................................. 6

    A.   Ms. Curran Makes a Purchase at Quick Quack and Agrees to Arbitrate All Disputes with Quick Quack ................................................ 6

    B.   Ms. Curran Sues Quick Quack Despite Her Agreement to Arbitrate .................... 7

III.  THE COURT SHOULD ORDER ARBITRATION .................................. 8

    A.   The Federal Arbitration Act Governs Any Dispute Regarding Arbitrability .......... 8

    B.   This Court's Inquiry Is Limited to the Existence of an Agreement to Arbitrate ..................................................................... 10

        1.   An Arbitration Agreement Exists Between Ms. Curran and Quick Quack ......................................................... 10

        2.   The Arbitrator Has Sole Authority to Decide All Other Issues ................ 11

            a.   The Delegation Clause Is Clear and Unmistakable....................... 11

            b.   The Delegation Clause Is Valid ...................................... 12

IV.   THE COURT SHOULD DISMISS THIS ACTION ...................................... 12

V.    CONCLUSION ..................................................................... 13

- 3 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 77**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)...................................................................................................9

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)...................................................................................................9

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................8, 9

*Aviation Data, Inc. v. Am. Express Travel Related Servs. Co.*,
    152 Cal. App. 4th 1522 (2007) ................................................................................9

*Brinkley v. Monterey Fin. Servs., Inc.*,
    242 Cal. App. 4th 314 (2015) ................................................................................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)...................................................................................................9

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002).................................................................................12

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)...................................................................................................9

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) ................................................................................12

*Greenspan v. LADT, LLC*,
    185 Cal. App. 4th 1413 (2010) ..............................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019).........................................................................................10, 11

*Lowden v. T-Mobile USA, Inc.*,
    512 F.3d 1213 (9th Cir. 2008).................................................................................10

*Rent-A-Ctr., West, Inc. v. Jackson*,
    561 U.S. 63 (2010).............................................................................................10, 11

*Safadi v. Citibank, N.A.*,
    2012 U.S. Dist. LEXIS 142773 (N.D. Cal. Oct. 2, 2012).......................................11

*Shepard v. Edward Mackay Enters., Inc.*,
    148 Cal. App. 4th 1092 (2007) ................................................................................9

- 4 -

**EXHIBIT 1 - Page 78**

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ..................................................................................................9

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ...............................................................................12

*Tiri v. Lucky Chances, Inc.*,
    226 Cal. App. 4th 231 (2014) .........................................................................11, 12

**STATUTES**

9 U.S.C. § 3 (Federal Arbitration Act) ........................................................................ passim

Cal. Bus. & Prof. Code § 17200 ...................................................................................6

Cal. Bus. & Prof. Code § 17600 ...................................................................................6

Cal. Civ. Code § 1750 ...................................................................................................6

- 5 -

1              **MEMORANDUM OF POINTS AND AUTHORITIES**

2      **I.      INTRODUCTION**

3              Plaintiff Randy Curran agreed in the written Terms of Service Agreement she signed with

4      defendant Quick Quack Car Wash Holdings, LLC ("Quick Quack") to arbitrate all disputes with

5      Quick Quack, unless she opted out of her agreement to arbitrate within 30 days.  Ms. Curran did

6      not opt out.

7              On July 24, 2020, Ms. Curran filed this putative class action lawsuit against Quick Quack,

8      asserting three causes of action for violation of the California Automatic Renewal Law (Cal. Bus.

9      & Prof. Code § 17600 *et seq.*), violation of the California Consumers Legal Remedies Act (Cal.

10     Civ. Code § 1750 *et seq.*), and violation of the California Unfair Competition Law (Cal. Bus. &

11     Prof. Code § 17200 *et seq.*), based on allegations that Quick Quack did not comply with the

12     Automatic Renewal Law's disclosure, consent, and acknowledgement requirements.  Compl.

13     ¶¶ 27-46.  The broad scope of the arbitration agreement applies to all claims alleged in the

14     complaint.  Yet, Ms. Curran has refused to submit this dispute to arbitration.

15             Both the Federal Arbitration Act ("FAA")—which creates a strong presumption in favor

16     of enforcing arbitration agreements—and case law mandate arbitration here.  Accordingly, Quick

17     Quack moves to compel arbitration of Ms. Curran's claims and to dismiss or stay this action.

18     **II.     BACKGROUND**

19             **A.      Ms. Curran Makes a Purchase at Quick Quack and Agrees to Arbitrate All**

20                     **Disputes with Quick Quack**

21             As Ms. Curran alleges in her complaint, on July 16, 2020, she visited a Quick Quack Car

22     Wash location where she purchased car wash services.  Compl. ¶ 10.  During the process of

23     signing up for the services she purchased on July 16, 2020, Ms. Curran was shown, and signed, a

24     written Terms of Service Agreement with Quick Quack.  Declaration of Joseph Steele ("Steele

25     Decl.") ¶¶ 7-8 & Ex. 3 at 15; Declaration of Johnathan Souza ("Souza Decl.") ¶¶ 6-8.  The Terms

26     of Service Agreement includes an arbitration clause, pursuant to which the parties agreed to

27     arbitrate any dispute between them:

28

                                                    - 6 -

IN THE EVENT OF ANY DISPUTE (OTHER THAN ONE FILED IN A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS, OR AS SET FORTH IN SECTION 9.6) BETWEEN YOU AND QUICK QUACK . . . , YOU AND QUICK QUACK CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR UNDER THE THEN CURRENT RULES OF THE AMERICAN ARBITRATION ASSOCIATION RATHER THAN LITIGATE THE DISPUTE IN COURT.  YOU AND QUICK QUACK ALSO AGREE THAT THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES BETWEEN YOU AND QUICK QUACK.  . . .  THE ARBITRATOR SHALL INTERPRET AND DETERMINE THE VALIDITY OF THE ARBITRATION PROVISION, INCLUDING ANY ALLEGED UNCONSCIONABILITY.

Steele Decl. ¶ 6 & Ex. 1 at 11, § 9.3.  The agreement further provides that Ms. Curran agreed "not to participate in a class action, a class-wide arbitration, claims brought in a representative capacity, or consolidated claims involving another person's account."  *Id.* (emphasis omitted).  The fourth paragraph prominently displayed at the top of the Terms of Service Agreement that Ms. Curran reviewed and signed called attention to the arbitration provision:

YOU AGREE TO THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER DESCRIBED IN SECTION 9.3 TO RESOLVE ANY DISPUTES WITH QUICK QUACK (EXCEPT FOR MATTERS THAT MAY BE TAKEN TO SMALL CLAIMS COURT).

Steele Decl. ¶ 6 & Ex. 1 at 5.  Finally, section 9.3 of the Terms of Service Agreement Ms. Curran reviewed and signed provides that if Ms. Curran chose not to be bound by the arbitration provision, she had to notify Quick Quack in writing "within 30 days of the effective date."  Steele Decl. ¶ 10 & Ex. 1 at 11, § 9.3 (emphasis omitted).  Ms. Curran did not exercise her right to opt out of the arbitration agreement.  Steele Decl. ¶ 10.

**B.    Ms. Curran Sues Quick Quack Despite Her Agreement to Arbitrate**

Despite having agreed to arbitrate any dispute with Quick Quack, Ms. Curran filed this putative class action lawsuit against Quick Quack on July 24, 2020.  The complaint alleges that on July 16, 2020, Ms. Curran visited a Quick Quack location to purchase car wash services.  Compl. ¶ 10.  Ms. Curran alleges she believed, when she gave the car wash attendant her credit card to complete her purchase, that she was being charged $9.99 for a single car wash.  *Id.*  In fact, Ms. Curran enrolled in a membership for unlimited monthly car washes for $19.99 per

- 7 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 81**

1    month, and accordingly Quick Quack charged her $19.99 on July 16, 2020, for the first month.

2    *Id.* ¶ 12; Steele Decl. ¶ 8 & Ex. 4 at 16-18; Souza Decl. ¶ 8.  Five days after her purchase, Ms.

3    Curran noticed the $19.99 charge to her credit card and called Quick Quack.  Compl. ¶ 12.  Quick

4    Quack immediately issued Ms. Curran a refund of $11.00 so that she paid only for a single car

5    wash at a price of $8.99.  *Id.* ¶ 12.

6            Despite Quick Quack reversing the allegedly unauthorized charge, and despite Ms.

7    Curran's agreement to arbitrate, Ms. Curran filed this lawsuit against Quick Quack, alleging

8    Quick Quack did not provide the disclosures, obtain the consent, and provide the

9    acknowledgement required by the California Automatic Renewal Law.  Compl. ¶¶ 6-14.  Ms.

10    Curran seeks to represent "[a]ll individuals in California who were (1) enrolled by Quick Quack

11    Car Wash in an Unlimited Car Wash Membership program on or after December 1, 2010 and (2)

12    charged by Quick Quack Car Wash for a[n] Unlimited Car Wash Membership program within the

13    applicable statute of limitations."  *Id.* ¶ 19.

14    **III.    THE COURT SHOULD ORDER ARBITRATION**

15            Putting aside Ms. Curran's lack of standing and the lack of merit of her claims, as a

16    threshold issue, this dispute does not belong in this Court because Ms. Curran agreed to arbitrate

17    this and any other dispute with Quick Quack.  Pursuant to the directives of the FAA, the Court

18    should:  (1) order arbitration of all claims alleged in the complaint; and (2) dismiss this action or

19    stay it pending completion of the arbitration.

20            **A.    The Federal Arbitration Act Governs Any Dispute Regarding Arbitrability**

21            "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are

22    enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344

23    (2011) (internal citation omitted).  Section 2 of the FAA provides that written arbitration

24    provisions in "a contract evidencing a transaction involving commerce . . . shall be valid,

25    irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

26    revocation of any contract."  9 U.S.C. § 2.

27            The FAA applies to the arbitration agreement here, which expressly and unambiguously

28    provides:  "You and Quick Quack also agree that the Federal Arbitration Act governs the

- 8 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 82**

1   arbitrability of all disputes between you and Quick Quack." Steele Decl. ¶ 6 & Ex. 1 at 11, § 9.3

2   (emphasis omitted). A court must enforce the agreement of contracting parties to apply the FAA.

3   *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("courts must 'rigorously

4   enforce' arbitration agreements according to their terms, including terms that 'specify with whom

5   [the parties] choose to arbitrate their disputes,' and 'the rules under which that arbitration will be

6   conducted'") (internal citation and emphasis omitted); *Aviation Data, Inc. v. Am. Express Travel

7   Related Servs. Co.*, 152 Cal. App. 4th 1522, 1535 (2007) (provision in credit card company's

8   cardholder agreement providing agreement was subject to FAA prevailed over general choice-of-

9   law provision in agreement providing New York law governed agreement).

10   The transaction between Ms. Curran, a California resident, and Quick Quack, which

11   operates over 100 car wash locations in five states, "involved interstate commerce" and,

12   therefore, the FAA governs. Steele Decl. ¶ 4. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*,

13   513 U.S. 265, 282 (1995) (termite prevention contract "involved interstate commerce" where

14   defendants operated in multiple states and materials used to perform the contract came from

15   outside Alabama); *see also Shepard v. Edward Mackay Enters., Inc.*, 148 Cal. App. 4th 1092,

16   1097 (2007) (FAA embodies Congressional intent to provide for enforcement of arbitration

17   agreements within the full reach of the Commerce Clause).

18   The FAA strongly favors enforcement of arbitration agreements and places arbitration

19   agreements on equal footing with all other contracts. *Buckeye Check Cashing, Inc. v. Cardegna*,

20   546 U.S. 440, 443-44 (2006) (citing 9 U.S.C. § 2). In determining whether a particular dispute

21   should be arbitrated, the FAA leaves "no place for the exercise of discretion." *Dean Witter

22   Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Rather, the FAA requires the court to direct the

23   parties to arbitrate any issues with respect to which a valid arbitration agreement exists. *Id.*

24   The FAA preempts any conflicting state anti-arbitration law and any state law that stands

25   as an obstacle to the accomplishment and execution of the full purposes and objectives of

26   Congress. *Concepcion*, 563 U.S. at 351; *Shepard*, 148 Cal. App. 4th at 1097. The FAA applies

27   in both state and federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (FAA creates

28   "a substantive rule applicable in state as well as federal courts").

- 9 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 83**

1   **B.     This Court's Inquiry Is Limited to the Existence of an Agreement to**
2           **Arbitrate**

3       "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the

4   parties have agreed to arbitrate or whether their agreement covers a particular controversy."

5   *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *see Henry Schein, Inc. v. Archer &*

6   *White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  In ruling on a motion to compel arbitration under

7   the FAA where the arbitration agreement at issue contains such a clear and unmistakable

8   "delegation clause," the court determines only whether "a valid arbitration agreement exists. . . .

9   [I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator,

10  a court may not decide the arbitrability issue," and must order arbitration.  *Id.* at 529-30.

11      **1.     An Arbitration Agreement Exists Between Ms. Curran and Quick**
12              **Quack**

13      State contract law determines the question of the existence of an arbitration agreement.

14  *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  The party seeking to

15  compel arbitration bears the burden of proving the existence of an arbitration agreement.

16  *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 325 (2015).  Once the moving party

17  establishes the existence of an arbitration agreement, the burden shifts to the opposing party to

18  establish the factual basis for a defense to enforcement.  *Id.*

19      Here, Quick Quack has met its burden of showing an arbitration agreement exists between

20  Ms. Curran and Quick Quack.  As discussed above, Quick Quack's Terms of Service Agreement

21  includes an arbitration clause requiring arbitration of "any dispute" with Quick Quack, regardless

22  of the circumstances under which it might arise, other than a dispute within the jurisdiction of a

23  small claims court, Steele Decl. ¶ 6 & Ex. 1 at 5, 11, § 9.3 (emphasis omitted), and calls attention

24  to that clause with an admonition in all capital letters prominently displayed near the top of the

25  agreement that "YOU AGREE TO THE ARBITRATION AGREEMENT" in section 9.3, *id.* at 5.

26  Ms. Curran agreed to arbitration by signing the Terms of Service Agreement containing the

27  arbitration provision, verifying her receipt and understanding of the entirety of the agreement.

28  Steele Decl. ¶ 8 & Ex. 3 at 15; Souza Decl. ¶ 8.  The Terms of Service Agreement gave Ms.

- 10 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

1  Curran the right to opt out of the arbitration agreement within 30 days, but she declined to

2  exercise that right.  Steele Decl. ¶ 10.

### 2.    The Arbitrator Has Sole Authority to Decide All Other Issues

4  Courts regularly enforce delegation clauses, delegating arbitrability issues to the

5  arbitrator.  *See, e.g.*, *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 249 (2014).  Importantly,

6  "unless [a plaintiff] challenge[s] [a] delegation provision *specifically*, [a court] must treat it as

7  valid . . . and enforce it . . . , leaving any challenge to the validity of the [agreement to arbitrate]

8  as a whole for the arbitrator."  *Rent-A-Ctr.*, 561 U.S. at 72; *see Tiri*, 226 Cal. App. 4th at 240

9  ("*Rent-A-Center* acknowledges that while courts may consider enforceability challenges *specific*

10  *to delegation clauses*, the arbitrator is to consider challenges to the arbitration agreement as a

11  whole.") (emphasis in original).  If the contract "clear[ly] and unmistakab[ly]" delegates this

12  question to the arbitrator, *id.*, "a court may not override the contract" and "possesses no power to

13  decide the arbitrability issue."  *Henry Schein*, 139 S. Ct. at 527.  Instead, "[the court] must stay

14  the suit, compel arbitration, and allow the arbitrator to determine whether the arbitration

15  agreement and the rest of the contract are enforceable."  *Safadi v. Citibank, N.A.*, No. 12-1356

16  PSG, 2012 U.S. Dist. LEXIS 142773, at *8-9 (N.D. Cal. Oct. 2, 2012).

17  A clause in an arbitration agreement that delegates validity issues to the arbitrator is

18  effective when it is: (1) clear and unmistakable; and (2) not revocable under state law doctrines

19  such as fraud, duress, or unconscionability.  *Tiri*, 226 Cal. App. 4th at 242; *Rent-A-Ctr.*, 561 U.S.

20  at 70 n.1.  Here, the delegation clause in the Terms of Service Agreement is valid, and clear and

21  unmistakable.

### a.    The Delegation Clause Is Clear and Unmistakable

23  A delegation clause is clear and unmistakable "where the agreement explicitly assigns [the

24  issue of arbitrability] to the arbitrator."  *Rent-A-Ctr.*, 561 U.S. at 65.  The Terms of Service

25  Agreement Ms. Curran signed contains this explicit language:  "[t]he arbitrator shall interpret and

26  determine the validity of the arbitration provision, including any alleged unconscionability."

27  Steele Decl. ¶ 6 & Ex. 1 at 11, § 9.3 (emphasis omitted).  Ms. Curran and Quick Quack clearly

28  and unmistakably agreed to delegate to the arbitrator, and not the Court, any disputes about the

- 11 -

AMERICAS 103503414

**EXHIBIT 1 - Page 85**

1   validity and scope of arbitration of the claims Ms. Curran alleges in this action.

2          Moreover, the parties evidenced their intent to grant the arbitrator the authority to

3   determine issues of arbitrability by agreeing to arbitrate "before a single arbitrator under the then

4   current rules of the American Arbitration Association." *Id.* (emphasis omitted). When "parties

5   explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the

6   incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such

7   issues to an arbitrator." *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1442 (2010); *Dream

8   Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004). By incorporating the

9   American Arbitration Association Rules, the parties demonstrated a clear and unmistakable

10  election to have the arbitrator decide the validity of their arbitration agreement.

11                      **b.     The Delegation Clause Is Valid**

12         Finally, Ms. Curran has not challenged the validity of the delegation clause in the Terms

13  of Service Agreement. Even if she had, nothing suggests the delegation is "revocable under state

14  law." *See Tiri*, 226 Cal. App. 4th at 250 (upholding similar delegation clause against an

15  unconscionability challenge). Therefore, the arbitrator, not the Court, must decide any challenges

16  to the applicability of the arbitration clause to the parties' dispute and any defenses to the validity

17  of the arbitration agreement, including fraud, duress, and unconscionability.

18         In any event, the arbitration agreement is not unconscionable. The agreement: (1) allows

19  the consumer to opt out; (2) provides a convenient forum for the consumer to resolve disputes;

20  and (3) to the extent it is deemed "non-negotiable or primarily non-negotiable," is subject to the

21  consumer-friendly rules of the American Arbitration Association. *See Circuit City Stores, Inc. v.

22  Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (opportunity to opt out precludes finding of

23  procedural unconscionability); Steele Decl. ¶ 6 & Ex. 1 at 11, § 9.3.

24  **IV.    THE COURT SHOULD DISMISS THIS ACTION**

25         When a court grants a motion to compel arbitration, it shall also dismiss or stay the action

26  until the arbitration concludes. Where an "arbitration clause was broad enough to bar all of the

27  plaintiff's claims since it required [a plaintiff] to submit all claims to arbitration," a court may

28  properly dismiss all claims. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

- 12 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 86**

1  The "provision for stay in 9 U.S.C. section 3" does not prevent a court from acting in its

2  discretion to dismiss all claims entirely. *Id.* This Court should dismiss the complaint because the

3  arbitration agreement clearly encompasses all claims alleged in the complaint.

4  **V.     CONCLUSION**

5  For the foregoing reasons, Quick Quack respectfully requests the Court enter an order

6  granting this motion to compel arbitration and dismissing this action.

7

8  Dated:  September 18, 2020                          WHITE & CASE LLP

9                                                      By: _____
                                                            Bryan A. Merryman
10

11                                                      Attorneys for Defendant
                                                        QUICK QUACK CAR WASH HOLDINGS,
12                                                      LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY ACTION

**EXHIBIT 1 - Page 87**

**PROOF OF SERVICE**

   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700, Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose direction the service was made.

   On Friday, September 18, 2020 before 5:00 p.m., I served the foregoing document(s) described as:

**DEFENDANT QUICK QUACK CAR WASH HOLDINGS, LLC'S:**

   **(1) NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION;**

   **(2) MEMORANDUM OF POINTS AND AUTHORITIES; AND**

   **(3) DECLARATIONS OF JOHNATHAN SOUZA AND JOSEPH STEELE**

on the person(s) below, as follows:

   Zach P. Dostart
   James T. Hannink
   DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Dr., Ste. 530
   La Jolla, CA 92037-1474
   Telephone:  (858) 623-4200
   Facsimile:  (858) 623-4299
   Email: ZDostart@sdlaw.com
   Email: JHannink@sdlaw.com
   Email: CKlobucar@sdlaw.com
   Email: LDozier@sdlaw.com

   Attorneys for Plaintiff
   RANDY CURRAN

   ☒   **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the e-mail address(es) listed above.  The transmission was reported as complete and without error.

   Executed Friday, September 18, 2020, at Los Angeles, California.

   I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

                                                    _____
                                                              Irma Mares

- 14 -

1   WHITE & CASE LLP
    BRYAN A. MERRYMAN (SBN 134357)
2   bmerryman@whitecase.com
    CATHERINE S. SIMONSEN (SBN 307325)
3   catherine.simonsen@whitecase.com
    555 S. Flower Street, Suite 2700
4   Los Angeles, CA 90071-2433
    Telephone: (213) 620-7700
5   Facsimile: (213) 452-2329

6   Attorneys for Defendant
    QUICK QUACK CAR WASH HOLDINGS,
7   LLC

```
FILED/ENDORSED

SEP 18 2020

By: _____P. Vue_____
        Deputy Clerk
```

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on behalf    Case No. 34-2020-00282263
    of all others similarly situated,           (Assigned to Complex Civil Dept. 40
12                                              Judge Richard K. Sueyoshi)
13                 Plaintiff,

14          v.                                  **DECLARATION OF JOSEPH
                                                STEELE IN SUPPORT OF MOTION
15  QUICK QUACK CAR WASH HOLDINGS,              TO COMPEL ARBITRATION AND
    LLC, a Delaware Limited Liability Company;  TO DISMISS OR STAY ACTION**
16  and Does 1-50 inclusive,

17                 Defendants.                  Date: October 13, 2020
                                                Time: 1:30 p.m.
18                                              Dept.: 53
                                                Judge: Hon. David I. Brown
19
                                                Complaint Filed: July 24, 2020
20

21

22

23

24

25

26

27

28

BY FAX

**EXHIBIT 1 - Page 89**

1       **<u>DECLARATION OF JOSEPH STEELE</u>**

2       I, Joseph Steele, declare:

3       1.     I am over 18 years of age and am competent to make this declaration.

4       2.     I submit this declaration in support of Quick Quack Car Wash Holdings, LLC's

5 ("Quick Quack") Motion to Compel Arbitration and to Dismiss or Stay Action. If called as a

6 witness, I would and could testify competently to all matters in this declaration, all of which are

7 within my personal knowledge or based upon information gathered within the course and scope

8 of my duties.

9       3.     I have served as the Director of Information Technology for Quick Quack since

10 July 2019 and have been employed by Quick Quack since April 2014. In the ordinary course of

11 performing my duties, I regularly access, review, and use member data and other electronic and

12 business records maintained by Quick Quack. In preparing this declaration, I have relied upon

13 my personal knowledge of facts stated herein, as well as my review of Quick Quack's business

14 records, including records of acts, events, or transactions made in the regular course of its

15 business at or near the time of the act, event, or transaction. The records on which I relied are

16 described herein where applicable.

17       4.     Quick Quack operates over 100 car wash locations in five states.

18       5.     In addition to one-time car washes, Quick Quack offers customers the option of

19 enrolling in an unlimited monthly membership. The unlimited monthly membership generally

20 entitles the customer to an unlimited number of car washes each month for a monthly recurring

21 fee.

22       6.     As part of its regular course of business, Quick Quack enters into a written Terms

23 of Service Agreement with each of its membership customers. Attached hereto as **<u>Exhibit 1</u>** is a

24 true copy of Quick Quack's Terms of Service Agreement that has been in effect since May 11,

25 2020.

26       7.     As part of Quick Quack's regular procedure for enrolling new members in a

27 membership program at a Quick Quack location, the customer is shown a screen on a mobile

28 tablet which contains Quick Quack's full Terms of Service Agreement, in scrollable form, below

- 1 -

1   which is a line for the customer to sign to indicate his or her agreement to the Terms of Service

2   Agreement.  Attached hereto as **Exhibit 2** is a true copy of two captures of this screen, showing

3   that the Terms of Service Agreement is scrollable.  As part of Quick Quack's regular procedure

4   for enrolling new members in a membership program at a Quick Quack location, the customer is

5   given the opportunity to scroll through/review the full Terms of Service Agreement on this screen

6   and is then asked to sign on the signature line on the tablet screen to indicate his or her agreement

7   to the Terms of Service Agreement.  After a customer signs the Terms of Service Agreement,

8   Quick Quack stores the customer's signature electronically with a date and time stamp for

9   subsequent access and as a record of the customer's agreement to the terms of service.

10          8.      On or about July 27, 2020, I accessed Quick Quack's member data which I use on

11  a daily basis in performing my job duties and reviewed the company's records for plaintiff Randy

12  Curran.  My review of Ms. Curran's electronic member data showed that on July 16, 2020, Ms.

13  Curran visited the Quick Quack Car Wash located at 3436 Northgate Boulevard, Sacramento, CA

14  95834; Johnathan Souza, a Quick Quack employee and sales team member, entered Ms. Curran's

15  vehicle's license plate number, CA-xxxN181 (redacted with "xxx" to protect Ms. Curran's

16  privacy), into the system to begin a transaction; and Ms. Curran purchased a monthly membership

17  for a price of $19.99 per month and signed her agreement to the terms of service.  Specifically,

18  after the wash package selection had been entered into the computer system and the screen on the

19  mobile tablet assigned to Mr. Souza on July 16, 2020, advanced to the screen displaying the full

20  Terms of Service Agreement and the signature line for Ms. Curran to consent to the Terms of

21  Service Agreement, the system further shows that at 8:46 a.m. on July 16, 2020, the signature line

22  under the Terms of Service Agreement for this transaction was signed.  Attached hereto as

23  **Exhibit 3** is a true copy of Ms. Curran's July 16, 2020 signature agreeing to Quick Quack's

24  Terms of Service Agreement.  Finally, the system shows that at 8:46 a.m. on July 16, 2020, Ms.

25  Curran's Visa card ending in 4150 was charged $19.99 for a Shine 30 Day Unlimited

26  Membership Subscription.  Attached hereto as **Exhibit 4** is a true copy of the transaction detail.

27          9.      On or about July 27, 2020, I accessed Quick Quack's customer service ticket

28  database hosted by Zendesk, which I regularly access in performing my job duties, and reviewed

1    the company's records of calls with plaintiff Randy Curran.  Attached hereto as **<u>Exhibit 5</u>** is a

2    true copy of the company's logs of calls with Randy Curran on July 21 and 22, 2020, which

3    confirm Ms. Curran's purchase.

4          10.    As shown in Exhibit 1, section 9.3 of Quick Quack's Terms of Service Agreement

5    includes an agreement to arbitrate disputes, and allows the member to opt out of her agreement to

6    resolve disputes with Quick Quack through binding arbitration.  To opt out, the member must

7    notify Quick Quack, in writing, by mail to Quick Quack at 1380 Lead Hill Blvd. #260, Roseville,

8    CA 95661, within 30 days of the effective date of the terms of service agreement, stating that the

9    member does not want to resolve disputes with Quick Quack by arbitration.  I checked Quick

10    Quack's records on September 16, 2020, and we have no record of receiving a notice from Ms.

11    Curran that she opted out of her agreement to arbitrate any dispute with Quick Quack.

12          I declare under penalty of perjury under the laws of the State of California the foregoing is

13    true and correct.  Executed on this 17th day of September, 2020, at Roseville, California.

14

15

16                             Joseph Steele

17

18

19

20

21

22

23

24

25

26

27

28

AMERICAS 103531550 **EXHIBIT 1 - Page 92** DECLARATION OF JOSEPH STEELE

## INDEX OF EXHIBITS

| Exhibit Number | Description | Page Number |
|---|---|---|
| 1 | Quick Quack's Terms of Service Agreement in effect since May 11, 2020 | 5 |
| 2 | Screenshot of Quick Quack's Terms of Service Customer Signature Screen | 13 |
| 3 | Plaintiff Randy Curran's July 16, 2020 Signature to Quick Quack's Terms of Service Agreement | 15 |
| 4 | Card Transaction Detail for Plaintiff Randy Curran's July 16, 2020 Purchase at Quick Quack Car Wash | 16 |
| 5 | Quick Quack's Logs of Calls with Randy Curran on July 21 and 22, 2020 | 19 |

- 4 -

**EXHIBIT 1 - Page 93**                DECLARATION OF JOSEPH STEELE

# Exhibit 1 - Quick Quack's Terms of Service Agreement in effect since May 11, 2020

EXHIBIT 1 - Page 94

# TERMS OF SERVICE AGREEMENT

Last Modified on: May 11, 2020

This Terms of Service Agreement (this "Agreement") is a binding contract between you ("Customer," "you" or "your") and Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company, and its subsidiaries and affiliates (collectively, "Quick Quack," "we," or "us"). This Agreement governs your access to and use of the Services (as defined below).

THIS AGREEMENT TAKES EFFECT WHEN YOU CLICK THE ACCEPT BUTTON OR BY ACCESSING OR USING THE SERVICES (the "Effective Date"). BY CLICKING ON THE ACCEPT BUTTON OR BY ACCESSING OR USING THE SERVICES YOU (A) ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT; (B) REPRESENT AND WARRANT THAT YOU HAVE THE RIGHT, POWER, AND AUTHORITY TO ENTER INTO THIS AGREEMENT; AND (C) ACCEPT THIS AGREEMENT AND AGREE THAT YOU ARE LEGALLY BOUND BY ITS TERMS.

YOU SHOULD CAREFULLY READ THIS AGREEMENT BEFORE PURCHASING ANY SERVICES. IF YOU DO NOT AGREE TO THESE TERMS, DO NOT CLICK ON THE ACCEPT BUTTON OR USE THE SERVICES. IF YOU DO NOT ACCEPT THESE TERMS, YOU MAY NOT ACCESS OR USE THE SERVICES.

YOU AGREE TO THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER DESCRIBED IN SECTION 9.3 TO RESOLVE ANY DISPUTES WITH QUICK QUACK (EXCEPT FOR MATTERS THAT MAY BE TAKEN TO SMALL CLAIMS COURT).

## 1. GENERAL TERMS.

1.1 Quick Quack provides car washes to its customers (collectively, "Services"), which may include a membership granting access to the Services (each a "membership"). Quick Quack also provides Quick Quack accounts to its customers to allow them to manage Services that they receive (each an "account"), which can be accessed by phone at 888-772-2792, or as available through online services that Quick Quack may make available from time to time.

1.2 The types of car wash Services may vary at each Quick Quack location. In addition to the car wash Services, Quick Quack may provide certain additional products and services ("additional Services"), such as vacuums, hand towel drying services, towels, dashboard wipes, or other products and services that Quick Quack makes available at a Quick Quack location from time to time; provided, however, Quick Quack does not guarantee that (a) any additional Services will be available, or continue to be available, as part of the car wash Services, (b) that the same additional Services will be available at each Quick Quack location, or (c) that any additional Services will be provided without additional charge.

1.3 We may offer a number of different membership plans, including the following:

(a) "Day Pass": is a membership with a defined end date that does not automatically renew;

(b) "Autopay": is a membership that automatically renews each month;

**EXHIBIT 1 - Page 95**
**Steele Declaration Exhibit 1, Page 5**

Furthermore, some membership plans may have differing conditions or limitations, which shall be disclosed at your sign-up or in other communications made available to you. If you choose Autopay, your membership will continue and automatically renew until termination.

Each membership is per vehicle; provided, however, multiple vehicle "Flock" discount plans are available ("Flock Pricing"). Flock Pricing is available for Autopay memberships only. Only one Flock Pricing plan is available per household and each Flock Pricing plan may only have five (5) active vehicles receiving Services at a time. You may remove vehicles from the Flock Pricing plan by following the procedures in Section 5.2 below; provided, however, that Quick Quack will evaluate on a case-by-case basis any requests to remove and add vehicles, or otherwise swap active vehicles, on a Flock Pricing plan.

1.4 This Agreement governs your use of the Services. By using the Services, you agree (a) that you have read and understood this Agreement, and that this Agreement creates a valid and binding agreement, enforceable against you in accordance herewith; (b) to be bound by this Agreement and any terms, conditions or other policies of Quick Quack, as each may be amended or supplemented from time to time as described in Section 4 below; and (c) that your use of the Services shall comply with all applicable federal, state and local laws or regulations, and that you are solely responsible for your compliance with, familiarity with, and understanding of any such laws applicable to your use.

1.5 Additionally, and without limiting the foregoing, by using the Services, you represent and warrant that you: (a) are eighteen (18) years of age or older; (b) are not currently restricted from using the Services, or not otherwise prohibited from having an account for the Services; (c) are not a competitor of the Services or are not using the Services for reasons that are in competition with the Services or any other product or service offered by Quick Quack; (d) have full power and authority to enter into and perform this Agreement, and doing so will not violate any other agreement to which you are a party; (e) will not violate any rights of Quick Quack, including intellectual property rights such as copyright or trademark rights; and (f) agree to provide at your cost anything necessary to use the Services.

1.6 Without limiting the generality of the foregoing or any other provision hereof, you acknowledge and agree as follows:

- Not to use the Services in any manner that is, or could reasonably be construed to be, unlawful, fraudulent, misleading, malicious, or discriminatory;

- Each membership applies to the vehicle identified at the initial purchase of such Services. Services are not transferrable between vehicles;

**EXHIBIT 1 - Page 96**
**Steele Declaration Exhibit 1, Page 6**

- The Services under this Agreement are for personal use only. The Services may not be used for Commercial Use (as defined below);

- The Services may not be used for Non-Compatible Vehicles (as defined below); and

- Except as set forth in this Agreement or communicated to you in writing by Quick Quack, no Services may be combined with any other Services, programs, or discounts.

As used herein: (a) "Commercial Use" means use of the Services for vehicles that are being used or maintained (i) for the transportation of persons or property for hire, compensation or profit, (ii) by a business, governmental entity or other organization, or (ii) for any other commercial purpose; and (b) "Non-Compatible Vehicles" means vehicles that are not compatible with the equipment at the Quick Quack location for any reason, including, without limitation, vehicles that (i) are incompatible by size, design or modification, or (ii) have accessories, trailers or other items attached to the vehicle that make the vehicle incompatible.

1.7 Access Credentials. You are responsible for keeping your Access Credentials (as defined below) associated with the Services confidential. You will not sell or transfer them to any other person or entity. You will promptly notify us upon learning about any unauthorized access to your Access Credentials. "Access Credentials" means any user name, email address, identification number, password, license plate or license plate number, access key or token, PIN or other method, technology or device used, alone or in combination, to verify a customer and/or access the Services.

## 2. VIOLATION; TERMINATION.

2.1 Quick Quack reserves the right to investigate violations of any of this Agreement or any other policies of Quick Quack or the Services, or any other violations of any state, federal or local law, rule or regulation, and to pursue any remedy available to Quick Quack whether at law, in equity or otherwise. You hereby acknowledge and agree that Quick Quack may notify, involve and cooperate with law enforcement authorities in investigating and prosecuting users who violate this Agreement or any other policies of Quick Quack or the Services, and any other violations of any state, federal or local laws, rules or regulations.

2.2 You further acknowledge and agree that Quick Quack may, in its sole discretion, suspend or cancel the membership of, and terminate this Agreement with, any user that breaches this Agreement. Breach includes, without limitation, your failure to make any and all payments when due.

2.3 Notwithstanding anything to the contrary, Quick Quack may refuse, in its sole discretion, to permit any use of the Services, and may refuse to permit any person to use the Services for any reason at any time.

**EXHIBIT 1 - Page 97**
**Steele Declaration Exhibit 1, Page 7**

## 3. PAYMENT AND REFUNDS.

3.1 In consideration of the provision of the Services and the rights granted to you under this Agreement, you shall pay the fees set out in Quick Quack's then current fee schedule (available at: https://www.dontdrivedirty.com/locationsandpricing/). The fees will vary depending on the Services purchased and may be updated from time to time as described in <u>Section 4</u> below.

3.2 Except when you purchase a Day Pass with cash at a Quick Quack location, when beginning the Services, a valid credit or debit card will be required for billing purposes. You hereby allow Quick Quack to store (or cause a third party to store on behalf of Quick Quack) such payment information and agree to the following policies and procedures for payment of fees related to the Services:

(a) Immediately upon signing up for the Services, the fees associated with your purchase will be billed to such credit or debit card (unless you are paying by cash for a Day Pass, which will be paid at the time of purchase of the Day Pass). If your Services include a monthly subscription (such as a membership), then within one business day before or after the calendar day on which you began such Services, the monthly fees associated with those Services for the following month shall be billed to such credit or debit card by Quick Quack in accordance with the then-current pricing schedule for those Services (e.g., if you began the services on the 5th of the month, the 5th of each following month or one business day before or after the 5th of each following month). You must cancel your monthly subscription before it renews in order to avoid billing of the membership fees for the next month of your monthly subscription. If the credit or debit card associated with your Services should expire, terminate, or any payment is otherwise rejected by the issuing company, Quick Quack may immediately suspend or cancel your membership. It is solely your responsibility to ensure (i) that valid credit or debit card information remains on file for your account, and (ii) that a valid email address remains on file for your account for any communications related to your account.

(b) All fees charged by Quick Quack in connection with the Services are exclusive of any taxes, levies, or duties imposed by any taxing authority, and you shall be, and hereby are, responsible for the payment of all such taxes, levies, or duties arising from your use of the Services.

(c) All payments made to Quick Quack in connection with the Services are non-refundable, and Quick Quack does not offer, and is not required to provide, any refunds or credits. There is no circumstance in which you will be entitled to, or Quick Quack is required to provide, a refund or credit. In its sole discretion, Quick Quack may provide a refund in a manner Quick Quack deems reasonable if (i) Quick Quack terminates your membership without cause before the end of a billing period for which you have paid in full, or (ii) you are seeking a refund otherwise specifically provided for by this Agreement or other written policies of the Services and/or Quick Quack then in effect and fully applicable.

## 4. MODIFICATIONS.

4.1 You acknowledge and agree that we have the right, in our sole discretion, to modify the Services, fees, costs and pricing, and this Agreement from time to time, and that modified terms become effective on posting. You will be notified of modifications through

**EXHIBIT 1 - Page 98**
**Steele Declaration Exhibit 1, Page 8**

posts on https://www.dontdrivedirty.com/terms-of-service/ and may be notified pursuant to the means described in Section 4.3 below. You are responsible for reviewing and becoming familiar with any such modifications. Quick Quack will endeavor to provide at least seven (7) days' advance notice of changes to any service level that Quick Quack reasonably anticipates may result in a material reduction in quality or Services. Your continued use of the Services after the effective date of the modifications will be deemed acceptance of the modified terms.

4.2 Notwithstanding the foregoing or anything to the contrary, (a) Quick Quack reserves the right from time to time to modify or discontinue, temporarily or permanently, the Services (or any part thereof); and (b) Quick Quack shall not be liable to you, or to any third party, for any damages, costs, expenses or other liabilities related to any modification, price change, suspension or discontinuance of the Services.

4.3 Without limiting the foregoing, Quick Quack may use email to an email address associated with your account, even if we have other contact information, to alert you to any modifications. You also agree that Quick Quack may communicate with you through any available means including email, mobile number, telephone, or delivery services, including the postal service, about your account or the Services. You acknowledge and agree that we shall have no liability associated with or arising from your failure to maintain accurate contact or other information, including, but not limited to, your failure to receive information about the Services or pricing.

## 5. UPGRADING, DOWNGRADING OR CANCELLING MEMBERSHIP.

5.1 Your Services may be upgraded, downgraded or cancelled, subject to the terms hereof. When you upgrade, you will immediately be charged the difference between your upgraded Services and your prior Services. When you downgrade Services, you will be charged the applicable fee for the downgraded Services at the beginning of the next billing period after you downgrade.

5.2 You can cancel Services (including removing a vehicle from a Flock Pricing plan) at any time. When you cancel, you are solely responsible for properly canceling the Services. You may cancel the Services by giving notice at least ten (10) days prior to the renewal date of your Services by email at info@dontdrivedirty.com or by phone at 888-772-2792. Cancellation of a membership within forty-five (45) days of the initial purchase will be subject to a five dollar ($5.00) cancellation fee applied in Quick Quack's sole discretion. If you chose not to renew an Autopay membership, your Autopay membership will not renew and your access to the Services will terminate at the end of the applicable billing period. If you choose to cancel your membership immediately (whether an Autopay membership or other membership plan), then in addition to not renewing any Autopay membership, your membership and access to the Services will terminate immediately; provided, however, no refunds shall be given for such cancellation except as determined by Quick Quack in its sole discretion as described in Section 3.2(c).

5.3 The cancellation of a membership will result in the deactivation of your account, and you assume all responsibility for preserving any content or information on your account prior to its cancellation. Quick Quack may retain content or information from your account after cancellation, including in backup and/or archival copies. You may request in writing

**EXHIBIT 1 - Page 99**
**Steele Declaration Exhibit 1, Page 9**

that Quick Quack delete your personal information in accordance with Quick Quack's then-current privacy policy (available at https://www.dontdrivedirty.com/privacy-policy/).

# 6. DISCLAIMER OF WARRANTIES.

6.1 THE SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITH NO WARRANTIES WHATSOEVER. QUICK QUACK AND EACH USER OF THE SERVICES EXPRESSLY DISCLAIM TO THE FULLEST EXTENT PERMITTED BY LAW ALL EXPRESS, IMPLIED, AND STATUTORY WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF PROPRIETARY RIGHTS. Without limiting the generality of the foregoing or any other provision hereof, Quick Quack does not warrant that the Services will be available or that any particular Quick Quack location will be operational at all times.

6.2 YOU UNDERSTAND AND AGREE THAT YOUR USE OF THE SERVICES IS AT YOUR OWN DISCRETION AND RISK AND THAT YOU WILL BE SOLELY RESPONSIBLE FOR ANY LIABILITY, CLAIM, DAMAGES, LOSS, COST OR EXPENSE, INCLUDING, WITHOUT LIMITATION, LOSS OF DATA, THAT RESULTS FROM OR ARISES FROM YOUR USE OF THE SERVICES.

# 7. LIMITATIONS OF LIABILITY.

WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, QUICK QUACK, ITS AFFILIATES, AND ITS SUBSIDIARIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, MANAGERS, SHAREHOLDERS, MEMBERS, EMPLOYEES, AND AGENTS, SHALL NOT BE LIABLE TO YOU, UNDER ANY LEGAL OR EQUITABLE THEORY, FOR (A) ANY CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES OF ANY KIND, INCLUDING WITHOUT LIMITATION LOST PROFITS, REVENUES OR BUSINESS, ARISING OUT OF, UNDER OR RELATING TO THIS AGREEMENT, OR (B) ANY DAMAGES OF ANY KIND ARISING OUT OF, UNDER OR RELATING TO THE SERVICES IN EXCESS OF THREE TIMES THE MOST RECENT PAYMENT IN CONNECTION WITH THE SERVICES, IF ANY, OR $100, WHICHEVER AMOUNT IS GREATER. THIS LIMITATION OF LIABILITY SHALL APPLY REGARDLESS OF WHETHER THE LIMITED REMEDIES PROVIDED HEREIN FAIL THEIR ESSENTIAL PURPOSE.

# 8. INDEMNIFICATION.

You agree to indemnify and hold harmless Quick Quack, its affiliates, and its subsidiaries, and their respective officers, directors, managers, shareholders, members, employees, and agents, from any and all claims, losses, damages, liabilities and any other costs and expenses (including attorneys' fees), arising from or related to a claim (i) due to your failure to comply with this Agreement, or (ii) due to your negligence or willful misconduct or use of the Services in a manner not authorized by this Agreement.

# 9. MISCELLANEOUS.

**EXHIBIT 1 - Page 100**
**Steele Declaration Exhibit 1, Page 10**

9.1 <u>Privacy Policy</u>. By accessing, using, and providing information to or through the Services, you acknowledge that you have reviewed and accepted our Privacy Policy (available at: https://www.dontdrivedirty.com/privacy-policy/), and you consent to all actions taken by us with respect to your information in compliance with the then-current version of our Privacy Policy.

9.2 <u>Governing Law</u>. Any claim under this Agreement or otherwise related to the Services or Quick Quack shall be governed by the laws of the State of California without regard to its conflict of law provisions.

9.3 <u>Arbitration</u>. IN THE EVENT OF ANY DISPUTE (OTHER THAN ONE FILED IN A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS, OR AS SET FORTH IN SECTION 9.6) BETWEEN YOU AND QUICK QUACK ("QUICK QUACK" AS USED IN THIS PROVISION MEANS QUICK QUACK, ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS), YOU AND QUICK QUACK CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR UNDER THE THEN CURRENT RULES OF THE AMERICAN ARBITRATION ASSOCIATION RATHER THAN LITIGATE THE DISPUTE IN COURT. YOU AND QUICK QUACK ALSO AGREE THAT THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES BETWEEN YOU AND QUICK QUACK. IF YOU DO NOT WANT TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY QUICK QUACK IN WRITING, BY MAIL TO QUICK QUACK AT 1380 LEAD HILL BLVD #260 ROSEVILLE, CA 95661, WITHIN 30 DAYS OF THE EFFECTIVE DATE, STATING THAT YOU DO NOT WANT TO RESOLVE DISPUTES WITH QUICK QUACK BY ARBITRATION. IN ADDITION, YOU AGREE NOT TO PARTICIPATE IN A CLASS ACTION, A CLASS-WIDE ARBITRATION, CLAIMS BROUGHT IN A REPRESENTATIVE CAPACITY, OR CONSOLIDATED CLAIMS INVOLVING ANOTHER PERSON'S ACCOUNT, IF QUICK QUACK IS A PARTY TO THE PROCEEDING. THE ARBITRATOR SHALL INTERPRET AND DETERMINE THE VALIDITY OF THE ARBITRATION PROVISION, INCLUDING ANY ALLEGED UNCONSCIONABILITY.

9.4 <u>Severability</u>. If any provision of this Agreement is found by a court of competent jurisdiction or arbitrator to be illegal, void, or unenforceable, the unenforceable provision will be modified so as to render it enforceable and effective to the maximum extent possible in order to effect the intention of the provision; and if a court or arbitrator finds the modified provision invalid, illegal, void or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement will not be affected in any way.

9.5 <u>Entire Agreement</u>. You agree that this Agreement and any terms, conditions or other policies of Quick Quack constitute the entire, complete, and exclusive agreement between you and us regarding the Services, and supersedes all prior agreements and understandings, whether written or oral, or whether established by custom, practice, policy or precedent, with respect to the subject matter of this Agreement.

9.6 <u>Equitable Remedies</u>. You agree that Quick Quack would be irreparably damaged if this Agreement were not specifically followed and enforced. In such an event, you agree that Quick Quack shall be entitled, without bond or other security, or proof of damages, to appropriate equitable relief in the event you breach this Agreement, and that the awarding of equitable relief to Quick Quack will not limit its ability to receive remedies that are

**EXHIBIT 1 - Page 101**
**Steele Declaration Exhibit 1, Page 11**

otherwise available to Quick Quack under applicable laws. Notwithstanding <u>Section 9.3</u>, you agree that Quick Quack shall still be allowed to apply for equitable relief in any jurisdiction.

     9.7 <u>Assignment</u>. Quick Quack may assign this Agreement, in whole or in part, to any person or entity at any time with or without your consent. You may not assign this Agreement without Quick Quack's prior written consent. Your assignment of this Agreement without Quick Quack's prior written consent shall be void.

     9.8 <u>Waivers</u>. Our failure to act with respect to a breach of this Agreement by you or others does not waive our right to act with respect to that breach or subsequent similar or other breaches.

     9.9 <u>Headings</u>. The division of this Agreement into sections and the insertion of captions and headings are for convenience of reference only and will not affect the construction or interpretation of this Agreement.

     9.10<u>Questions</u>. Questions about this Agreement should be addressed to <u>info@dontdrivedirty.com</u> or by phone at 888-772-2792.

**EXHIBIT 1 - Page 102**
**Steele Declaration Exhibit 1, Page 12**

# Exhibit 2 - Screenshot of Quick Quack's Terms of Service Customer Signature Screen

**EXHIBIT 1 - Page 103**

⟨                                                                              ×

**TERMS OF SERVICE AGREEMENT**

This Terms of Service Agreement (this "Agreement") is a binding contract between you ("Customer," "you" or "your") and Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company, and its subsidiaries and affiliates (collectively, "Quick Quack," "we," or "us"). This Agreement governs your access to and use of the Services (as defined below).

Sign Here

Enter Email Address

I decline to provide
my email address.                                  ◯

Email address is required. Signature is required.

**EXHIBIT 1 - Page 104**
**Steele Declaration Exhibit 2, Page 13**

and use of the Services (as defined below).

THIS AGREEMENT TAKES EFFECT WHEN YOU CLICK THE ACCEPT BUTTON OR BY ACCESSING OR USING THE SERVICES (the "Effective Date"). BY CLICKING ON THE ACCEPT BUTTON OR BY ACCESSING OR USING THE SERVICES YOU (A) ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT; (B) REPRESENT AND WARRANT THAT YOU HAVE THE RIGHT, POWER, AND AUTHORITY TO ENTER INTO THIS AGREEMENT; AND (C) ACCEPT THIS AGREEMENT AND AGREE THAT YOU ARE LEGALLY BOUND BY ITS TERMS.

YOU SHOULD CAREFULLY READ THIS AGREEMENT BEFORE PURCHASING ANY SERVICES. IF YOU DO

## Sign Here

Enter Email Address

I decline to provide my email address.

Email address is required. Signature is required.

**EXHIBIT 1 - Page 105**
**Steele Declaration Exhibit 2, Page 14**

# Exhibit 3 - Plaintiff Randy Curran's July 16, 2020 Signature to Quick Quack's Terms of Service Agreement

**EXHIBIT 1 - Page 106**



**TERMS OF SERVICE AGREEMENT**

This Terms of Service Agreement (this "Agreement") is a binding contract between you ("Customer," "you" or "your") and Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company, and its subsidiaries and affiliates (collectively, "Quick Quack," "we," or "us"). This Agreement governs your access to and use of the Services (as defined below).

Enter Email Address

I decline to provide
my email address.

Email address is required. Signature is required.

**EXHIBIT 1 - Page 107**
**Steele Declaration Exhibit 3, Page 15**

# Exhibit 4 - Card Transaction Detail for Plaintiff Randy Curran's July 16, 2020 Purchase at Quick Quack Car Wash

EXHIBIT 1 - Page 108

👤 CUSTOMER                                   cus_Het4tSSECKgQYK 📋

# cus_Het4tSSECKgQYK

| Created | Payments ℹ️ |
|---|---|
| Jul 16, 8:46 AM | 1 payment for $19.99 |

## Timeline

❌ Canceled subscription to **plan_HMv5T8u60e8XZ8**
Jul 21, 2020, 12:04 PM

🔄 Subscribed to **plan_HMv5T8u60e8XZ8**
Jul 16, 2020, 8:46 AM

👤 Customer was created
Jul 16, 2020, 8:46 AM

## Details

| ACCOUNT INFORMATION | | BILLING INFORMATION | |
|---|---|---|---|
| Name | No name | Billing details | No details |
| Email | No email | Next invoice number | 3AC78919-0002 |
| ID | cus_Het4tSSECKgQYK | Tax IDs | No tax IDs |
| Created | Jul 16, 2020, 8:46 AM | Tax status | Taxable |
| Language | English | | |

## Metadata

| | |
|---|---|
| CustomerId | 64605038-9422-4e47-ac28-7bdac3829481 |
| OrgDeviceId | ac70bca9-a68c-409a-9ddd-e0295b702de9 |
| OrgStoreId | 91c274f2-9a0d-5ce6-ac3d-7529f452df21 |
| OrgOrderId | 6033f6ec-18ce-4ea8-9457-c6786fa6ed89 |
| OrgOrderPaymentId | 85eec047-01cc-4aad-bf20-5118bbacf1df |

**EXHIBIT 1 - Page 109**

**Steele Declaration Exhibit 4, Page 16**

# Customer balance

$0.00  USD

# Payment methods

 Visa •••• 4150    Default
Expires ████

# Payments

| | AMOUNT | | DESCRIPTION | DATE |
|---|---|---|---|---|
| ☐ | $19.99 | USD  Refund pending 🕐 | Subscription creation | Jul 16, 8:46 AM |

# Subscriptions

**Shine 30 Day Unlimited Membership Subscription**    Canceled
Billing monthly • No future invoices

# Invoices

| AMOUNT | | | | INVOICE NUMBER | DUE | CREATED |
|---|---|---|---|---|---|---|
| $19.99 | USD | ↻ | Paid | 3AC78919-0001 | — | Jul 16, 8:46 AM |

# Pending invoice items

No pending invoice items

# Coupon

**EXHIBIT 1 - Page 110**

**Steele Declaration Exhibit 4, Page 17**

No active coupon

# Logs

## Load logs

# Events

| | |
|---|---|
| The refund re_1H8B3BD1Fv1TB63Cx3xWOMtV for $11.00 USD has been completed from a $19.99 USD payment | 7/23/20, 1:29:58 PM |
| Customer cus_Het4tSSECKgQYK's subscription to plan_HMv5T8u60e8XZ8 was canceled | 7/21/20, 12:04:47 PM |
| Customer cus_Het4tSSECKgQYK subscribed to plan_HMv5T8u60e8XZ8 | 7/16/20, 8:46:42 AM |
| in_1H5ZIBD1Fv1TB63CfxyxSDVH's payment for an invoice for $19.99 USD succeeded | 7/16/20, 8:46:42 AM |
| in_1H5ZIBD1Fv1TB63CfxyxSDVH's invoice for $19.99 USD was paid | 7/16/20, 8:46:42 AM |
| A draft invoice for $19.99 USD to in_1H5ZIBD1Fv1TB63CfxyxSDVH was finalized | 7/16/20, 8:46:42 AM |
| A draft invoice was created | 7/16/20, 8:46:42 AM |
| cus_Het4tSSECKgQYK's details were updated | 7/16/20, 8:46:42 AM |
| The payment pi_1H5ZIBD1Fv1TB63CEs7TiPr8 for $19.99 USD has succeeded | 7/16/20, 8:46:42 AM |
| ch_1H5ZICD1Fv1TB63C2Ksvmiw7 was charged $19.99 USD | 7/16/20, 8:46:42 AM |

**View more events**

# Exhibit 5 - Quick Quack's Logs of Calls with Randy Curran on July 21 and 22, 2020

EXHIBIT 1 - Page 112

# 📗 #734368 Phone Call from: Caller +1 ███████ -8029

| **Submitted** | **Received via** | **Requester** |
|---|---|---|
| July 21, 2020, 11:57 AM | Phone call (inbound) | Randy Curran |

| **Status** | **Type** | **Priority** | **Group** | | **Assignee** |
|---|---|---|---|---|---|
| Solved | - | - | Customer Service Agents | | Alyssa |

---

**Categories**

Abandoned

---

**Alyssa**   Jul 21, 11:57 AM                  *Internal note*

Call from: +1 ██████ -8029
Call to: +1 (916) 831-7103
Time of call: July 21, 2020 at 6:56:03 PM
Answered by: Alyssa

---

**Alyssa**   Jul 21, 11:57 AM                  *Internal note*

Inbound call from +1 ██████ -8029

Call Details
Call from: +1 ██████ -8029
Call to: +1 (916) 831-7103
Time of call: 2020-07-21 18:56:03 UTC
Location: Walnut creek, California, United States
Answered by: Alyssa
Length of phone call: 1 minute, 26 seconds

---

Support Software by **Zendesk**

**EXHIBIT 1 - Page 113**

**Steele Declaration Exhibit 5, Page 19**

# #734373 Phone Call from: Caller +1 ███████-8029

---

**Submitted**
July 21, 2020, 11:59 AM

**Received via**
Phone call (inbound)

**Requester**
Randy Curran

**Status** | **Type** | **Priority** | **Group** | **Assignee**
Solved | - | - | Customer Service Agents | Clentatiana

---

**Categories** | **Cancellation Reason** | **Store** | **License Plate**
Cancellation | Unauthorized | 0605 | CA / ███N181

**QManager Link**
https://qman.qqcw.us/CRM/accounts/64605038-9422-4e47-ac28-7bdac3829481

**Stripe Link**
https://dashboard.stripe.com/customers/cus_Het4tSSECKgQYK

---

**Clentatiana**  Jul 21, 11:59 AM                             Internal note

Call from: +1 ███████-8029
Call to: +1 (916) 831-7103
Time of call: July 21, 2020 at 6:57:50 PM
Answered by: Clentatiana

---

**Clentatiana**  Jul 21, 12:04 PM                             Internal note

Inbound call from +1 ███████-8029

Call Details
Call from: +1 ███████-8029
Call to: +1 (916) 831-7103
Time of call: 2020-07-21 18:57:50 UTC
Location: Walnut creek, California, United States
Answered by: Clentatiana
Length of phone call: 6 minutes, 44 seconds

---

**Clentatiana**  Jul 21, 12:06 PM                             Internal note

single washes , 10$ upgrade , wants $10

4150 ███ jul 17th 19.99

added to tracker
customer was not aware this was a membership the attendant told her it was an "upgrade" cancelled so she needs a partial refund of $11 because she only wanted the single good wash
Unauthorized: customer did not mean to purchase a membership, or didn't understand the auto billing portion of an auto membership- CD.

---

Support Software by **Zendesk**

**EXHIBIT 1 - Page 114**

**Steele Declaration Exhibit 5, Page 20**

# #734647 Randy Curran

| Submitted | Received via | Requester |
|---|---|---|
| July 21, 2020, 1:30 PM | Phone call (inbound) | Randy Curran |

| Status | Type | Priority | Group | Assignee |
|---|---|---|---|---|
| Solved | - | - | Operations Contact Required | Clentatiana |

| Categories | Store | QManager Link |
|---|---|---|
| Complaint | 0605 | https://qman.qqcw.us/CRM/accounts/64605038-9422-4e47-ac28-7bdac3829481 |
| Kissflow Request # | | Operations Contact Required |
| ZD001073 | | Yes |

---

**Amanda V**  Jul 21, 1:30 PM                                    Internal note

Call from: +1 ███████8029
Call to: +1 (916) 831-7103
Time of call: July 21, 2020 at 8:30:12 PM
Answered by: Amanda V

---

**Amanda V**  Jul 21, 1:39 PM                                    Internal note

Inbound call from +1 ██████-8029

Call Details
Call from: +1 █████-8029
Call to: +1 (916) 831-7103
Time of call: 2020-07-21 20:30:12 UTC
Location: Walnut creek, California, United States
Answered by: Amanda V
Length of phone call: 9 minutes, 42 seconds

---

**Amanda V**  Jul 21, 1:40 PM                                    Internal note

**\*\*\*Please fill EVERYTHING OUT, if they do not have the info, use N/A.\*\*\*\***

| | |
|---|---|
| Site - | 605 |
| Name – | Randy Curran |
| Email | NA |
| LP number – | CA-███N181 |
| Incident number – | NA |
| Phone number – | ██████-8029 |
| Date of incident – | NA |
| Comment | Complaint - Customer is irate said that she was enrolled in a membership without her permission and that it was stolen from her. Said she would take a photo of the employee who signed her up and post it online. Requesting a follow up form the regional. Account cancelled by agent and refund request for $11 |

**EXHIBIT 1 - Page 115**

**Steele Declaration Exhibit 5, Page 21**

**Clentatiana**  Jul 31, 12:23 PM             Internal note

I was able to contact this customer and de-escalate her. I will be contacting Dan to touch base and finish up the resolution.-Operations Response

Support Software by **Zendesk**

# 🍃 #735968 Phone Call from: Randy Curran

---

**Submitted**            **Received via**            **Requester**
July 22, 2020, 8:15 AM    Phone call (inbound)        Randy Curran

**Status**   **Type**   **Priority**   **Group**                     **Assignee**
Solved       -          -              Customer Service Agents        Sam

---

**Categories**    **QManager Link**
Question          https://qman.qqcw.us/CRM/accounts/64605038-9422-4e47-ac28-7bdac3829481
**Question Subcategory**
Refund Request

---

**Sam**  Jul 22, 8:15 AM                                              Internal note

Call from: +1 ███████-8029
Call to: +1 (916) 831-7103
Time of call: July 22, 2020 at 3:15:25 PM
Answered by: Sam

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Sam**  Jul 22, 8:20 AM                                              Internal note

Inbound call from +1 ██████-8029

Call Details
Call from: +1 ██████-8029
Call to: +1 (916) 831-7103
Time of call: 2020-07-22 15:15:25 UTC
Location: Walnut creek, California, United States
Answered by: Sam
Length of phone call: 5 minutes, 17 seconds

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Sam**  Jul 22, 8:22 AM                                              Internal note

placed request 734647 on refund tracker line 284-SG

---

Support Software by **Zendesk**

1   WHITE & CASE LLP
    BRYAN A. MERRYMAN (SBN 134357)
2   bmerryman@whitecase.com
    CATHERINE S. SIMONSEN (SBN 307325)
3   catherine.simonsen@whitecase.com
    555 S. Flower Street, Suite 2700
4   Los Angeles, CA 90071-2433
    Telephone: (213) 620-7700
5   Facsimile: (213) 452-2329

6   Attorneys for Defendant
    QUICK QUACK CAR WASH HOLDINGS,
7   LLC

8
                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                      FOR THE COUNTY OF SACRAMENTO
10

11  RANDY CURRAN, individually and on behalf    Case No. 34-2020-00282263
    of all others similarly situated,            (Assigned to Complex Civil Dept. 40
12                                               Judge Richard K. Sueyoshi)
            Plaintiff,
13                                               **DECLARATION OF JOHNATHAN**
        v.                                       **SOUZA IN SUPPORT OF MOTION**
14                                               **TO COMPEL ARBITRATION AND**
    QUICK QUACK CAR WASH HOLDINGS,               **TO DISMISS OR STAY ACTION**
15  LLC, a Delaware Limited Liability Company;
    and Does 1-50 inclusive,
16
            Defendants.                          Date: October 13, 2020
17                                               Time: 1:30 p.m.
                                                 Dept.: 53
18                                               Judge: Hon. David I. Brown
19                                               Complaint Filed: July 24, 2020
20
21
22
23
24
25
26
27
28

FILED/ENDORSED
SEP 18 2020
By: ___P. Vue___
Deputy Clerk

BY FAX

**EXHIBIT 1 - Page 118**

1  **<u>DECLARATION OF JOHNATHAN SOUZA</u>**

2  I, Johnathan Souza, declare:

3  1.  I am over 18 years of age and am competent to make this declaration.

4  2.  I submit this declaration in support of Quick Quack Car Wash Holdings, LLC's

5  ("Quick Quack") Motion to Compel Arbitration and to Dismiss or Stay Action.  If called as a

6  witness, I would and could testify competently to all matters in this declaration, all of which are

7  within my personal knowledge or based upon information gathered within the course and scope

8  of my duties.

9  3.  I have been continuously employed by Quick Quack as a sales team member since

10 in or around March 2020.  I have always worked at the Quick Quack Car Wash located at 3436

11 Northgate Boulevard, Sacramento, CA 95834.

12 4.  On July 16, 2020, I worked as a sales team member at Quick Quack from

13 approximately 8:29 a.m. to 12:30 p.m.

14 5.  In addition to one-time car washes, Quick Quack offers customers the option of

15 enrolling in an unlimited monthly membership.  The unlimited monthly membership generally

16 entitles the customer to an unlimited number of car washes each month for a monthly recurring

17 fee.  My duties include (and on July 16, 2020 included) assisting interested customers with

18 enrolling in unlimited monthly memberships.

19 6.  When I started working at Quick Quack, I received training on how to assist a

20 customer with enrolling in an unlimited monthly membership.  If a customer asked to enroll in the

21 monthly membership program, after entering the customer's vehicle's license plate number into

22 the system to begin a transaction, I was trained to show the customer a mobile tablet screen

23 containing Quick Quack's Terms of Service Agreement, allow the customer to scroll through/read

24 the Terms of Service Agreement, and obtain the customer's signature agreeing to the Terms of

25 Service Agreement.

26 7.  My duties and my regular practice on July 16, 2020, included showing customers

27 enrolling in unlimited monthly memberships the mobile tablet screen containing the full Terms of

28

- 1 -

1  Service Agreement, allowing the customer to scroll through/read the Terms of Service

2  Agreement, and obtaining the customer's signature agreeing to the Terms of Service Agreement.

3      8.    I understand that Quick Quack's records show that Randy Curran visited the Quick

4  Quack Car Wash located at 3436 Northgate Boulevard, Sacramento, CA 95834 on July 16, 2020,

5  and that I assisted Ms. Curran in enrolling in an unlimited monthly membership.  I further

6  understand that Quick Quack's computer system captured a signature entered on the signature

7  line under the Terms of Service Agreement on the mobile tablet screen for this transaction at 8:46

8  a.m. on July 16, 2020.  Based on my training and practice on July 16, 2020, that is Ms. Curran's

9  signature accepting the Terms of Service Agreement captured by Quick Quack's computer

10  system at 8:46 a.m. on July 16, 2020.

11      I declare under penalty of perjury under the laws of the State of California the foregoing is

12  true and correct.  Executed on this 17th day of September, 2020, at Sacramento, California.

Johnathan Souza

AMERICAS 103531557  **EXHIBIT 1 - Page 120**    DECLARATION OF JOHNATHAN SOUZA

1 | JAMES T. HANNINK (131747)
jhannink@sdlaw.com
2 | ZACH P. DOSTART (255071)
zdostart@sdlaw.com
3 | DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
4 | La Jolla, California 92037-1474
Tel:  858-623-4200
5 | Fax: 858-623-4299

6 | Attorneys for Plaintiff

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SACRAMENTO

10

11 | RANDY CURRAN, individually and on
behalf of all others similarly situated,

12 |                 Plaintiff,

13 | vs.

14 | QUICK QUACK CAR WASH HOLDINGS,
LLC, a Delaware limited liability company;
15 | and DOES 1-50, inclusive,

16 |                 Defendants.

17

| CASE NO. 34-2020-00282263
(Assigned to Complex Civil Dept. 40
Judge Richard K. Sueyoshi)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION**

Date:      October 13, 2020
Time:      1:30 p.m.
Dept.:      53
Judge:      Hon. David I. Brown

Action Filed:      July 24, 2020
Trial Date:      None Set

**EXHIBIT 1 - Page 121**

MEMO. OF P&A IN OPPOSITION TO MOTION TO COMPEL ARBITRATION        Case No. 34-2020-00282263

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

I.  INTRODUCTION ........................................................................................................ 1

4

II.  PRINCIPLES OF CONTRACT FORMATION ..................................................... 1

5
    A.  Arbitration Is a Matter of Contract ............................................................... 1

6
    B.  Contract Formation Under California Law ................................................... 1

7

III.  QUICK QUACK'S MOTION DOES NOT ESTABLISH THE ELEMENTS OF

8
CONTRACT FORMATION FOR AN AGREEMENT TO ARBITRATE.......................... 2

9
    A.  Disputed Issues of Fact Foreclose Finding an Agreement to Arbitrate Based

10
on the Current Record ................................................................................... 2

        1.  Quick Quack's Evidence ................................................................... 2

11
        2.  Plaintiff's Evidence .......................................................................... 3

12
    B.  The Motion to Compel Arbitration Would Fail Even If Quick Quack's

13
Declarations Were Considered Alone ........................................................... 4

14
    C.  The Wording of the Arbitration Agreement Is Irrelevant at This Point................... 5

15
IV.  CONCLUSION ........................................................................................................ 5

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
5
 475 U.S. 643 (1986) ............................................................................................................. 1

6

*First Options of Chi., Inc. v. Kaplan*,
 514 U.S. 938 (1995) ............................................................................................................. 1

7

*Specht v. Netscape Communc's Corp.*,
8
 306 F.3d 17 (2d Cir. 2002) .............................................................................................. 2, 5

9

**California Cases**

10

*Lacayo v. Catalina Restaurant Grp. Inc.*,
11
 38 Cal. App. 5th 244 (2019) ............................................................................................... 1

12

*Long v. Provide Commerce, Inc.*,
 245 Cal. App. 4th 855 (2016) .......................................................................................... 1, 2

13

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
14
 25 Cal. App. 3d 987 (1972) ................................................................................................ 2

15

**California Statutes**

16

Cal. Civ. Code
17
 § 1549 ................................................................................................................................... 1
 § 1550 ................................................................................................................................... 2
18
 § 1565 ................................................................................................................................... 2
 § 1581 ................................................................................................................................... 2

19

20

21

22

23

24

25

26

27

28

MEMO. OF P&A IN OPPOSITION TO MOTION TO COMPEL ARBITRATION  Case No. 34-2020-00282263

**EXHIBIT 1 - Page 123**

I.     **INTRODUCTION**

Quick Quack Car Wash Holdings, LLC's ("Quick Quack") motion to compel arbitration must be denied because the record does not establish that plaintiff Randy Curran ("Plaintiff") had notice of the arbitration provision on which Quick Quack relies or that she manifested assent to it. Both notice and manifestation of assent are necessary prerequisites for contract formation.

Quick Quack's motion repeatedly asserts that Plaintiff "reviewed" the (purported) Terms of Service Agreement (which contains an arbitration provision) on the attendant's tablet device, and that Plaintiff "signed" it.  But those statements are *assumptions*, unsupported by any percipient observation and not established by documentary evidence.

**In fact, when Plaintiff was at the Quick Quack car wash on July 16, 2020, she was <u>not</u> shown or given a copy of the Terms of Service Agreement, she was <u>not</u> asked to review it, and she did <u>not</u> sign it.  Quick Quack has no evidence otherwise.**

Accordingly, Quick Quack fails to carry its burden to prove the formation of a contractual agreement to arbitrate disputes.

II.    **PRINCIPLES OF CONTRACT FORMATION**

    A.     **Arbitration Is a Matter of Contract**

Arbitration is a matter of contract, and thus a matter of consent.  Therefore, whenever a litigant seeks to compel another party to arbitration, a threshold issue is whether, in fact, the parties entered into a contractual agreement to arbitrate.  (*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 861 (2016); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).)  Here, as the party seeking to compel arbitration, Quick Quack has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.  (*Lacayo v. Catalina Restaurant Grp. Inc.*, 38 Cal. App. 5th 244, 257 (2019).)  The issue of whether the parties entered into an agreement to arbitrate is determined under "ordinary state-law principles that govern the formation of contracts." (*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).)

    B.     **Contract Formation Under California Law**

A "contract" is "an agreement to do or not to do a certain thing."  (Civ. Code, § 1549.)

1

1  One of the "essential elements" to the existence of a contract is mutual consent. (Civ. Code,

2  § 1550.)  The consent of the parties to a contract must be: (1) "Free"; (2) "Mutual"; and

3  (3) "Communicated by each to the other." (Civ. Code, § 1565.)  "Consent can be communicated

4  with effect, only by some act or omission of the party contracting, by which he *intends* to

5  communicate it, or which *necessarily tends* to such communication." (Civ. Code, § 1581 (italics

6  added).)  To create a contract, manifestation of consent must be "unambiguous."  For any term to

7  be part of a contract, there must be both "[r]easonably conspicuous notice of the existence of

8  contract terms and unambiguous manifestation of assent to those terms …" (*Specht v. Netscape*

9  *Communc's Corp.*, 306 F.3d 17, 31 (2d Cir. 2002) (applying California law).)

10  Mutual assent is determined under an "objective standard applied to the outward

11  manifestations or expressions of the parties," not by any "unexpressed intentions or

12  understandings." (*Long*, 245 Cal. App. 4th at p. 862 [citation omitted].)  This objective standard is

13  judged with due regard for the context in which the issue of assent arises.  An offeree "is not

14  bound by inconspicuous contractual provisions of which he was unaware, contained in a document

15  whose contractual nature is not obvious." (*Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.

16  App. 3d 987, 993 (1972).)

17  **III.    QUICK QUACK'S MOTION DOES NOT ESTABLISH THE ELEMENTS OF**
       **CONTRACT FORMATION FOR AN AGREEMENT TO ARBITRATE**

18

19      **A.    Disputed Issues of Fact Foreclose Finding an Agreement to Arbitrate Based on**
             **the Current Record**

20          **1.    Quick Quack's Evidence**

21  Quick Quack relies on declarations from two of its employees:  Johnathan Souza, the car

22  wash attendant who assisted Plaintiff on July 16, 2020; and Joseph Steele, Director of Information

23  Technology.

24  Mr. Souza's testimony is that he was "train[ed]" to enroll customers in an unlimited

25  monthly membership if the customer "asked" to enroll in the membership program; and that if a

26  customer asks to enroll, his "training" and "regular practice" is to "show" the customer a mobile

27  tablet screen containing Quick Quack's Terms of Service Agreement, "allow" the customer to

28  "scroll through/read" the Terms of Service Agreement, and "obtain the customer's signature."

2

1  (Declaration of Johnathan Souza ("Souza Decl.") ¶¶6-7.)   It is evident from Mr. Souza's
2  declaration that he has no actual recollection of assisting with Plaintiff's transaction on July 16,
3  2020, and, more specifically, that he has no actual recollection of showing Plaintiff the tablet
4  screen or of Plaintiff signing on the screen.   Lacking such recollection, Mr. Souza's testimony is
5  limited to the "training" he received when he started working at Quick Quack (*id*. ¶6), and what he
6  describes as his "duties" and "regular practice" (*id*. ¶7).   His testimony about Plaintiff's
7  transaction is explicitly based on his "understand[ing]," which in turn is derived from Quick
8  Quack's "records" and "computer system."   (*Id*. ¶8.)

9       Mr. Steele likewise has no percipient knowledge of what happened during Plaintiff's
10  transaction.   Instead, based solely on his review of Quick Quack's electronic records, he states that
11  Plaintiff "purchased a monthly membership" and that she "signed her agreement to the terms of
12  service."   (Steele Decl. ¶8.)   He then goes on to testify (*speculate* is a more accurate term) that
13  Exhibit 3 to his declaration is a "true copy" of Ms. Curran's signature "agreeing to Quick Quack's
14  Terms of Service Agreement."   (*Ibid*.)   Mr. Steele plainly did not witness the events that took
15  place on July 16, 2020, and he lacks personal knowledge about who applied the diagonal mark
16  shown in Exhibit 3 to his declaration.   Plaintiff objects to Mr. Steele's testimony based on
17  California Evidence Code §§ 702(a), 800.

18            **2.**     **Plaintiff's Evidence**

19       In contrast, Plaintiff's testimony is that when she went to Quick Quack for a car wash on
20  July 16, 2020, she did not ask to be enrolled in a monthly membership; that the attendant did not
21  present her with a mobile tablet; that she was not told that the tablet screen was displaying an
22  agreement that (supposedly) applied to her; that she was not asked to review an agreement; and
23  that she did not sign anything on the screen.   (Curran Decl. ¶¶6-9.)

24       During a telephone conversation with a Quick Quack representative several days after the
25  July 16 events, Plaintiff was told that Quick Quack makes a video recording of all interactions
26  between customers and car wash attendants.   Based on that statement, Plaintiff believes Quick
27  Quack has video of her interaction with Mr. Souza on July 16, 2020, which she believes will
28  validate the statements in her declaration.   Plaintiff has served Quick Quack with a Demand for

MEMO. OF P&A IN OPPOSITION TO MOTION TO COMPEL ARBITRATION    Case No. 34-2020-00282263
**EXHIBIT 1 - Page 126**

1  Inspection pursuant to Code of Civil Procedure § 2031.010 et seq., seeking production of the

2  video from July 16, as well as other pertinent documents.

3       Based on the current record, the Court should deny the motion to compel arbitration on the

4  ground that Quick Quack has failed to carry its burden of proof.  At a minimum, however, the

5  Court should defer a ruling until after the requested video and other documents are produced and

6  after Plaintiff and her counsel have an opportunity to brief any issues that may relate to such new

7  evidence.

8      **B.**    **The Motion to Compel Arbitration Would Fail Even If Quick Quack's**
           **Declarations Were Considered Alone**

9

10       Even if one were to ignore Plaintiff's testimony and accept without question the factual

11  matters (as distinguished from matters of opinion or speculation) set forth in the Souza and Steele

12  declarations, the motion to compel arbitration would still have to be denied.  That is because the

13  procedures described in those declarations—that a Quick Quack attendant is to show a customer

14  the screen of a mobile tablet and ask the customer to sign—are inadequate to put customers on

15  constructive notice of an arbitration provision buried in the Terms of Service Agreement, and

16  those procedures do not result in an unambiguous manifest of consent *to arbitration*.

17       As Exhibit 2 to Mr. Steele's declaration makes clear, the tablet is programmed to display a

18  four-word heading ("Terms of Service Agreement"), followed by a single four-line paragraph of

19  text (which does not mention anything about arbitration), which is followed immediately by the

20  directive "Sign Here."  (Steele Decl. Ex. 2, p. 13.)  There is nothing on that page to notify

21  consumers that the equivalent of eight printed pages, including an arbitration provision, are hidden

22  out of sight.  There is no instruction stating that a consumer should scroll down to see more

23  binding terms, and indeed, there is no indication that a scroll function even exists or how it can be

24  operated.  It may seem obvious to Mr. Steele (a professional *Director of Information Technology*)

25  and to Mr. Souza (having been trained on use of the tablet and a regular user) that there is hidden

26  text that can be accessed by scrolling, but there is no reason to attribute their insider knowledge to

27  ordinary car wash customers.  Simply put, the design of that screen does not put reasonably

28  prudent car wash customers on constructive notice of a hidden arbitration provision.  (*See*, e.g.,

1   *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002) (a reference to license

2   terms on a submerged screen that could be accessed by scrolling did not place consumers on

3   constructive notice of those terms) (applying California law).)   Similarly, the mere fact that a

4   customer may comply with the "sign here" directive does not constitute an unambiguous

5   manifestation of consent to a hidden and undisclosed arbitration provision.   That lack of

6   constructive notice is particularly acute when one considers that the entire process is supposed to

7   take place in the few moments before a customer is to enter the car wash bay, with other drivers

8   likely waiting (impatiently) behind.  (*Spect*, 306 F.3d at 32 (whether the circumstances give rise to

9   constructive notice is judged based on the context in which the transaction takes place).)

10          In sum, Quick Quack's procedures do not put customers on constructive notice of the

11   arbitration provision.  Accordingly, even if Mr. Souza had rigorously adhered to Quick Quack's

12   procedures during his interaction with Plaintiff on July 16, there would still be no legitimate basis

13   to compel arbitration.

14          **C.      The Wording of the Arbitration Agreement Is Irrelevant at This Point**

15          Much of Quick Quack's motion is devoted to discussing the text of the arbitration

16   provision, the validity of the delegation clause, and the scope of authority delegated to the

17   arbitrator.   None of that matters.   As Quick Quack itself acknowledges, before a party can be

18   compelled to arbitrate, the moving party must first establish the existence of an *agreement* to

19   arbitrate.  Quick Quack has failed to establish that necessary prerequisite.

20   **IV.    CONCLUSION**

21          Based on the foregoing, the motion to compel arbitration should be denied.

22   Dated:  September 29, 2020                  DOSTART HANNINK & COVENEY LLP

23

24                                              _____

25                                              ZACH P. DOSTART
                                                Attorneys for Plaintiff

26   929242.5

27

28

                                                      5
MEMO. OF P&A IN OPPOSITION TO MOTION TO COMPEL ARBITRATION    Case No. 34-2020-00282263

**EXHIBIT 1 - Page 128**

1 | JAMES T. HANNINK (131747)
jhannink@sdlaw.com
2 | ZACH P. DOSTART (255071)
zdostart@sdlaw.com
3 | DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
4 | La Jolla, California 92037-1474
Tel:  858-623-4200
5 | Fax: 858-623-4299

6 | Attorneys for Plaintiff

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SACRAMENTO

10

11 | RANDY CURRAN, individually and on behalf of all others similarly situated,

12 | Plaintiff,

13 | vs.

14 | QUICK QUACK CAR WASH HOLDINGS, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,

15 |

16 | Defendants.

17 |

18 |

19 |

CASE NO. 34-2020-00282263
(Assigned to Complex Civil Dept. 40
Judge Richard K. Sueyoshi)

**DECLARATION OF RANDY CURRAN IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date:      October 13, 2020
Time:      1:30 p.m.
Dept.:     53
Judge:    Hon. David I. Brown

Action Filed:    July 24, 2020
Trial Date:      None Set

20

21

22

23

24

25

26

27

28

---

DECLARATION OF RANDY CURRAN IN OPPOSITION TO MOTION TO     Case No. 34-2020-00282263
COMPEL ARBITRATION AND STAY PROCEEDINGS

**EXHIBIT 1 - Page 129**

I, Randy Curran, declare as follows:

1.      I am the named plaintiff in this action.

2.      On July 16, 2020, I visited the Quick Quack Car Wash ("Quick Quack") located at 3436 Northgate Boulevard, Sacramento, CA 95834.  I have gotten my car washed many times at this Quick Quack location.  I usually purchase the basic wash, which costs $7.99.  However, I sometimes upgrade to the deluxe wash, which costs $9.99.

3.      This Quick Quack location is an automated drive-thru car wash.  There is a lane in which cars can line up to await the service.  When a car reaches the front of the line (or if no other cars are already waiting), the customer is greeted by a car wash attendant who takes the customer's order and receives payment.  The car wash attendant uses a mobile tablet device to enter order information and process credit card/debit card payments.  After making the payment, the customer is then guided to drive the car into the car wash bay, where the car is washed and then dried by automated equipment.  The customer remains in the car throughout this process.

4.      On July 16, 2020, I initially requested the basic wash, and in response, the attendant asked if I wanted to upgrade to the deluxe wash.  I responded that I would take the deluxe wash.  I then gave the attendant my debit card to make the payment.  After the debit card transaction was completed, the attendant handed my debit card back to me.

5.      I have reviewed the Declaration of Johnathan Souza in Support of Quick Quack's Motion to Compel Arbitration and to Dismiss or Stay Action, dated September 17, 2020.  Based on that declaration, it is my understanding that Mr. Souza was the car wash attendant who took my order and processed my payment on July 16, 2020.

6.      During the ordering and payment process, I did not ask to be enrolled in a membership, and Mr. Souza did not say that he was signing me up for a membership.

7.      During the ordering and payment process, Mr. Souza did not present the mobile tablet to me; he did not say that the tablet screen was displaying a Terms of Service Agreement (or any other agreement) that supposedly applied to me; he did not request that I review anything on the tablet screen; and I did not sign on the tablet screen.

---

1

DECLARATION OF RANDY CURRAN IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Case No. 34-2020-00282263

EXHIBIT 1 - Page 130

1    8.    I have reviewed Exhibit 3 to the Declaration of Joseph Steele in Support of Motion

2  to Compel Arbitration and to Dismiss or Stay Action, dated September 17, 2020.  I had never seen

3  that page before reviewing the Declaration of Joseph Steele.  The diagonal mark that appears on

4  Exhibit 3 is not my signature, and I did not make that mark.

5    9.    I have also reviewed Exhibit 1 to the Declaration of Joseph Steele, which is entitled

6  "Terms of Service Agreement."  I had never seen that document before reviewing the Declaration

7  of Joseph Steele.

8    10.    On July 21, 2020, I noticed that Quick Quack had posted a charge to my debit card

9  in the amount of $19.99.  After seeing the charge, I called Quick Quack and asked for a partial

10  refund.  Later, I realized that the charge to my debit card appeared to be an automatically renewing

11  charge, so I again called Quick Quack and asked to speak with a manager.  I received a call back

12  from "Kat," who said she was a Store Lead.  During our conversation, Kat told me that Quick Quack

13  makes a video recording of all interactions between car wash attendants and customers.  Based on

14  that statement, I believe Quick Quack has video of the interaction between Mr. Souza and me on

15  July 16, 2020.  I believe the video will support the statements made in this declaration, and I request

16  that the Court require that Quick Quack produce the video and other relevant documents that have

17  been requested.

18    I declare under penalty of perjury under the laws of the State of California that the foregoing

19  is true and correct and that this declaration is executed on _____9/29/2020_____, at Elk Grove,

20  California.

21

22    DocuSigned by:
    *Randy Curran*

23    ⎯⎯84FEE6F994A9421⎯⎯
    RANDY CURRAN

929488.3

24

25

26

27

28

2

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on       CASE NO. 34-2020-00282263
    behalf of all others similarly situated,   (Assigned to Complex Civil Dept. 40
12                                            Judge Richard K. Sueyoshi)
                  Plaintiff,
13                                            CLASS ACTION
    vs.
14                                            PLAINTIFF'S OBJECTIONS TO THE
                                             JOSEPH STEELE AND JOHNATHAN
15  QUICK QUACK CAR WASH HOLDINGS,           SOUZA DECLARATIONS
    LLC, a Delaware limited liability company;
16  and DOES 1-50, inclusive,                Date:     October 13, 2020
                                             Time:     1:30 p.m.
17                Defendants.                 Dept.:    53
                                             Judge:    Hon. David I. Brown
18

19

20                                           Action Filed:  July 24, 2020
                                             Trial Date:    None Set☐
21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTION TO STEELE AND SOUZA DECLARATIONS    Case No. 34-2020-00282263

**EXHIBIT 1 - Page 132**

1    Plaintiff Randy Curran ("Plaintiff") submits this objection to the Declaration of Joseph

2    Steele in Support of Motion to Compel Arbitration and to Dismiss or Stay Action ("Steele

3    Declaration" or "Steele Decl.") (ROA # 20) and to the Declaration of Johnathan Souza in Support

4    of Motion to Compel Arbitration and to Dismiss or Stay Action ("Souza Declaration" or "Souza

5    Decl.") (ROA # 21).   Plaintiff makes the following objections pursuant to, without limitation,

6    California Evidence Code sections 702, 800, 400, 403 and 410.

7    Plaintiff objects to paragraph 8 of the Steele Declaration in which Mr. Steele states that "Ms.

8    Curran purchased a monthly membership for a price of $19.99 per month and signed her agreement

9    to the terms of service."  Plaintiff objects to this statement as Mr. Steele was not present at the time

10    that the event took place, did not witness this event, and does not have personal knowledge of the

11    event.

12    Plaintiff objects to paragraph 8 of the Steele Declaration in which Mr. Steele states that Mr.

13    Souza "advanced to the screen displaying the full Terms of Service Agreement and the signature

14    line for Ms. Curran to consent to the Terms of Service Agreement."  Plaintiff objects to this

15    statement as Mr. Steele was not present at the time that the event took place, did not witness this

16    event, and does not have personal knowledge of the event.

17    Plaintiff objects to paragraph 8 of the Steele Declaration in which Mr. Steele identifies

18    Exhibit 3 as a "true copy of Ms. Curran's July 16, 2020 signature agreeing to Quick Quack's Terms

19    of Service Agreement."  Plaintiff objects to this statement as Mr. Steele was not present at the time

20    that the event took place, did not witness this event, and does not have personal knowledge of the

21    event.

22    Plaintiff objects to paragraph 8 of the Souza Declaration in which Mr. Souza states that "I

23    understand that Quick Quack's records show that Randy Curran visited the Quick Quack Car Wash

24    located at 3436 Northgate Boulevard, Sacramento, CA 95834 on July 16, 2020, and that I assisted

25    Ms. Curran in enrolling in an unlimited monthly membership."  Plaintiff objects to this statement as

26    Mr. Souza relies on Quick Quack's records and not on his own knowledge and memory of the July

27    16, 2020 transaction with Ms. Curran.

28

PLAINTIFF'S OBJECTION TO STEELE AND SOUZA DECLARATIONS    Case No. 34-2020-00282263

EXHIBIT 1 - Page 133

1    Plaintiff objects to paragraph 8 of the Souza Declaration in which Mr. Souza states that

2  "Based on my training and practice on July 16,2020, that is Ms. Curran's signature accepting the

3  Terms of Service Agreement captured by Quick Quack's computer system at 8:46 a.m. on July

4  16,2020."  Plaintiff objects to this statement as Mr. Souza relies on Quick Quack's records and not

5  on his own knowledge and memory of the July 16, 2020 transaction with Ms. Curran.

6  DATED:  September 29, 2020              DOSTART HANNINK & COVENEY LLP

7

8

9                                       ZACH P. DOSTART
                                        Attorneys for Plaintiff
10
929850.1
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**Curran v. Quick Quack Car Wash Holdings, LLC, Case No. 34-2020-00282263-CU-BT-GDS**

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037-1474.

On September 29, 2020, I served true copies of the following documents described as

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION;**

**DECLARATION OF RANDY CURRAN IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; and**

**PLAINTIFF'S OBJECTIONS TO THE JOSEPH STEELE AND JOHNATHAN SOUZA DECLARATIONS**

on the interested parties in this action as follows:

Bryan A. Merryman
bmerryman@whitecase.com
Catherine S. Simonsen
catherine.simonsen@whitecase.com
Ashley Bean
ashley.bean@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Tel: (213) 620-7700
Fax: (213) 452-2329

*Counsel for Defendant*

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused copies of the documents to be sent from e-mail address cklobucar@sdlaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 29, 2020, at San Diego, California.

*Catherine S. Klobucar*
Catherine S. Klobucar

**EXHIBIT 1 - Page 135**

FILED/ENDORSED

OCT -5 2020

By: S. Khorn
Deputy Clerk

1    WHITE & CASE LLP
     BRYAN A. MERRYMAN (SBN 134357)
2    bmerryman@whitecase.com
     CATHERINE S. SIMONSEN (SBN 307325)
3    catherine.simonsen@whitecase.com
     555 S. Flower Street, Suite 2700
4    Los Angeles, CA  90071-2433
     Telephone:  (213) 620-7700
5    Facsimile:  (213) 452-2329

6    Attorneys for Defendant
     QUICK QUACK CAR WASH HOLDINGS,
7    LLC

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        FOR THE COUNTY OF SACRAMENTO

11   RANDY CURRAN, individually and on behalf      Case No. 34-2020-00282263
     of all others similarly situated,             (Assigned to Complex Civil Dept. 40
12                                                  Judge Richard K. Sueyoshi)
                    Plaintiff,
13                                                  **DEFENDANT QUICK QUACK CAR
     v.                                             WASH HOLDINGS, LLC'S:**
14
     QUICK QUACK CAR WASH HOLDINGS,                 **(1) REPLY IN SUPPORT OF MOTION
15   LLC, a Delaware Limited Liability Company;     TO COMPEL ARBITRATION AND TO
     and Does 1-50 inclusive,                       DISMISS OR STAY ACTION;**
16
                    Defendants.                     **(2) DECLARATIONS OF JOSEPH
17                                                   STEELE (SUPPLEMENTAL) AND
                                                     BRYAN A. MERRYMAN;**
18
                                                    **(3) RESPONSE TO PLAINTIFF'S
19                                                   OBJECTIONS TO THE JOSEPH
                                                     STEELE AND JOHNATHAN SOUZA
20                                                   DECLARATIONS; AND**

21                                                  **(4) OBJECTIONS TO THE
                                                     DECLARATION OF RANDY CURRAN**
22
                                                    *[(2)-(4) filed separately]*
23
                                                    Date:  October 13, 2020
24                                                  Time:  1:30 p.m.
                                                    Dept.:  53
25                                                  Judge:  Hon. David I. Brown

26                                                  Complaint Filed:  July 24, 2020
27

28

                                                    DEFENDANT'S REPLY IN SUPPORT OF
     AMERICAS 103822538                             MOTION TO COMPEL ARBITRATION

BY FAX

**EXHIBIT 1 - Page 136**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ............................................................................................. 5

II.   THE COURT SHOULD GRANT QUICK QUACK'S MOTION ...................................... 5

      A.    Plaintiff's Conclusory and Self-Serving Denials Are Inadmissible and Do
            Not Negate Quick Quack's Showing that Plaintiff Agreed to Arbitrate Her
            Claims ............................................................................................... 5

      B.    There Is No Cause to Defer Ruling on Quick Quack's Motion ........................... 10

      C.    Whether Quick Quack's Procedures for Obtaining Plaintiff's Consent
            Were Conscionable Is for the Arbitrator, not this Court, to Decide ..................... 10

      D.    Quick Quack's Procedures for Obtaining Plaintiff's Consent to the
            Arbitration Agreement Fully Comport with the Law ............................................ 12

III.  CONCLUSION ............................................................................................. 14

- 2 -

**EXHIBIT 1 - Page 137**

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Borelli v. Black Diamond Aggregates, Inc.*,
    No. 2:14-cv-02093-KJM-KJN, 2017 U.S. Dist. LEXIS 40834 (E.D. Cal. Mar.
    20, 2017) ...........................................................................................................7

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ........................................................................................11

*DiLoreto v. O'Neill*,
    1 Cal. App. 4th 149 (1991) .............................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ......................................................................................12

*Jacobson v. Snap-on Tools Co.*,
    No. Case No. 15-cv-02141-JD, 2015 U.S. Dist. LEXIS 165234 (N.D. Cal. Dec.
    9, 2015) ...........................................................................................................14

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .........................................................................13

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) .........................................................................14

*Marmolejo v. Fitness Int'l Llc*,
    No. E064190, 2018 Cal. App. Unpub. LEXIS 1587 (Mar. 7, 2018). ...............6

*Meyer v. T-Mobile USA Inc.*,
    836 F. Supp. 2d 994 (N.D. Cal. 2011) ...........................................................11

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ........................................................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ........................................................................................11

*Rent-A-Ctr., West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .....................................................................................11, 12

*Rodriguez v. Sim*,
    No. C 08-3982 JL, 2009 U.S. Dist. LEXIS 39445 (N.D. Cal. Apr. 10, 2009) ..........14

*Rosendahl v. Bridgepoint Educ., Inc.*,
    No. 11cv61 WQH (WVG), 2012 U.S. Dist. LEXIS 26139 (S.D. Cal. Feb. 28,
    2012) ................................................................................................................6

- 3 -

**EXHIBIT 1 - Page 138**

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

*San Francisco Newspaper Printing Co. v. Superior Court,*
    170 Cal. App. 3d 438 (1985)............................................................................14

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal. 4th 899 (2015) ....................................................................................13

*Specht v. Netscape Communications Corp.,*
    306 F.3d 17 (2d Cir. 2002)...............................................................................13

*Stafford v. Baart Behavioral Health Servs.,*
    No. CV 15-252-GW(MRWx), 2015 U.S. Dist. LEXIS 198666 (C.D. Cal. July
    20, 2015) ...........................................................................................................8

*Stover-Davis v. Aetna Life Ins. Co.,*
    No. 1:15-cv-1938-BAM, 2016 U.S. Dist. LEXIS 63693 (E.D. Cal. May 12,
    2016) .........................................................................................................11, 14

*Swift v. Zynga Game Network, Inc.,*
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................13

*Valladares v. Insomniac, Inc.,* No. EDCV 14-00706-VAP (DTBx),
    2015 U.S. Dist. LEXIS 190028 (C.D. Cal. Jan. 29, 2015) ................................8

*Tiri v. Lucky Chances, Inc.,*
    226 Cal. App. 4th 231 (2014) ....................................................................11, 12

**RULES**

Cal. R. Ct. 2.113...................................................................................................8

Cal. R. Ct. 2.257(b)...............................................................................................8

- 4 -

**EXHIBIT 1 - Page 139**

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

## I.    **INTRODUCTION**

In its motion, Quick Quack met its burden to show, by a preponderance of the evidence, that on July 16, 2020, plaintiff Randy Curran signed Quick Quack's Terms of Service Agreement, agreeing to arbitrate any dispute with Quick Quack.  Plaintiff's claim that "Quick Quack has no evidence" that she did so (Opp. at 1:12) rests on a fundamentally incorrect understanding of the law—that the only way to prove an individual signed an agreement is to provide the attestation of a witness who "percipient[ly] observ[ed]" the individual signing (*id.* at 1:9).  To the contrary, courts routinely rely upon evidence of the kind Quick Quack submitted—declarations of employees with knowledge of their own, and the company's, policies and practices with respect to obtaining customers' consent—to prove that the plaintiff signed an arbitration agreement. Were the Court to hold otherwise, the floodgates of litigation would open against any defendant without a witness who "percipient[ly] observ[ed]," or recalls "percipient[ly] observ[ing]," the plaintiff signing the arbitration agreement she in fact signed.  Nor do plaintiff's bare denials negate Quick Quack's showing:  they are inadmissible (because she did not even bother to hand-sign her declaration), and in any event the Court should accord them no probative value as plaintiff has demonstrated significant faults in memory related to her July 16, 2020 transaction with Quick Quack.

Plaintiff's remaining challenges—that "the procedures" Quick Quack followed to obtain her consent were somehow insufficient (Opp. at 4:12-13)—are claims of procedural unconscionability.  Because the arbitration agreement plaintiff signed delegates all issues of arbitrability to the arbitrator, and because plaintiff does not specifically challenge the delegation clause (or the arbitration agreement), the arbitrator—not this Court—is the proper forum to hear her challenges.  In any event, plaintiff's procedural unconscionability claims fail on the merits.

The Court should grant Quick Quack's motion and dismiss plaintiff's complaint.

## II.    **THE COURT SHOULD GRANT QUICK QUACK'S MOTION**

### A.    **Plaintiff's Conclusory and Self-Serving Denials Are Inadmissible and Do Not Negate Quick Quack's Showing that Plaintiff Agreed to Arbitrate Her Claims**

In its motion, Quick Quack met its burden to show plaintiff agreed to arbitrate her claims.

- 5 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1    Plaintiff submits nothing admissible, or to which the Court should accord any evidentiary value,

2    to negate that showing.

3        Plaintiff appears to believe the only way to prove a customer signed an agreement is to

4    provide the testimony of a witness who "percipient[ly] observ[ed]" (and specifically recalls) that

5    specific customer being provided, and signing, the agreement (Opp. at 1:9).  That is not the law.

6    As the court of appeal has observed, such a rule—requiring "[a] party seeking to prove the

7    existence of an agreement . . . to produce the testimony of a percipient witness to the agreement's

8    signing"—"would make it unduly difficult to prove the existence of a signed contract, especially

9    for large corporations like [defendant] that likely enter into thousands of them every month."

10   *Marmolejo v. Fitness Int'l Llc*, No. E064190, 2018 Cal. App. Unpub. LEXIS 1587, at *9 (Mar. 7,

11   2018) (unpublished).[1]  Testimony of employees of the defendant corporation with knowledge of

12   the corporation's practices and procedures for obtaining customers' consent to arbitration

13   agreements, accompanied by a signed arbitration agreement, are routinely held sufficient to

14   satisfy the preponderance of the evidence standard.

15       For example, in *Rosendahl v. Bridgepoint Education, Inc.*, No. 11cv61 WQH (WVG),

16   2012 U.S. Dist. LEXIS 26139 (S.D. Cal. Feb. 28, 2012), the plaintiffs had enrolled in the

17   defendants' online educational courses and subsequently sued the defendants for fraud.  *Id.* at *2.

18   To prove the plaintiffs had signed arbitration agreements when they enrolled, the defendants

19   submitted (1) a copy of the plaintiffs' online application forms, which contained the arbitration

20   provision and an "acknowledgement and signature" paragraph followed by each of the plaintiffs'

21   names and the phrase "Signed with E-Signature [Date]," and (2) declarations from the

22   defendants' registrars attesting that "as part of the online application process, students are

23   required to consent to the execution of the enrollment agreement electronically" by "clicking 'I

24   consent.'"  *Id.* at *13-14.  The court held the defendants showed "by a preponderance of the

25   evidence that the arbitration agreement was the product of a meeting of the minds between the

26   parties," because (1) the plaintiffs did not dispute that they had undergone the enrollment process;

27

28   _____
     [1] Quick Quack does not cite or rely on this unpublished opinion, but rather presents it to the Court
     solely for its persuasive value.

                                           - 6 -

**EXHIBIT 1 - Page 141**

1  (2) the registrars attested that during that process, enrollees are shown and asked to consent to the

2  agreement to arbitrate; and (3) plaintiffs' specific applications (and the embedded arbitration

3  agreement) were linked with the e-signatures appearing on their applications.  The court did not

4  require a "percipient witness" to testify that he or she saw each plaintiff being shown, or

5  consenting to, the agreement.

6          In *Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-cv-02093-KJM-KJN, 2017 U.S.

7  Dist. LEXIS 40834 (E.D. Cal. Mar. 20, 2017), the defendant corporation moved to compel

8  arbitration of its former employee's claims.  In support, the defendant submitted the declaration

9  of its general manager, who oversaw the hiring and orientation process for new employees from

10  1989 until 2015, attesting that "it was customary to provide new employees with arbitration

11  agreements during the time period relevant here." *Id.* at *14.  The court rejected the plaintiff's

12  argument that the general manager was required to have "first-hand knowledge of [defendant]

13  entering into an arbitration agreement with [plaintiff]," including that the defendant "followed

14  this practice [of providing new employees with arbitration agreements] with [the plaintiff]." *Id.*

15  Instead, "because [the declarant] held his position as a General Manager from 1989 until early

16  2015, he can be expected to know it was customary to provide new employees with arbitration

17  agreements during the time period relevant here." *Id.*  "Further, [the declarant] states [plaintiff's]

18  signed arbitration agreement was maintained with his personnel file," and "[t]he court can

19  therefore . . . infer . . . that the execution and maintenance of [plaintiff's] signed arbitration

20  agreement comported with [defendant's] ordinary method of doing business." *Id.*  Again, the

21  court did not require the defendant to submit the declaration of the employee who actually

22  witnessed the plaintiff sign the arbitration agreement.

23          The same result is required here.  Quick Quack showed—and plaintiff does not dispute—

24  that the transaction that produced a signature on Quick Quack's Terms of Service Agreement

25  (containing the arbitration provision) on July 16, 2020, at 8:46 a.m., was ***her*** transaction with

26  Quick Quack on that date, when she admits she visited a Quick Quack location and paid for a car

27  wash by physically giving the attendant her debit card.  Curran Decl. ¶¶ 2, 4.  Plaintiff also does

28  not dispute that the signature displayed in Exhibit 3 to the Declaration of Joseph Steele is in fact

- 7 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1   the signature on the Terms of Service Agreement recorded during her July 16, 2020 transaction

2   with Quick Quack.  Plaintiff also does not dispute that Johnathan Souza was the car wash

3   attendant who assisted her with the transaction, and that he "use[d] a mobile tablet device to enter

4   [her] order information and process [her] debit card payment[]."  Curran Decl. ¶¶ 3, 5, 7.  Plaintiff

5   also offers no evidence contradicting Mr. Souza's sworn declaration that he was trained, and it

6   was his policy and practice on July 16, 2020, to show the mobile tablet screen displaying the

7   Terms of Service Agreement to customers enrolling in a membership, allow them to review the

8   agreement, and obtain their signature on the agreement.  *See* Souza Decl. ¶¶ 6-8.  Nor does

9   plaintiff offer any evidence contradicting Mr. Steele's sworn declaration as to those Quick Quack

10  policies and practices for enrolling customers in memberships.  *See* Steele Decl. ¶¶ 6-8.[2]

11         Instead, plaintiff unfairly faults Mr. Souza for not specifically remembering her and the

12  specific details of her transaction with Quick Quack (Opp. at 3:1-4), and then simply baldly

13  denies that Mr. Souza showed her the Terms of Service Agreement and that the signature

14  recorded during her transaction with Quick Quack is hers (*id.* at 3:19-23).[3]  Plaintiff's conclusory

15  assertions fall woefully short of negating the substantial proof submitted by Quick Quack that the

16  signature on the Terms of Service Agreement recorded during plaintiff's July 16, 2020

17  transaction with Quick Quack is hers.  *See, e.g.*, *Stafford v. Baart Behavioral Health Servs.*, No.

18  CV 15-252-GW(MRWx), 2015 U.S. Dist. LEXIS 198666, at *13 (C.D. Cal. July 20, 2015) ("In

19  light of the compelling evidence proffered by [defendant] demonstrating that [plaintiff] indeed

20  signed the arbitration agreement and [plaintiff's] failure to provide anything more than bare

21  assertions that the signature is not hers, the Court would find that [plaintiff's] signature on the

22

_____

[2] Plaintiff objects to only certain subparts of a single paragraph of each of Messrs. Souza's and
Steele's declarations.  *See* Plf. Obj. to the Joseph Steele and Johnathan Souza Decls.  The
aforementioned facts are established by the remaining content in the declarations and exhibits, to
which plaintiff does not object.  Therefore, even if the Court were to sustain all of plaintiff's
objections, Quick Quack's evidentiary showing would remain unchanged.

[3] As an initial matter, plaintiff's declaration is inadmissible because the declaration bears only a
"DocuSigned by" stamp followed by plaintiff's printed name rather than a hand signature, and the
declaration was not electronically filed.  *See* Cal. R. Ct. 2.113, 2.257(b); Obj. to Curran Decl. at
2; *see, e.g.*, *Valladares v. Insomniac, Inc.*, No. EDCV 14-00706-VAP (DTBx), 2015 U.S. Dist.
LEXIS 190028, at *5-6 (C.D. Cal. Jan. 29, 2015) (striking DocuSign declarations as not
permitted by similar local rule).  Plaintiff's failure to submit her actual signature also prevents the
Court from comparing it to the signature recorded during her transaction with Quick Quack.

- 8 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1    arbitration agreement is authentic and that the arbitration agreement is valid.").

2         In fact, that plaintiff saw and signed the Terms of Service Agreement during her July 16,

3    2020 transaction with Quick Quack is not the only fact on which plaintiff's memory has failed

4    her.  In a call to Quick Quack customer service on July 21, 2020, plaintiff stated, "He's [Mr.

5    Souza] like, 'You know what, we're running a special.  I can get you for $10, do you want to, you

6    know, upgrade?' . . . So, um, I, I got the $10, he said it would be $10."  Supplemental

7    Declaration of Joseph Steele ("Supp. Steele Decl.") Ex. 6 at 00:00:33; Declaration of Bryan A.

8    Merryman ("Merryman Decl.") Ex. 1 at 2; *see* Supp. Steele Decl. Ex. 6 at 00:03:59 ("I always get

9    the basic for $8.99 and you guys will go, 'Hey, we're doing this upgrade, do you want this one for

10   $10?' and that's what he [Mr. Souza] said."); Merryman Decl. Ex. 1 at 2.  Later that day, plaintiff

11   called customer service and insisted, "I sure as shoot I, and I heard $8.99.  Eight dollars and

12   ninety-nine one time car wash."  Supp. Steele Decl. Ex. 7 at 00:03:22; Merryman Decl. Ex. 2 at 3.

13   Three days later, in her complaint, plaintiff alleged, "[t]he car wash attendant offered Plaintiff an

14   upgraded car wash at the cost of $9.99."  Compl. ¶ 10.  Now, in her declaration, plaintiff states

15   "the attendant asked if I wanted to upgrade to the deluxe wash."  Curran Decl. ¶ 4.  (There is no

16   such thing as a "deluxe" wash at Quick Quack.  The categories are "Good," "Better," and "Best."

17   Supp. Steele Decl. ¶ 8.)

18        Similarly, in one of her calls to customer service, plaintiff stated she "showed up for an

19   eight dollar and ninety-nine car wash" and that she "never get[s] more than an $8.99 car wash."

20   Supp. Steele Decl. Ex. 7 at 00:05:58, 00:07:54; Merryman Decl. Ex. 2 at 3.  In her complaint,

21   plaintiff alleged she visited Quick Quack "to get a regular car wash at a cost of $7.99."  Compl.

22   ¶ 10.  Similarly, in her declaration, plaintiff states, "I usually purchase the basic wash, which

23   costs $7.99," and adds, "[h]owever, I sometimes upgrade to the deluxe wash, which costs $9.99."

24   Curran Decl. ¶ 2.

25        If plaintiff has so much trouble remembering how much she normally pays for a car wash

26   and the price Mr. Souza offered for what she allegedly thought was an upgraded car wash, and

27   believes she both has purchased, and heard an offer from Mr. Souza for, a "deluxe" car wash that

28   does not exist at Quick Quack, she cannot be trusted to remember whether Mr. Souza showed her,

- 9 -

**EXHIBIT 1 - Page 144**
DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1   and she signed, the Terms of Service Agreement during the July 16, 2020 transaction. Her failure

2   to recall—and bare denials to the contrary—do not negate Quick Quack's showing, which met its

3   burden of proof that plaintiff signed Quick Quack's Terms of Service Agreement and therefore

4   agreed to arbitrate her claims against Quick Quack. *See DiLoreto v. O'Neill*, 1 Cal. App. 4th 149,

5   160 (1991) (the inability to remember signing an arbitration agreement is no defense).

6          **B.      There Is No Cause to Defer Ruling on Quick Quack's Motion**

7          Plaintiff suggests that "video [footage] of her interaction with Mr. Souza on July 16, 2020

8   . . . will validate the statements in her declaration." Opp. at 3:27-28. There is no such video

9   footage. Quick Quack does record video at its locations, but the footage from any given day is

10  overridden with more recent footage every approximately seven days. Supp. Steele Decl. ¶ 9. On

11  July 27, 2020, after Quick Quack learned of this lawsuit, it confirmed that the July 16, 2020

12  footage from the location plaintiff visited on that date no longer existed as it had already been

13  overridden with more recent footage. *Id.* The footage is the only evidence plaintiff identifies as

14  purportedly justifying "defer[ring a ruling]," until after it is produced. Opp. at 4:5.[4] The

15  nonexistence of the footage moots plaintiff's request and eliminates her only asserted ground for

16  delay. The Court has all of the evidence it needs—indeed, all of the evidence there is—to rule.

17         **C.      Whether Quick Quack's Procedures for Obtaining Plaintiff's Consent Were**

18                **Conscionable Is for the Arbitrator, not this Court, to Decide**

19         In a tacit concession that Quick Quack has met its burden of proof and that the signature

20  on the Terms of Service Agreement recorded during plaintiff's transaction with Quick Quack on

21  July 16, 2020 was hers, plaintiff argues that, in any event, Quick Quack's procedures are

22  somehow lacking. As discussed *infra*, Section II.D, plaintiff is wrong on the merits. But more

23  importantly, plaintiff's challenges to the arbitration agreement—that she was not given enough

24  notice of what she was signing, that she was not specifically "instruct[ed]" to read the agreement

25  she signed, and that she was supposedly rushed (Opp. at 4:10-5:13)—are claims of procedural

26  unconscionability. *See, e.g.*, *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1001-02 (N.D.

27  _____
[4] Plaintiff suggests the production of "other documents" she has requested from Quick Quack
28  should also take place before the Court rules, but does not identify those document requests or
    even attempt to explain what they might show.

- 10 -

**EXHIBIT 1 - Page 145**

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1    Cal. 2011) ("Procedural unconscionability addresses the manner in which agreement to the

2    disputed term was sought or obtained, such as . . . hidden terms included in contracts of

3    adhesion."); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-cv-1938-BAM, 2016 U.S. Dist. LEXIS

4    63693, at *19 (E.D. Cal. May 12, 2016) (allegations of being "rushed" go to procedural

5    unconscionability); *Tiri v. Lucky Chances*, 226 Cal. App. 4th 231, 246 (2014) (same).  These

6    challenges are for the arbitrator to decide, because the arbitration agreement plaintiff signed

7    includes a delegation clause delegating all issues of arbitrability to the arbitrator, and plaintiff

8    does not specifically challenge the delegation clause or the arbitration agreement.

9         Over 50 years ago, the U.S. Supreme Court held in *Prima Paint Corp. v. Flood & Conklin*

10   *Mfg. Co.*, 388 U.S. 395 (1967):  "[I]f the claim is [a challenge to] **the arbitration clause itself**—

11   an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed

12   to adjudicate it.  But the statutory language does not permit the federal court to consider claims

13   [challenging] **the contract generally**."  *Id.* at 403-04 (emphasis added).  As the U.S. Supreme

14   Court reaffirmed nearly 40 years later, because "as a matter of substantive federal arbitration law,

15   an arbitration provision is severable from the remainder of the contract," "**unless the challenge is**

16   **to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator**

17   **in the first instance**."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)

18   (citing *Prima Paint*); *see id.* at 448-49 ("We reaffirm today that, regardless of whether the

19   challenge is brought in federal or state court, a challenge to the validity of the contract as a whole,

20   **and not specifically to the arbitration clause**, must go to the arbitrator.").

21        Two years later, the Court again applied *Prima Paint*'s rule that "attacks on the validity of

22   an entire contract, **as distinct from attacks aimed at the arbitration clause**, are within the

23   arbitrator's ken."  *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (emphasis added).

24        The Court again reaffirmed—and extended—*Prima Paint* in 2010, in *Rent-A-Center,*

25   *West, Inc. v. Jackson*, 561 U.S. 63 (2010), recognizing "[t]here are two types of validity

26   challenges under § 2 [of the FAA]:  One type challenges specifically the validity of the agreement

27   to arbitrate, and the other challenges the contract as a whole . . . .  **[O]nly the first type of**

28   **challenge is relevant to a court's determination whether the arbitration agreement at issue is**

- 11 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1    *enforceable*." *Id.* at 70 (quotation marks, alterations, and internal citations omitted; emphasis

2    added).  Moreover, an arbitration agreement can contain an "agree[ment] to arbitrate 'gateway'

3    questions of 'arbitrability,' *such as whether the parties have agreed to arbitrate*." *Id.* at 69

4    (emphasis added).  Where the agreement contains such a delegation provision (which is itself

5    severable from the arbitration agreement), a nested *Prima Paint* rule applies:  the party opposing

6    arbitration must "challenge[] *the delegation provision* specifically"; if she does not, the court

7    "must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any

8    challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72 (emphasis

9    added); *see Tiri*, 226 Cal. App. 4th at 240.  In *Rent-A-Center*, the plaintiff argued "the arbitration

10   agreement in question is clearly unenforceable in that it is unconscionable." *Id.* at 66.  The Court

11   held the "unconscionability claim was not properly before the court because [the plaintiff] had

12   expressly agreed that the arbitrator would have exclusive authority to resolve any dispute about

13   the enforceability of the Agreement" in the delegation clause, and the plaintiff "challenged only

14   the validity of the contract as a whole." *Id.* at 66, 72.

15       The Court reaffirmed this line of cases again in *Henry Schein, Inc. v. Archer & White*

16   *Sales, Inc.*, 139 S. Ct. 524 (2019), holding "[w]hen the parties' contract delegates the arbitrability

17   question to an arbitrator, the courts must respect the parties' decision as embodied in the

18   contract," even if the argument for compelling arbitration is "wholly groundless." *Id.* at 528.

19       These cases make clear that plaintiff's procedural unconscionability challenges are for the

20   arbitrator—not this Court—to decide.  In its motion, Quick Quack showed—and plaintiff does

21   not dispute—that the Terms of Service Agreement contains an arbitration agreement, which in

22   turn contains a delegation clause.  Yet nowhere in plaintiff's opposition does plaintiff

23   "challenge[] the delegation provision"—or even the arbitration agreement—"specifically." *Rent-*

24   *A-Ctr.*, 561 U.S. 72.  Like the plaintiff's challenge in *Rent-A-Center*, this omission is fatal to

25   plaintiff's attempt to avoid arbitration.

26       **D.    <u>Quick Quack's Procedures for Obtaining Plaintiff's Consent to the</u>**

27       **<u>Arbitration Agreement Fully Comport with the Law</u>**

28       Even if this Court could properly consider plaintiff's procedural unconscionability

- 12 -

1    challenges, those claims fail.  Courts routinely hold that notice and consent protocols like those

2    Quick Quack practiced with plaintiff are more than sufficient to support an enforceable contract.

3    First, plaintiff claims, "[t]here is nothing on that page [the screen displaying the scrollable

4    Terms of Service Agreement with the signature line below] to notify consumers that the

5    equivalent of eight printed pages, including an arbitration provision, are hidden out of sight."

6    Opp. at 4:20-22.  To the contrary, the second, and last, sentence displayed in the scrollable box on

7    the screen reads, "This Agreement governs your access to and use of the Services (**as defined**

8    **below**)."  Steele Decl. Ex. 2 at 13 (emphasis added).  The customer need only read two sentences

9    to understand that additional content—namely, the terms of the agreement—can be found

10   "below."  Two decades into the 21st Century, when virtually everything consumers read on

11   ubiquitous mobile devices and tablets is accessed by scrolling down (*e.g.*, Facebook, Instagram,

12   the NYTimes.com), plaintiff's archaic suggestion that it would take "insider knowledge" (Opp. at

13   4:26) for Quick Quack's customers to intuit that "below" means "in the text scrollable below," is

14   far-fetched.  *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D.

15   Cal. 2011) (finding a mere hyperlink to terms provides sufficient notice to a consumer when

16   located near the acceptance button even though the terms are not included in full on the same

17   webpage); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (same).[5]

18   Indeed, plaintiff purportedly "DocuSigned" the multi-page declaration she submitted in

19   opposition to Quick Quack's motion, a process that requires the same scrolling-down action to

20   review the contents of the document and to reach the "Sign Here" button.

21   Nor is Quick Quack required to "notify consumers" that the Terms of Service Agreement

22   "include[s] an arbitration provision" (Opp. at 4:20-21) or provide an "instruction stating that a

23   consumer should scroll down to see more binding terms" (Opp. at 4:22-23).  *See, e.g.*, *Sanchez v.*

24   *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914-15 (2015) ("Valencia was under no obligation

---

25   [5] Plaintiff's "browsewrap" cases are inapposite.  In *Specht v. Netscape Communications Corp.*,
26   306 F.3d 17 (2d Cir. 2002), unlike here, "Plaintiffs were responding to an offer that did not carry
     an immediately visible notice of the ***existence*** of license terms or require unambiguous
27   manifestation of assent to those terms." *Id.* at 31 (emphasis added).  Similarly, in *Long v. Provide*
     *Commerce, Inc.*, 245 Cal. App. 4th 855 (2016), the defendant provided no "textual notice" "to
28   advise consumers that continued use of a Web site will constitute the consumer's agreement to be
     bound by the Web site's terms of use." *Id.* at 867.

- 13 -

EXHIBIT 1 - Page 148

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1    to highlight the arbitration clause of its contract, nor was it required to specifically call that clause

2    to Sanchez's attention.").  Indeed, "even when a customer is assured it is not necessary to read a

3    standard form contract with an arbitration clause, it is generally unreasonable, in reliance on such

4    assurances, to neglect to read a written agreement before signing it."  *Id.* (internal quotation

5    marks omitted); *see Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal.

6    App. 4th 1042, 1049 (2001) ("[A] party cannot avoid the terms of a contract on the ground that he

7    or she failed to read it before signing."); *San Francisco Newspaper Printing Co. v. Superior*

8    *Court*, 170 Cal. App. 3d 438, 443 (1985) ("[F]ailing to read the contract is no excuse, otherwise

9    all contracts of adhesion would be unenforceable at the whim of the adhering party.").

10   Nevertheless, here, Quick Quack did advise plaintiff on the first page of the Terms of Service

11   Agreement in all capital letters that "YOU AGREE TO THE ARBITRATION AGREEMENT

12   AND CLASS ACTION WAIVER DESCRIBED IN SECTION 9.3 . . . ."  Steele Decl. Ex. 1 at 5.

13           Next, plaintiff essentially argues, just because a consumer signs an agreement does not

14   mean she consented.  Opp. at 5:3-5.  Plaintiff cites no case for this outlandish proposition.  The

15   law is again to the contrary.  *See, e.g.*, *Jacobson v. Snap-on Tools Co.*, No. Case No. 15-cv-

16   02141-JD, 2015 U.S. Dist. LEXIS 165234, at *7 (N.D. Cal. Dec. 9, 2015) (express acceptance

17   occurs "where a party signs the agreement").  Finally, plaintiff speculates "the entire process is

18   supposed to take place in the few moments before a customer is to enter the car wash bay, with

19   other drivers likely waiting (impatiently) behind."  Opp. at 5:6-8.  Plaintiff submits no evidence

20   this process is rushed, and regardless, all that matters is the consumer is given the "opportunity"

21   to review—which plaintiff was.  *Rodriguez v. Sim*, No. C 08-3982 JL, 2009 U.S. Dist. LEXIS

22   39445, at *6 (N.D. Cal. Apr. 10, 2009) ("The law requires only that Plaintiff have had the

23   opportunity to learn of the terms."); *Stover-Davis*, 2016 U.S. Dist. LEXIS 63693, at *19

24   ("[A]llegations [of being rushed] alone do not demonstrate that the circumstances of the signing

25   were unconscionable. . . .  "'[B]eing rushed' is not the equivalent of being tricked.").

26   **III.    CONCLUSION**

27           For the foregoing reasons, Quick Quack respectfully requests the Court enter an order

28   granting its motion to compel arbitration and dismissing this action.

- 14 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

1     Dated:  October 5, 2020                    WHITE & CASE LLP

2                                                By:  _____
                                                        Bryan A. Merryman
3

4                                                Attorneys for Defendant
                                                QUICK QUACK CAR WASH HOLDINGS,
5                                                LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

EXHIBIT 1 - Page 150

1

## PROOF OF SERVICE

2

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700, Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose direction the service was made.

3

4

5

On Monday, October 5, 2020 before 5:00 p.m., I served the foregoing document(s):

6

**DEFENDANT QUICK QUACK CAR WASH HOLDINGS, LLC'S:**

7

**(1)  REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION;**

8

9

**(2)  DECLARATIONS OF JOSEPH STEELE (SUPPLEMENTAL) AND BRYAN A. MERRYMAN;**

10

**(3)  RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE JOSEPH STEELE AND JOHNATHAN SOUZA DECLARATIONS; AND**

11

12

**(4)  OBJECTIONS TO THE DECLARATION OF RANDY CURRAN**

13

on the person(s) below, as follows:

14

Zach P. Dostart
James T. Hannink
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530
La Jolla, CA 92037-1474
Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299
Email: ZDostart@sdlaw.com
Email: JHannink@sdlaw.com
Email: CKlobucar@sdlaw.com
Email: LDozier@sdlaw.com

15

16

17

18

19

Attorneys for Plaintiff
RANDY CURRAN

20

21

☒    **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the e-mail address(es) listed above.  The transmission was reported as complete and without error.

22

23

24

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

Executed Monday, October 5, 2020, at Los Angeles, California.

26

27

28

_____
Irma Mares

**EXHIBIT 1 - Page 151**

PROOF OF SERVICE

FILED/ENDORSED

OCT - 6 2020

By: _____ S. Khorn _____

1   WHITE & CASE LLP
    BRYAN A. MERRYMAN (SBN 134357)
2   bmerryman@whitecase.com
    CATHERINE S. SIMONSEN (SBN 307325)
3   catherine.simonsen@whitecase.com
    555 S. Flower Street, Suite 2700
4   Los Angeles, CA  90071-2433
    Telephone:  (213) 620-7700
5   Facsimile:  (213) 452-2329

6   Attorneys for Defendant
    QUICK QUACK CAR WASH HOLDINGS,
7   LLC

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on behalf    Case No. 34-2020-00282263
    of all others similarly situated,           (Assigned to Complex Civil Dept. 40
12                                              Judge Richard K. Sueyoshi)
                   Plaintiff,
13                                              **SUPPLEMENTAL DECLARATION
         v.                                     OF JOSEPH STEELE IN SUPPORT
14                                              OF MOTION TO COMPEL
    QUICK QUACK CAR WASH HOLDINGS,              ARBITRATION AND TO DISMISS
15  LLC, a Delaware Limited Liability Company;  OR STAY ACTION**
    and Does 1-50 inclusive,
16                                              Date:  October 13, 2020
                   Defendants.                  Time:  1:30 p.m.
17                                              Dept.:  53
                                                Judge:  Hon. David I. Brown
18
19                                              Complaint Filed:  July 24, 2020
20
21
22
23
24
25
26
27
28

BY FAX

**EXHIBIT 1 - Page 152**

1    **SUPPLEMENTAL DECLARATION OF JOSEPH STEELE**

2    I, Joseph Steele, declare:

3    1.    I am over 18 years of age and am competent to make this declaration.

4    2.    I submit this supplemental declaration in support of Quick Quack Car Wash

5    Holdings, LLC's ("Quick Quack") Motion to Compel Arbitration and to Dismiss or Stay Action.

6    If called as a witness, I would and could testify competently to all matters in this declaration, all

7    of which are within my personal knowledge or based upon information gathered within the course

8    and scope of my duties.

9    3.    I have served as the Director of Information Technology for Quick Quack since

10    July 2019 and have been employed by Quick Quack since April 2014.  In the ordinary course of

11    performing my duties, I regularly access, review, and use electronic and business records

12    maintained by Quick Quack, including recordings of customers' phone calls to Quick Quack

13    customer service and video footage taken at Quick Quack locations.  In preparing this declaration,

14    I have relied upon my personal knowledge of facts stated herein, as well as my review of Quick

15    Quack's business records, including records of acts, events, or transactions made in the regular

16    course of its business at or near the time of the act, event, or transaction.  The records on which I

17    relied are described herein where applicable.

18    4.    As part of Quick Quack's regular procedures for handling customer calls to Quick

19    Quack customer service, Quick Quack records those calls for quality and training purposes and in

20    order to accurately address any issues raised during those calls.  Quick Quack maintains customer

21    service call recordings in the regular course of its business.  I regularly access Quick Quack's

22    customer service call recordings in performing my job duties.

23    5.    On or about July 27, 2020, I accessed Quick Quack's customer service ticket

24    database hosted by Zendesk and reviewed the company's records of calls with plaintiff Randy

25    Curran shown in Exhibit 5 to my September 17, 2020 declaration in support of Quick Quack's

26    motion.  On or about July 27, 2020, I further accessed the recordings of Ms. Curran's calls with

27    Quick Quack documented in Exhibit 5 to my September 17, 2020 declaration.

28

- 1 -

**EXHIBIT 1 - Page 153**

SUPPLEMENTAL DECLARATION OF JOSEPH STEELE

1    6.    Attached hereto/lodged herewith as **Exhibit 6** is a true copy of the recording of

2    plaintiff Randy Curran's call to Quick Quack customer service on July 21, 2020 at 11:59 a.m.

3    7.    Attached hereto/lodged herewith as **Exhibit 7** is a true copy of the recording of

4    plaintiff Randy Curran's call to Quick Quack customer service on July 21, 2020 at 1:30 p.m.

5    8.    Quick Quack offers three categories of car washes: "Good," "Better," and "Best."

6    Quick Quack does not offer, and never has offered, a "deluxe" category of car wash.

7    9.    Quick Quack locations have video camera systems that record video at the

8    location. The video footage from any given day is overridden with more recent footage every

9    approximately seven days (the exact time varies depending on the number of cameras at the

10   location and the size of the network video recorder). After learning about this lawsuit, on July 27,

11   2020, I investigated whether the Quick Quack location at 3436 Northgate Boulevard, Sacramento,

12   CA 95834, still had the video footage taken at that location on July 16, 2020. I determined that

13   Quick Quack no longer had that footage as it had been overridden with more recent footage.

14       I declare under penalty of perjury under the laws of the State of California the foregoing is

15   true and correct. Executed on this 5th day of October, 2020, at Roseville, California.

16

17

18                                             Joseph Steele

19

20

21

22

23

24

25

26

27

28

- 2 -

**EXHIBIT 1 - Page 154**

1

**INDEX OF EXHIBITS**

| Exhibit Number | Description | Page Number |
|---|---|---|
| 6 | Recording of Plaintiff's July 21, 2020, 11:59 a.m. Call to Quick Quack Customer Service | 4 |
| 7 | Recording of Plaintiff's July 21, 2020, 1:30 p.m. Call to Quick Quack Customer Service | 5 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# Exhibit 6 - Recording of Plaintiff's July 21, 2020, 11:59 a.m. Call to Quick Quack Customer Service

**EXHIBIT 1 - Page 156**



EXHIBIT 1 - Page 157
**Supplemental Steele Declaration Exhibit 6, Page 4**

# Exhibit 7 - Recording of Plaintiff's July 21, 2020, 1:30 p.m. Call to Quick Quack Customer Service

**EXHIBIT 1 - Page 158**

EXHIBIT 1 - Page 159
Supplemental Steele Declaration Exhibit 7, Page 5

1  WHITE & CASE LLP
   BRYAN A. MERRYMAN (SBN 134357)
2  bmerryman@whitecase.com
   CATHERINE S. SIMONSEN (SBN 307325)
3  catherine.simonsen@whitecase.com
   555 S. Flower Street, Suite 2700
4  Los Angeles, CA 90071-2433
   Telephone: (213) 620-7700
5  Facsimile: (213) 452-2329

6  Attorneys for Defendant
   QUICK QUACK CAR WASH HOLDINGS,
7  LLC

FILED/ENDORSED

OCT - 5 2020

By: _____ S. Khorn _____
        Deputy Clerk

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF SACRAMENTO

11  RANDY CURRAN, individually and on behalf      Case No. 34-2020-00282263
    of all others similarly situated,             (Assigned to Complex Civil Dept. 40
12                                                 Judge Richard K. Sueyoshi)
                    Plaintiff,
13                                                 **DECLARATION OF BRYAN A.**
        v.                                         **MERRYMAN IN SUPPORT OF**
14                                                 **MOTION TO COMPEL**
    QUICK QUACK CAR WASH HOLDINGS,                 **ARBITRATION AND TO DISMISS**
15  LLC, a Delaware Limited Liability Company;     **OR STAY ACTION**
    and Does 1-50 inclusive,
16                                                 Date: October 13, 2020
                    Defendants.                    Time: 1:30 p.m.
17                                                 Dept.: 53
                                                   Judge: Hon. David I. Brown
18
                                                   Complaint Filed: July 24, 2020
19

20

21

22

23

24

25

26

27

28

BY FAX

1

## <u>DECLARATION OF BRYAN A. MERRYMAN</u>

2

I, Bryan A. Merryman, declare:

3

1.    I am a partner of White & Case LLP, attorneys of record for Quick Quack Car

4

Wash Holdings, LLC ("Quick Quack") in this action.  I am a member in good standing of the

5

State Bar of California and am admitted to practice before this Court.  I have personal knowledge

6

of the facts set forth in this declaration and, if called as a witness, could and would testify

7

competently to such facts under oath.

8

2.    At my direction, staff of White & Case LLP listened to the recordings lodged as

9

Exhibits 6 and 7 to the Supplemental Declaration of Joseph Steele and prepared written

10

transcriptions of excerpts of those recordings.  Attached hereto as **<u>Exhibit 1</u>** and **<u>Exhibit 2</u>** are

11

true and correct copies of those transcription excerpts.

12

I declare under penalty of perjury under the laws of the State of California the foregoing is

13

true and correct.  Executed on this 5th day of October, 2020, at Los Angeles, California.

14

15

16

Bryan A. Merryman

17

18

## INDEX OF EXHIBITS

19

| Exhibit Number | Description | Page Number |
|---|---|---|
| 1 | Excerpts of Transcript of Recording of Plaintiff's July 21, 2020, 11:59 a.m. Call to Quick Quack Customer Service | 2 |
| 2 | Excerpts of Transcript of Recording of Plaintiff's July 21, 2020, 1:30 p.m. Call to Quick Quack Customer Service | 3 |

- 1 -

DECLARATION OF BRYAN A. MERRYMAN

**EXHIBIT 1 - Page 161**

# Exhibit 1 - Excerpts of Transcript of Recording of Plaintiff's July 21, 2020, 11:59 a.m. Call to Quick Quack Customer Service

**EXHIBIT 1 - Page 162**

**Excerpts of Transcript of Audio Recording:**

**11:59am Call Between Randy Curran and Quick Quack Customer Service on July 21, 2020**

**(Exhibit 6 to Supplemental Declaration of Joseph Steele)**

| Speaker | Statement | Timestamp |
|---|---|---|
| Randy Curran | "He's like, 'You know what, we're running a special.  I can get you for $10, do you want to, you know, upgrade?'… So, um, I, I got the $10, he said it would be $10." | 00:00:33-00:00:44 |
| Randy Curran | "I always get the basic for $8.99 and you guys will go, 'Hey, we're doing this upgrade, do you want this one for $10?' and that's what he said. …" | 00:03:59-00:04:06 |

# Exhibit 2 - Excerpts of Transcript of Recording of Plaintiff's July 21, 2020, 1:30 p.m. Call to Quick Quack Customer Service

**EXHIBIT 1 - Page 164**

**Excerpts of Transcript of Audio Recording:**

**1:30pm Call Between Randy Curran and Quick Quack Customer Service on July 21, 2020**

**(Exhibit 7 to Supplemental Declaration of Joseph Steele)**

| Speaker | Statement | Timestamp |
|---------|-----------|-----------|
| Randy Curran | "I sure as shoot, I, and I heard $8.99. Eight dollars and ninety-nine one time car wash." | 00:03:22-00:03:30 |
| Randy Curran | "I showed up for an eight-dollar and ninety-nine car wash and this f*****g guy stole money out of my account." | 00:05:58-00:06:05 |
| Randy Curran | "I never get more than an $8.99 car wash." | 00:07:54-00:07:57 |

1   WHITE & CASE LLP
    BRYAN A. MERRYMAN (SBN 134357)
2   bmerryman@whitecase.com
    CATHERINE S. SIMONSEN (SBN 307325)
3   catherine.simonsen@whitecase.com
    555 S. Flower Street, Suite 2700
4   Los Angeles, CA 90071-2433
    Telephone: (213) 620-7700
5   Facsimile: (213) 452-2329

6   Attorneys for Defendant
    QUICK QUACK CAR WASH HOLDINGS,
7   LLC

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on behalf       Case No. 34-2020-00282263
    of all others similarly situated,              (Assigned to Complex Civil Dept. 40
12                                                  Judge Richard K. Sueyoshi)
                   Plaintiff,
13
            v.                                      **NOTICE OF LODGING OF**
14                                                  **ELECTRONIC SOUND RECORDINGS**
    QUICK QUACK CAR WASH HOLDINGS,
15  LLC, a Delaware Limited Liability Company;      Hearing Date: October 13, 2020
    and Does 1-50 inclusive,                        Time: 1:30 p.m.
16                                                  Dept.: 53
                   Defendants.                      Judge: Hon. David I. Brown
17
18                                                  Complaint Filed: July 24, 2020

19

20

21

22

23

24

25

26

27

28

FILED/ENDORSED
OCT -5 2020
By: S. Khorr
Deputy

BY FAX

1    TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        NOTICE IS HEREBY GIVEN that defendant Quick Quack Car Wash Holdings, LLC

3    hereby submits and lodges Exhibits 6 and 7 to the Supplemental Declaration of Joseph Steele:

4

| Exhibit Number | Description |
|---|---|
| 6 | Recording of Plaintiff's July 21, 2020, 11:59 a.m. Call to Quick Quack Customer Service |
| 7 | Recording of Plaintiff's July 21, 2020, 1:30 p.m. Call to Quick Quack Customer Service |

*See* Supp. Steele Decl. ¶¶ 6-7.

Dated:  October 5, 2020                    WHITE & CASE LLP

                                          By:  _____
                                                 Bryan A. Merryman

                                          Attorneys for Defendant
                                          QUICK QUACK CAR WASH HOLDINGS,
                                          LLC

- 2 -

1

**PROOF OF SERVICE**

2

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700,

3

Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose
direction the service was made.

4

5

     On Monday, October 5, 2020 before 5:00 p.m., I served the foregoing document(s):

6

**DEFENDANT QUICK QUACK CAR WASH HOLDINGS, LLC'S NOTICE OF
LODGING OF ELECTRONIC SOUND RECORDINGS**

7

8

on the person(s) below, as follows:

9

Zach P. Dostart
James T. Hannink

10

DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530
La Jolla, CA 92037-1474

11

Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299

12

Email: ZDostart@sdlaw.com
Email: JHannink@sdlaw.com

13

Email: CKlobucar@sdlaw.com
Email: LDozier@sdlaw.com

14

15

Attorneys for Plaintiff
RANDY CURRAN

16

  ☒  **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on an agreement of
the parties to accept service by e-mail or electronic transmission, I transmitted the

17

document(s) electronically to the person(s) at the e-mail address(es) listed above.  The
transmission was reported as complete and without error.

18

19

     I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.

20

     Executed Monday, October 5, 2020, at Los Angeles, California.

21

22

23

                            Irma Mares

24

25

26

27

28

- 3 -

**EXHIBIT 1 - Page 168**

PROOF OF SERVICE

1

WHITE & CASE LLP
BRYAN A. MERRYMAN (SBN 134357)
2
bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
3
catherine.simonsen@whitecase.com
555 S. Flower Street, Suite 2700
4
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
5
Facsimile: (213) 452-2329

6

Attorneys for Defendant
QUICK QUACK CAR WASH HOLDINGS,
7
LLC

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA
9

FOR THE COUNTY OF SACRAMENTO
10

11

RANDY CURRAN, individually and on behalf
of all others similarly situated,
12

Plaintiff,
13

v.
14

QUICK QUACK CAR WASH HOLDINGS,
15
LLC, a Delaware Limited Liability Company;
and Does 1-50 inclusive,
16

Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

Case No. 34-2020-00282263
(Assigned to Complex Civil Dept. 40
Judge Richard K. Sueyoshi)

**DEFENDANT QUICK QUACK CAR
WASH HOLDINGS, LLC'S
OBJECTIONS TO THE
DECLARATION OF RANDY
CURRAN**

Date: October 13, 2020
Time: 1:30 p.m.
Dept.: 53
Judge: Hon. David I. Brown

Complaint Filed: July 24, 2020

BY FAX



RECEIVED
OCT - 5 2020

AMERICAS 104113520

DEFENDANT'S OBJECTIONS TO THE
DECLARATION OF RANDY CURRAN

**EXHIBIT 1 - Page 169**

## DEFENDANT QUICK QUACK CAR WASH HOLDINGS, LLC'S OBJECTIONS TO THE DECLARATION OF RANDY CURRAN

| OBJ. # | MATERIAL OBJECTED TO | GROUND(S) FOR OBJECTION | COURT'S RULINGS |
|---|---|---|---|
| 1. | Declaration of Randy Curran | The entire declaration is inadmissible/should be stricken because it is not signed in conformance with Cal. R. Ct. 2.113 and 2.257(b).  *See, e.g., Valladares v. Insomniac, Inc.*, No. EDCV 14-00706-VAP (DTBx), 2015 U.S. Dist. LEXIS 190028, at *5-6 (C.D. Cal. Jan. 29, 2015) (striking DocuSigned declarations as not permitted by similar local rule); *Fenley v. Rite Aid Corp.*, No. 1-12-CV-229127, 2014 Cal. Super. LEXIS 156, *6-7 (July 2, 2014) (discussing requirements under which electronic signatures may be used); *In re Mayfield*, Case No. 16-22134-D-7, 2016 Bankr. LEXIS 2613, *9-11 (Bankr. E.D. Cal. July 15, 2016) ("The court finds that a DocuSign affixation is a software generated electronic signature, as distinguished in the local rule from an originally signed document."). | **Ruling(s) on Objection(s)**<br><br>Sustained:<br>_____<br><br>Overruled:<br>_____ |
| 2. | "Based on that statement, I believe Quick Quack has video of the interaction between Mr. Souza and me on July 16, 2020.  I believe the video will support the statements made in this declaration, and I request that the Court require that Quick Quack produce the video and other relevant documents that have been requested." Declaration of Randy Curran ¶ 10 at 2:13-17. | Lack of personal knowledge.  Cal. Evid. Code § 702(a);<br>Speculation.  Cal. Evid. Code § 800(a). | **Ruling(s) on Objection(s)**<br><br>Sustained:<br>_____<br><br>Overruled:<br>_____ |

Dated: _____    _____

The Honorable David I. Brown
Judge of the Superior Court

//

//

//

//

- 2 -

DEFENDANT'S OBJECTIONS TO THE DECLARATION OF RANDY CURRAN

1  Dated:  October 5, 2020

WHITE & CASE LLP

2

By: _____

3      Bryan A. Merryman

4  Attorneys for Defendant
   QUICK QUACK CAR WASH HOLDINGS,
5  LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

DEFENDANT'S OBJECTIONS TO THE
DECLARATION OF RANDY CURRAN

FILED/ENDORSED

OCT - 5 2020

By: _____
S. Khorn
Deputy Clerk

1  WHITE & CASE LLP
   BRYAN A. MERRYMAN (SBN 134357)
2  bmerryman@whitecase.com
   CATHERINE S. SIMONSEN (SBN 307325)
3  catherine.simonsen@whitecase.com
   555 S. Flower Street, Suite 2700
4  Los Angeles, CA  90071-2433
   Telephone:  (213) 620-7700
5  Facsimile:  (213) 452-2329

6  Attorneys for Defendant
   QUICK QUACK CAR WASH HOLDINGS,
7  LLC

8
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                      FOR THE COUNTY OF SACRAMENTO
10

11  RANDY CURRAN, individually and on behalf    Case No. 34-2020-00282263
    of all others similarly situated,           (Assigned to Complex Civil Dept. 40
12                                               Judge Richard K. Sueyoshi)
                       Plaintiff,
13                                               **DEFENDANT QUICK QUACK CAR
         v.                                      WASH HOLDINGS, LLC'S
14                                               RESPONSE TO PLAINTIFF'S
    QUICK QUACK CAR WASH HOLDINGS,               OBJECTIONS TO THE JOSEPH
15  LLC, a Delaware Limited Liability Company;   STEELE AND JOHNATHAN SOUZA
    and Does 1-50 inclusive,                     DECLARATIONS**
16
                       Defendants.               Date:  October 13, 2020
17                                               Time:  1:30 p.m.
                                                 Dept.:  53
18                                               Judge:  Hon. David I. Brown
19
                                                 Complaint Filed:  July 24, 2020
20

21

22

23

24

25

26

27

28
                                     - 1 -

BY FAX

**EXHIBIT 1 - Page 172**

1  Plaintiff's objections to the Declarations of Johnathan Souza and Joseph Steele in Support

2  of Motion to Compel and to Dismiss or Stay Action should be summarily overruled because

3  plaintiff has failed to comply with California Rule of Court 3.1354(b) and (c).  In particular,

4  plaintiff has failed to (b)(2) "[s]tate the . . . page, and line number of the material objected to";

5  (b)(4) "[s]tate the grounds for each objection," *i.e.*, the section(s) of the Evidence Code that

6  supposedly provide(s) the ground(s) for each objection, and (c) submit a proposed order, which

7  requires "places for the court to indicate whether it has sustained or overruled each objection" and

8  "a place for the signature of the judge."

9  With respect to Ms. Curran's specific objections, Quick Quack Car Wash Holdings, LLC

10  ("Quick Quack") states as follows:

11  **I.    DECLARATION OF JOSEPH STEELE**

| OBJ. # | MATERIAL OBJECTED TO | GROUND(S) FOR OBJECTION | QUICK QUACK'S RESPONSE | COURT'S RULINGS |
|---|---|---|---|---|
| 1. | "Ms. Curran purchased a monthly membership for a price of $19.99 per month and signed her agreement to the terms of service." Declaration of Joseph Steele ¶ 8 at 2:16-17. | Mr. Steele was not present at the time that the event took place, did not witness this event, and does not have personal knowledge of the event. | The sentence of Mr. Steele's declaration directly following the quoted material to which plaintiff objects establishes his personal knowledge to attest to these facts: "Specifically, after the wash package selection had been entered into the computer system and the screen on the mobile tablet assigned to Mr. Souza on July 16, 2020, advanced to the screen displaying the full Terms of Service Agreement and the signature line for Ms. Curran to consent to the Terms of Service Agreement, the system further shows that at 8:46 a.m. on July 16, 2020, the signature line under the Terms of Service Agreement for this transaction was signed." (Steele Decl. ¶ 8 at 2:18-26.)  Exhibits 3 and 4 to Mr. Steele's declaration, along with the sentence quoted above and paragraph 7 of his declaration, further establish that the Terms of Service Agreement was signed during plaintiff's July 16, 2020 transaction with Quick Quack and that plaintiff's Visa card was charged $19.99 for a Shine 30 | **Ruling(s) on Objection(s)**<br><br>Sustained:<br><br>_____<br><br>Overruled:<br><br>_____ |

- 2 -

**EXHIBIT 1 - Page 173**

| | | | | |
|---|---|---|---|---|
| | | | Day Unlimited Membership Subscription.   Mr. Steele has made no inferences or engaged in speculation.  Rather, Mr. Steele relies on his personal knowledge of Quick Quack's business procedures, technology system, and the electronic records generated and kept in the regular course of Quick Quack's business.  Mr. Steele has such knowledge as Quick Quack's Director of Information Technology.  (Steele Decl. ¶ 8 at 1:9-16).  *See Borelli v. Black Diamond Aggregates, Inc.*, No. No. 2:14-cv-02093-KJM-KJN, 2017 U.S. Dist. LEXIS 40834, *14 (E.D. Cal. Mar. 21, 2017) (inferring from a general manager's personal knowledge of defendant's business practices, based on his position in the company, that the execution and maintenance of a signed arbitration agreement comported with defendant's ordinary method of doing business). | |
| 2. | "[T]he screen on the mobile tablet assigned to Mr. Souza on July 16, 2020, advanced to the screen displaying the full Terms of Service Agreement and the signature line for Ms. Curran to consent to the Terms of Service Agreement." Declaration of Joseph Steele ¶ 8 at 2:19-21. | Mr. Steele was not present at the time that the event took place, did not witness this event, and does not have personal knowledge of the event. | Mr. Steele relies on his personal knowledge of Quick Quack's business procedures, technology system, and the electronic records generated and kept in the regular course of Quick Quack's business.  Mr. Steele has such knowledge as Quick Quack's Director of Information Technology.  (Steele Decl. ¶ 8 at 1:9-16).  Mr. Steele does not testify that "Mr. Souza 'advanced to the screen . . .'" (Obj. at 1:12-13); he testifies that "the screen on the mobile tablet assigned to Mr. Souza on July 16, 2020, advanced to the screen . . . ," a fact of which he has personal knowledge based on his personal understanding of the technology systems Quick Quack employs when enrolling new members and his review of Quick Quack's business records of plaintiff's transaction with Quick Quack. *See Borelli*, 2017 U.S. Dist. LEXIS 40834, *14. | **Ruling(s) on Objection(s)** Sustained: _____ Overruled: _____ |

- 3 -

DEFENDANT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS

| 3. | Mr. Steele identifies Exhibit 3 as a "true copy of Ms. Curran's July 16, 2020 signature agreeing to Quick Quack's Terms of Service Agreement." Declaration of Joseph Steele ¶ 8 at 2:23-24. | Mr. Steele was not present at the time that the event took place, did not witness this event, and does not have personal knowledge of the event. | Mr. Steele relies on his personal knowledge of Quick Quack's business procedures, technology system, and the electronic records generated and kept in the regular course of Quick Quack's business. Mr. Steele has such knowledge as Quick Quack's Director of Information Technology. (Steele Decl. ¶ 8 at 1:9-16). Mr. Steele's testimony clearly establishes that the signature shown in Exhibit 3 is the signature to the Terms of Service Agreement recorded by Quick Quack during plaintiff's July 16, 2020 transaction with Quick Quack—a fact of which he has personal knowledge based on his personal understanding of the technology systems Quick Quack employs when enrolling new members and his review of Quick Quack's business records of plaintiff's transaction with Quick Quack—and therefore is plaintiff's signature to that agreement. *See Borelli*, 2017 U.S. Dist. LEXIS 40834, *14. | **Ruling(s) on Objection(s)** Sustained: _____ Overruled: _____ |

## II. DECLARATION OF JOHNATHAN SOUZA

| OBJ. # | MATERIAL OBJECTED TO | GROUND(S) FOR OBJECTION | QUICK QUACK'S RESPONSE | COURT'S RULINGS |
|---|---|---|---|---|
| 4. | "I understand that Quick Quack's records show that Randy Curran visited the Quick Quack Car Wash located at 3436 Northgate Boulevard, Sacramento, CA 95834 on July 16, 2020, and that I assisted Ms. Curran in enrolling in an unlimited monthly membership." Declaration of Johnathan Souza ¶ 8 at 2:3-5. | Mr. Souza relies on Quick Quack's records and not on his own knowledge and memory of the July 16, 2020 transaction with Ms. Curran. | Mr. Souza's testimony is not offered to establish the stated facts. Mr. Steele's declaration establishes the stated facts. (Steele Decl. ¶ 8 at 2:10-22.) Mr. Souza simply states his understanding based on Mr. Steele's testimony. | **Ruling(s) on Objection(s)** Sustained: _____ Overruled: _____ |

- 4 -

DEFENDANT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS

| 5. | "Based on my training and practice on July 16, 2020, that is Ms. Curran's signature accepting the Terms of Service Agreement captured by Quick Quack's computer system at 8:46 a.m. on July 16, 2020." Declaration of Johnathan Souza ¶ 8 at 2:8-10. | Mr. Souza relies on Quick Quack's records and not on his own knowledge and memory of the July 16, 2020 transaction with Ms. Curran. | This statement is based on Mr. Souza's personal knowledge of his own practices and procedures for enrolling customers as Quick Quack members on July 16, 2020, and the undisputed fact, established by Mr. Steele, that Mr. Souza assisted plaintiff in enrolling in a membership on July 16, 2020.  Mr. Souza testifies based on personal knowledge that he was trained, and it was his policy and practice on July 16, 2020, to "show the customer a mobile tablet screen containing Quick Quack's Terms of Service Agreement, allow the customer to scroll through/read the Terms of Service Agreement, and obtain the customer's signature agreeing to the Terms of Service Agreement."  (Souza Decl. ¶ 6 at 1:22-25.)  Mr. Steele testifies that Quick Quack captured a signature on the Terms of Service Agreement during plaintiff's July 16, 2020 transaction with Quick Quack, with which Mr. Souza assisted her.  (Steele Decl. ¶ 8 at 2:10-24.)  Based on these facts of which the declarants have personal knowledge, no inferences or presumptions are required for Mr. Souza's testimony that the signature on the Terms of Service Agreement captured by Quick Quack's computer system at 8:46 a.m. on July 16, 2020, shown in Exhibit 3 to Mr. Steele's declaration, is plaintiff's signature. | **Ruling(s) on Objection(s)**<br><br>Sustained:<br><br>_____<br><br>Overruled:<br><br>_____ |

Dated: _____     _____

The Honorable David I. Brown
Judge of the Superior Court

//

//

//

- 5 -

DEFENDANT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS

1    Dated:  October 5, 2020                    WHITE & CASE LLP

2                                               By: _____

3                                                    Bryan A. Merryman

4                                               Attorneys for Defendant
                                                QUICK QUACK CAR WASH HOLDINGS,
5                                               LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMERICAS 104112856                                              DEFENDANT'S RESPONSE TO
                                                PLAINTIFF'S EVIDENTIARY OBJECTIONS

**EXHIBIT 1 - Page 177**

FILED
ENDORSED

2020 OCT 22  AM 9:31

LAW AND MOTION DEPT. 53/54
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1  WHITE & CASE LLP
BRYAN A. MERRYMAN (SBN 134357)
2  bmerryman@whitecase.com
CATHERINE S. SIMONSEN (SBN 307325)
3  catherine.simonsen@whitecase.com
555 S. Flower Street, Suite 2700
4  Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
5  Facsimile:  (213) 452-2329

6  Attorneys for Defendant
QUICK QUACK CAR WASH HOLDINGS,
7  LLC

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            FOR THE COUNTY OF SACRAMENTO

10

11  RANDY CURRAN, individually and on behalf      Case No. 34-2020-00282263
    of all others similarly situated,             (Assigned to Complex Civil Dept. 40
12                                                 Judge Richard K. Sueyoshi)
                    Plaintiff,
13                                                 **JOINT STIPULATION AND
                                                   [PROPOSED] ORDER TO EXTEND
14        v.                                       TIME FOR DEFENDANT QUICK
                                                   QUACK CAR WASH HOLDINGS,
15  QUICK QUACK CAR WASH HOLDINGS,                 LLC TO RESPOND TO PLAINTIFF
    LLC, a Delaware Limited Liability Company;     RANDY CURRAN'S COMPLAINT
16  and Does 1-50 inclusive,                       BY 30 DAYS, TO NOVEMBER 30,
                                                   2020**
17                  Defendants.
                                                   Dept.:  53
18                                                 Judge:  Hon. David I. Brown

19                                                 Complaint Filed:  July 24, 2020

20

21

22

23

24

25

26

27

28

AMERICAS 104530428

JOINT STIPULATION TO EXTEND TIME TO RESPOND TO
COMPLAINT AND [PROPOSED] ORDER

BY FAX

**EXHIBIT 1 - Page 178**

1    **JOINT STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT**

2    **AND [PROPOSED] ORDER**

3        WHEREAS, pursuant to Cal. Civ. Proc. Code § 1281.7, defendant Quick Quack Car Wash

4    Holdings, LLC's ("Quick Quack") deadline to answer or otherwise respond to plaintiff Randy

5    Curran's complaint is October 28, 2020;

6        WHEREAS, the parties are negotiating a potential resolution of this action that would

7    obviate the need for Quick Quack to file a demurrer to plaintiff's complaint and conserve judicial

8    resources;

9        WHEREAS, it is in the interests of the parties and the Court to resolve this action;

10        WHEREAS, because any demurrer filed by Quick Quack will not be heard until January

11    28, 2021 (the next available hearing date for a demurrer, which date Quick Quack has reserved),

12    this extension will not delay this action;

13        WHEREAS, this stipulation is filed in good faith and not for purposes of delay.

14        **NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, pursuant to

15    Cal. Civ. Proc. Code § 1054(b), that Quick Quack's deadline to answer or otherwise respond to

16    plaintiff's complaint is extended by 30 days, from October 28, 2020, to November 30, 2020.

17

18    Dated: October 20, 2020           WHITE & CASE LLP

19                         By: _____

20                             Bryan A. Merryman

21                       Attorneys for Defendant
                        QUICK QUACK CAR WASH HOLDINGS,

22                       LLC

23    Dated: October 20, 2020           DOSTART HANNINK & COVENEY LLP

24

25                         By: _____
                         Zach P. Dostart

26                       Zach P. Dostart
                     James T. Hannink

27                       DOSTART HANNINK & COVENEY LLP
                     4180 La Jolla Village Dr., Ste. 530

28                       La Jolla, CA 92037-1474

- 2 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299

Attorneys for Plaintiff
RANDY CURRAN

**SO ORDERED.**

DATED:  OCT 2 2 2020

DAVID I. BROWN

THE HONORABLE DAVID I. BROWN
JUDGE OF THE SUPERIOR COURT

- 3 -

1

## PROOF OF SERVICE

2

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18

3

and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700, Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose

4

direction the service was made.

5

    On October 20, 2020 before 5:00 p.m., I served the foregoing document(s) described as:

6

**JOINT STIPULATION TO EXTEND TIME TO RESPOND TO COMPLAINT**

7

**AND [PROPOSED] ORDER**

8

on the person(s) below, as follows:

9

    Zach P. Dostart
    James T. Hannink

10

    DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Dr., Ste. 530

11

    La Jolla, CA 92037-1474
    Telephone:  (858) 623-4200

12

    Facsimile:  (858) 623-4299
    Email: ZDostart@sdlaw.com

13

    Email: JHannink@sdlaw.com
    Email: CKlobucar@sdlaw.com

14

    Email: LDozier@sdlaw.com

15

    Attorneys for Plaintiff
    RANDY CURRAN

16

    ☒    **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on an agreement of

17

    the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the e-mail address(es) listed above.  The

18

    transmission was reported as complete and without error.

19

    Executed October 20, 2020, at Los Angeles, California.

20

    I declare under penalty of perjury under the laws of the State of California and the United

21

States of America that the above is true and correct.

22

23

                                         Irma Mares

24

25

26

27

28

- 4 -

PROOF OF SERVICE

**EXHIBIT 1 - Page 181**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SACRAMENTO
GORDON D SCHABER COURTHOUSE**

**MINUTE ORDER**

DATE: 11/02/2020                    TIME: 04:23:00 PM        DEPT:  40

JUDICIAL OFFICER PRESIDING: Richard K. Sueyoshi
CLERK:  K. Madden
REPORTER/ERM: NONE
BAILIFF/COURT ATTENDANT: NONE

CASE NO: **34-2020-00282263-CU-BT-GDS** CASE INIT.DATE: 07/24/2020
CASE TITLE: **Curran vs. Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company**
CASE CATEGORY: Civil - Unlimited

**EVENT TYPE**: Case Management Conference - Complex

**APPEARANCES**

**Nature of Proceedings: Case Management Conference**

The Court continues this matter, scheduled February 12, 2021 at 10:30 a.m., to **February 11, 2021 at 10:30 a.m.**

Except for law and motion matters that are brought before the Law and Motion Departments pursuant to Local Rule 2.30, the parties shall provide courtesy copies of any filings to Department 40.  In light of the COVID-19 pandemic and until full in-person operations are restored, parties shall provide courtesy copies by email to Dept40@saccourt.ca.gov, and not in-person.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

Gordon D Schaber Courthouse
720  Ninth STREET
Sacramento, CA 95814-1311

**SHORT TITLE:** Curran vs. Quick Quack Car Wash Holdings, LLC, a Delaware limited liability company

| CLERK'S CERTIFICATE OF SERVICE BY MAIL (Minute Order) | CASE NUMBER:<br>34-2020-00282263-CU-BT-GDS |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the Minute Order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Sacramento, California, on 11/03/2020.

Clerk of the Court, by: _/s/ K. Madden_

_____ , Deputy

ZACH  P DOSTART
SOSTART HANNINK & COVENEY LLP
4180  LA JOLLA VILLAGE DRIVE # 530
LA JOLLA, CA 92037-1474

BRYAN  A MERRYMAN
WHITE & CASE LLP
555 S FLOWER STREET # 2700
LOS ANGELES, CA 90071

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

**EXHIBIT 1 - Page 183**

Code of Civil Procedure , § CCP1013(a)

1

2   WHITE & CASE LLP
    BRYAN A. MERRYMAN (SBN 134357)
3   bmerryman@whitecase.com
    CATHERINE S. SIMONSEN (SBN 307325)
4   catherine.simonsen@whitecase.com
    555 S. Flower Street, Suite 2700
5   Los Angeles, CA  90071-2433
    Telephone:  (213) 620-7700
6   Facsimile:  (213) 452-2329

7   Attorneys for Defendant
    QUICK QUACK CAR WASH HOLDINGS,
8   LLC

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   FOR THE COUNTY OF SACRAMENTO

11

12  RANDY CURRAN, individually and on behalf      Case No. 34-2020-00282263
    of all others similarly situated,             (Assigned to Complex Civil Dept. 40
13                                                 Judge Richard K. Sueyoshi)
                  Plaintiff,
14                                                 **SECOND JOINT STIPULATION
         v.                                        AND [PROPOSED] ORDER TO
15                                                 EXTEND TIME FOR DEFENDANT
    QUICK QUACK CAR WASH HOLDINGS,                 QUICK QUACK CAR WASH
16  LLC, a Delaware Limited Liability Company;     HOLDINGS, LLC TO RESPOND TO
    and Does 1-50 inclusive,                       PLAINTIFF RANDY CURRAN'S
17                                                 COMPLAINT, BY 23 DAYS, TO
                  Defendants.                      DECEMBER 23, 2020**
18
                                                   Dept.: 53
19                                                 Judge:  Hon. David I. Brown
20                                                 Complaint Filed:  July 24, 2020
21

22

23

24

25

26

27

28

FILED
AND ORSED

2020 NOV 18  AM 10: 13

LAW AND MOTION DEPT. 53/54
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

RECEIVED
NOV 13 2020

BY FAX

1  |  **SECOND JOINT STIPULATION TO EXTEND TIME TO**

2  |  **RESPOND TO COMPLAINT AND [PROPOSED] ORDER**

3  |      WHEREAS, pursuant to a prior stipulation between the parties to extend, and subsequent

4  |  order by the Court extending, the deadline for defendant Quick Quack Car Wash Holdings, LLC

5  |  ("Quick Quack") to answer or otherwise respond to plaintiff Randy Curran's complaint by 30

6  |  days, Quick Quack's deadline to answer or otherwise respond to the complaint is November 30,

7  |  2020;

8  |      WHEREAS, the parties have scheduled a mediation for December 3, 2020, to continue

9  |  negotiating a potential resolution of this action that would obviate the need for Quick Quack to

10 |  file a demurrer to plaintiff's complaint and conserve judicial resources;

11 |      WHEREAS, it is in the interests of the parties and the Court to resolve this action;

12 |      WHEREAS, because any demurrer filed by Quick Quack will not be heard until January

13 |  28, 2021 (the next available hearing date for a demurrer, which date Quick Quack has reserved),

14 |  this proposed extension will not delay this action; and

15 |      WHEREAS, this stipulation is filed in good faith and not for purposes of delay.

16 |      **NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, pursuant to

17 |  Cal. Civ. Proc. Code § 1054(b), that Quick Quack's deadline to answer or otherwise respond to

18 |  plaintiff's complaint is extended by 23 days, from November 30, 2020, to December 23, 2020.

19 |

20 |  Dated:  November 12, 2020          WHITE & CASE LLP

21 |                                    By:

22 |                                        Bryan A. Merryman

23 |                                 Attorneys for Defendant<br>QUICK QUACK CAR WASH HOLDINGS,

24 |                                 LLC

25 |  Dated:  November 12, 2020          DOSTART HANNINK & COVENEY LLP

26 |

27 |                                 By:           Zach P. Dostart

28 |                                 Zach P. Dostart

- 2 -

1

2

3

James T. Hannink
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Dr., Ste. 530
La Jolla, CA 92037-1474
Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299

4

5

Attorneys for Plaintiff
RANDY CURRAN

**SO ORDERED.**

6

7

DATED:  NOV 1 8 2020

8

9

DAVID I. BROWN

THE HONORABLE DAVID I. BROWN
JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

SECOND JOINT STIPULATION TO EXTEND TIME TO
RESPOND TO COMPLAINT AND [PROPOSED] ORDER

**EXHIBIT 1 - Page 186**

1

PROOF OF SERVICE

2

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18

3

and not a party to the within action.  My business address is 555 South Flower Street, Suite 2700, Los Angeles, CA  90071-2433.  I am employed by a member of the Bar of this Court at whose

4

direction the service was made.

5

    On November 12, 2020 before 5:00 p.m., I served the foregoing document(s) described as:

6

**SECOND JOINT STIPULATION TO EXTEND TIME TO RESPOND TO**

7

**COMPLAINT AND [PROPOSED] ORDER**

8

on the person(s) below, as follows:

9

    Zach P. Dostart
    James T. Hannink

10

    DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Dr., Ste. 530

11

    La Jolla, CA 92037-1474
    Telephone:  (858) 623-4200

12

    Facsimile:  (858) 623-4299
    Email: ZDostart@sdlaw.com

13

    Email: JHannink@sdlaw.com
    Email: CKlobucar@sdlaw.com

14

    Email: LDozier@sdlaw.com

15

    Attorneys for Plaintiff
    RANDY CURRAN

16

    ☒    **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**  Based on an agreement of

17

        the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the e-mail address(es) listed above.  The

18

        transmission was reported as complete and without error.

19

    Executed November 12, 2020, at Los Angeles, California.

20

    I declare under penalty of perjury under the laws of the State of California and the United

21

States of America that the above is true and correct.

22

23

                                Irma Mares

24

25

26

27

28

- 4 -

PROOF OF SERVICE

**EXHIBIT 1 - Page 187**

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel:  858-623-4200
5  Fax: 858-623-4299
6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SACRAMENTO

10

11  RANDY CURRAN,                          CASE NO. 34-2020-00282263-CU-BT-GDS
    individually and on behalf of all others
12  similarly situated,                    CLASS ACTION

13              Plaintiff,                 FIRST AMENDED COMPLAINT FOR:

14  vs.                                    (1) FALSE ADVERTISING (BASED ON
                                           VIOLATION OF THE CALIFORNIA
15  QUICK QUACK CAR WASH HOLDINGS,         AUTOMATIC RENEWAL LAW)
    LLC, a Delaware limited liability company;  [Bus. & Prof. Code, § 17600 et seq. and
16  and DOES 1-50, inclusive,              § 17535];
17              Defendants.
                                           (2) VIOLATION OF THE CALIFORNIA
18                                         CONSUMERS LEGAL REMEDIES ACT
                                           [Civ. Code, § 1750 et seq.];
19
                                           (3) UNFAIR COMPETITION
20                                         [Bus. & Prof. Code, § 17200 et seq.]; and
21
                                           (4) VIOLATION OF THE ELECTRONIC
22                                         FUNDS TRANSFER ACT
                                           [15 U.S.C. § 1693 et seq.]
23
24                                         DEMAND FOR JURY TRIAL

25

26

27

28

FIRST AMENDED COMPLAINT

EXHIBIT 1 - Page 188

**INTRODUCTION**

1.    This class action complaint alleges that defendant Quick Quack Car Wash Holdings, LLC ("Quick Quack") violates California law in connection with a subscription program operated under the name Unlimited Car Wash Membership (the "Membership"). Among other things, Quick Quack enrolls consumers in the Membership program without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported membership charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of California's False Advertising Law; the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"); the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL"); and the Electronic Funds Transfer Act (15 U.S.C. § 1693 et seq.) ("EFTA").

**THE PARTIES**

2.    Plaintiff Randy Curran ("Plaintiff") is an individual residing in Sacramento County, California.

3.    Plaintiff is informed and believes and thereon alleges that defendant Quick Quack Car Wash Holdings, LLC ("Quick Quack") is a limited liability company organized under the laws of Delaware and has its principal place of business in Roseville, California. Quick Quack has car wash locations throughout the State of California in addition to other locations within the United States.

4.    Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated in some respect with the named defendant and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other defendants. For ease of reference, Plaintiff will refer to the named defendant and the DOE defendants collectively as "Defendants."

FIRST AMENDED COMPLAINT **EXHIBIT 1 - Page 189**

1

**VENUE**

2    5.    Venue is proper in this judicial district because Defendants do business in this

3    judicial district and a material part of the complained of conduct occurred in this judicial district.

4

**SUMMARY OF APPLICABLE LAW**

5    6.    In 2009, the California Legislature passed Senate Bill 340, which took effect on

6    December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law.  (Bus. & Prof. Code,

7    § 17600 *et seq*. (the California Automatic Renewal Law or "ARL").)  (Unless otherwise stated, all

8    statutory references are to the Business & Professions Code).  SB 340 was introduced because:

9
10
11
12

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

13    (See Exhibit 1 at p. 4.)

14    7.    The Assembly Committee on Judiciary provided the following background for the

15    legislation:

16
17
18
19

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

20    (See Exhibit 2 at p. 8.)

21    8.    The ARL seeks to ensure that, before there can be a legally-binding automatic

22    renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of

23    certain terms and conditions and affirmative consent by the consumer.  To that end, § 17602(a)

24    makes it unlawful for any business making an automatic renewal offer or a continuous service

25    offer to a consumer in California to do any of the following:

26        a.    Fail to present the automatic renewal offer terms or continuous service offer

27    terms in a clear and conspicuous manner before the subscription or purchasing agreement is

28    fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal

3

FIRST AMENDED COMPLAINT **EXHIBIT 1 - Page 190**

1  proximity, to the request for consent to the offer.  For this purpose, "clear and conspicuous" means

2  "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding

3  text of the same size, or set off from the surrounding text of the same size by symbols or other

4  marks, in a manner that clearly calls attention to the language." (§ 17601(c).)  "In the case of an

5  audio disclosure, 'clear and conspicuous' … means in a volume and cadence sufficient to be

6  readily audible and understandable." (*Ibid*.)  The statute defines "automatic renewal offer terms"

7  to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or

8  purchasing agreement will continue until the consumer cancels; (2) the description of the

9  cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the

10  consumer's credit or debit card or payment account with a third party as part of the automatic

11  renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and

12  the amount to which the charge will change, if known; (4) the length of the automatic renewal

13  term or that the service is continuous, unless the length of the term is chosen by the consumer; and

14  (5) the minimum purchase obligation, if any.  (Bus. & Prof. Code § 17601(b).)

15         b.     Charge the consumer's credit or debit card or the consumer's account with a

16  third party for an automatic renewal or continuous service without first obtaining the consumer's

17  affirmative consent to the agreement containing the automatic renewal offer terms or continuous

18  service offer terms, including the terms of an automatic renewal offer or continuous service offer

19  that is made at a promotional or discounted price for a limited period of time.  (Bus. & Prof. Code

20  § 17602(a)(2).)

21         c.     Fail to provide an acknowledgment that includes the automatic renewal or

22  continuous service offer terms, cancellation policy, and information regarding how to cancel in a

23  manner that is capable of being retained by the consumer.  (Bus. & Prof. Code, § 17602(a)(3).)

24  Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free

25  telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use"

26  mechanism for cancellation.

27         9.     If a business sends any goods, wares, merchandise, or products to a consumer

28  under a purported automatic renewal or continuous service arrangement without first obtaining the

1    consumer's affirmative consent to an agreement containing the "clear and conspicuous"

2    disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to

3    be an unconditional gift to the consumer, who may use or dispose of them without any obligation

4    whatsoever.  (Bus. & Prof. Code, § 17603.)  Violation of the ARL gives rise to restitution and

5    injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof.,

6    Code § 17535.  (Bus. & Prof. Code, § 17604(a).)  As well, violation of the ARL gives rise to

7    restitution and injunctive relief under the UCL.

8                         **PLAINTIFF'S TRANSACTION WITH DEFENDANTS**

9         10.    On July 16, 2020, Plaintiff visited the Quick Quack Car Wash located at 3436

10   Northgate Boulevard, Sacramento, CA 95834 to get a regular car wash at a cost of $7.99.  The car

11   wash attendant offered Plaintiff an upgraded car wash at the cost of $9.99, and Plaintiff accepted

12   that offer.  Plaintiff provided the car wash attendant with her credit card to complete the $9.99

13   purchase.

14        11.    At the time of purchase, the car wash attendant did not ask Plaintiff if she wanted to

15   enroll in a Membership program, and Plaintiff did not consent to enroll in a Membership.  After

16   the credit card transaction was completed, the car wash attendant did not provide Plaintiff with any

17   paperwork regarding a Membership.

18        12.    On July 21, 2020, Plaintiff noticed a charge in the amount of $19.99 on her credit

19   card.  Plaintiff immediately called Quick Quack, and she was offered a refund in the amount of

20   $11.00 by the telephone agent.  Later that day, Plaintiff realized that the $19.99 charge was an

21   automatically renewing charge, so she called Quick Quack back and asked to speak with a

22   manager.  Plaintiff received a call back from the Store Lead, Cat, who admitted wrongdoing by the

23   car wash attendant.  The Store Lead offered Plaintiff a six month full service offer, conditioned

24   upon approval of the Regional Supervisor.  Plaintiff has not accepted that offer.

25        13.    If Plaintiff had known that Defendants were going to enroll her in an automatically

26   renewing membership program, Plaintiff would not have gone to Quick Quack for a car wash and

27   she would not have paid any money to Defendants.

28

5

1      14.    Plaintiff alleges that Defendants' act of enrolling her in a Membership without

2  consent is not a singular incident, and that Defendants knowingly implement that practice on a

3  routine basis with respect to other consumers.  Moreover, Plaintiff alleges that Defendants'

4  employees do not verbally disclose the terms of Membership to consumers, in violation of

5  California law.

6          **DISCLOSURES ON DEFENDANT'S WEBSITE**

7      15.    On Quick Quack's website ([www.dontdrivedirty.com](http://www.dontdrivedirty.com)), the only mention of a

8  Membership is under the FAQ tab, where a viewer must physically click down on the question,

9  "When will I get charged for my Unlimited Car Wash Membership." Defendants' answer to that

10  question is simply, "Your credit card will be charged every 30 days from the day that you sign

11  up." This question and answer does not disclose the terms of the Membership as required under

12  California law.  A true and correct copy of this FAQ question and answer from Quick Quack's

13  website is attached hereto as Exhibit 3.

14      16.    In order to learn about an automatically renewing Membership, a consumer must

15  first determine which location they are selecting to go to.  Once they select the location within the

16  Locations & Pricing page, they are presented with three different options: "BEST – Lucky Duck;"

17  "BETTER;" and "GOOD."  Each of the three options has a "Buy One" price and a "Go

18  Unlimited" price.  Next to the "Go Unlimited" price, there is an asterisk.  In much smaller font

19  below the three pricing options is the following statement: "*Monthly Autopay membership.  Additional

20  $5 for 30 day passes.  Please see terms and conditions." A true and correct copy of the pricing page from

21  Quick Quack's website is attached hereto as Exhibit 4.  Such disclosure does not meet the

22  requirements of the ARL.

23          **CLASS ACTION ALLEGATIONS**

24      17.    Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382

25  on behalf of the following Class: "All individuals in California who were (1) enrolled by Quick

26  Quack Car Wash in an Unlimited Car Wash Membership program on or after December 1, 2010

27  and (2) charged by Quick Quack Car Wash for a Unlimited Car Wash Membership program

28  within the applicable statute of limitations.  Excluded from the Class are all employees of

1   Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is
2   assigned."

3       18.    Ascertainability.   The members of the Class may be ascertained by reviewing
4   records in the possession of Defendants and/or third parties, including without limitation
5   Defendants' marketing and promotion records, customer records, and billing records.

6       19.    Common Questions of Fact or Law.   There are questions of fact or law that are
7   common to the members of the Class, which predominate over individual issues.   Common
8   questions regarding the Class include, without limitation: (1) Whether Defendants present all
9   statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous
10  within the meaning of California law and in visual proximity to a request for consent to the offer
11  (or in the case of an offer conveyed by voice, in temporal proximity to a request for consent to the
12  offer); (2) Defendants' policies, practices and procedures for obtaining affirmative consent from
13  customers before charging a credit card, debit card, or third-party payment account; (3) whether
14  Defendants provide consumers with an acknowledgment that includes clear and conspicuous
15  disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding
16  a mechanism for cancellation that is cost-effective, timely, and easy to use; (4) Defendants'
17  record-keeping practices; and (5) the appropriate remedies for Defendants' conduct.

18      20.    Numerosity.   The Class is so numerous that joinder of all Class members would be
19  impracticable.   Plaintiff is informed and believe and thereon allege that the Class consists of at
20  least 100 members.

21      21.    Typicality and Adequacy.   Plaintiff's claims are typical of the claims of the Class
22  members.   Plaintiff alleges on information and belief that Defendants enrolled her and other Class
23  members in automatic renewal or continuous service programs without disclosing all automatic
24  renewal offer terms required by law, and without presenting such terms in the requisite clear and
25  conspicuous manner; charged Plaintiff's and Class members' credit cards, debit cards, or third-
26  party accounts without first obtaining affirmative consent to an agreement containing clear and
27  conspicuous disclosure of all automatic renewal offer terms; and failed to provide the requisite
28  acknowledgment with the required disclosures.   Plaintiff has no interests that are adverse to those

FIRST AMENDED COMPLAINT

7

EXHIBIT 1 - Page 194

1  of the other Class members.  Plaintiff will fairly and adequately protect the interests of the Class

2  members.

3         22.    <u>Superiority</u>.   A class action is superior to other methods for resolving this

4  controversy.  Because the amount of restitution to which each Class member may be entitled is

5  low in comparison to the expense and burden of individual litigation, it would be impracticable for

6  Class members to redress the wrongs done to them without a class action forum.  Furthermore, on

7  information and belief, Class members do not know that their legal rights have been violated.

8  Class certification would also conserve judicial resources and avoid the possibility of inconsistent

9  judgments.

10        23.    <u>Risk of Inconsistent or Varying Adjudications</u>.   Prosecuting separate actions by

11  individual Class members would create a risk of inconsistent or varying adjudications with respect

12  to individual Class members that would establish incompatible standards of conduct for

13  Defendants.  As a practical matter, adjudication with respect to individual Class members would

14  be also dispositive of the interests of others not parties to the individual adjudications or would

15  substantially impair or impede their ability to protect their interests.

16        24.    <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>.  Defendants

17  have acted on grounds that are generally applicable to each Class member, thereby making

18  appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

19                          **FIRST CAUSE OF ACTION**

20        False Advertising (Based on Violation of the California Automatic Renewal Law)

21                  (Bus. & Prof. Code, § 17600 et seq. and § 17535)

22        25.    Plaintiff incorporates the previous allegations as though fully set forth herein.

23        26.    Plaintiff is informed and believes and thereon alleges that, during the applicable

24  statute of limitations period, Defendants have enrolled consumers, including Plaintiff and Class

25  members, in an automatic renewal program and have violated the ARL by, among other things,

26  (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a

27  subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer

28  conveyed by voice, in temporal proximity, to a request for consent to the offer; (b) charging the

8

FIRST AMENDED COMPLAINT

EXHIBIT 1 - Page 195

1  consumer's credit card, debit card, or third-party payment account for an automatic renewal

2  without first obtaining the consumer's affirmative consent to an agreement containing clear and

3  conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an

4  acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer

5  terms, the cancellation policy, and information regarding how to cancel in a manner that is capable

6  of being retained by the consumer and that provides a mechanism for cancellation that is cost-

7  effective, timely, and easy to use, all in violation of § 17602(a) and (b).

8        27.     Plaintiff has suffered injury in fact and lost money as a result of Defendants'

9  violations of the ARL.

10        28.     Pursuant to Bus. & Prof. Code § 17535, Plaintiff and Class members are entitled to

11  restitution of all amounts that Defendants charged to Plaintiff's and Class members' credit cards,

12  debit cards, or third-party payment accounts in connection with an automatic renewal membership

13  program during the four years preceding the filing of this Complaint and continuing until

14  Defendants' statutory violations cease.

15        29.     Unless enjoined and restrained by this Court, Defendants will continue to commit

16  the violations alleged herein.  Pursuant to § 17535, on behalf of herself, the Class members, and

17  for the benefit of the general public of the State of California, Plaintiff seeks an injunction

18  prohibiting Defendants from continuing their unlawful practices as alleged herein.

19  **SECOND CAUSE OF ACTION**

20  Violation of the California Consumers Legal Remedies Act

21  (Civ. Code, § 1750 et seq.)

22        30.     Plaintiff incorporates the allegations of paragraphs 1-24 as though set forth herein.

23        31.     Plaintiff and Class members are "consumers" within the meaning of Civil Code

24  § 1761(d) in that Plaintiff and Class members sought or acquired Defendants' goods and/or

25  services for personal, family, or household purposes.

26        32.     Defendants' car washes and membership program pertain to a "good" or "service"

27  within the meaning of Civil Code § 1761(a) and (b).

28

9

FIRST AMENDED COMPLAINT

EXHIBIT 1 - Page 196

33.    The payments by Plaintiff and Class members are "transactions" within the meaning of Civil Code § 1761(e).

34.    Defendants have violated Civil Code § 1770, subdivisions (a)(5), (9), and (14), by representing that Defendants' goods or services have characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; and representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

35.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to Civil Code § 1780(a)(2), on behalf of the Class and also for the benefit of the general public of the State of California, Plaintiff seeks an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## THIRD CAUSE OF ACTION

Violation of the Unfair Competition Law

(Bus. & Prof. Code, § 17200 et seq.)

36.    Plaintiff incorporates the previous allegations as though fully set forth herein.

37.    The Unfair Competition Law defines unfair competition as including any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500.  (Bus. & Prof. Code, § 17200.)

38.    In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes

clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding a cancellation mechanism that is cost-effective, timely, and easy-to-use, and failing to provide such an acknowledgment in a manner capable of being retained by the consumer, in violation of § 17602(a)(3); (d) representing that Defendants' goods or services have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5); (e) advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); and (f) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Civil Code § 1770(a)(14). Plaintiff reserves the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

39.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

40.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

41.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

42.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

43.    Pursuant to § 17203, Plaintiff and the Class members are entitled to restitution of all amounts paid to Defendants in connection with an automatic renewal membership program in the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

44.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to § 17203, on behalf of the Class, and also for the benefit

FIRST AMENDED COMPLAINT        11

**EXHIBIT 1 - Page 198**

1 of the general public of the State of California, Plaintiff seeks an injunction prohibiting

2 Defendants from continuing their unlawful practices as alleged herein.

3 **FOURTH CAUSE OF ACTION**

4 Violation of the Electronic Funds Transfer Act

5 (15 U.S.C. § 1693 et seq.)

6 45.    Plaintiff incorporates paragraphs 1-24 as though set forth herein.

7 46.    The EFTA establishes the rights, liabilities, and responsibilities of participants in an

8 electronic fund transfer system.  (15 U.S.C. § 1693 et seq.)

9 47.    Defendants' transfers of money from the bank accounts of Plaintiff and certain

10 Class members via their debit cards, as alleged herein, are "electronic fund transfers" within the

11 meaning of the EFTA and its implementing regulations, Regulation E, 12 C.F.R. § 205 et seq.

12 48.    The EFTA provides that a preauthorized electronic fund transfer from a consumer's

13 account may be authorized only by a writing signed or similarly authenticated by the consumer,

14 and that the person who obtains an authorization must provide a copy to the consumer.  (12 C.F.R.

15 § 205.10(b).)

16 49.    Plaintiff is informed and believes and thereon alleges that Defendants initiated

17 preauthorized transfers via debit cards and took money from the bank accounts of Plaintiff and

18 certain Class members without obtaining their written authorization and/or without providing a

19 copy of a such a written authorization.  As a result of Defendants' violations of the EFTA,

20 including Regulation E, Plaintiff and certain Class members are entitled to recover actual damages

21 and/or statutory damages pursuant to 15 U.S.C. § 1693m(a).

22 **PRAYER**

23 WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

24 On the First Cause of Action (False Advertising – Based on Violation of the ARL):

25 1.    For restitution;

26 2.    For injunctive relief, including a public injunction for the benefit of the People of

27 the State of California;

28

1     On the Second Cause of Action (Violation of the CLRA):

2     3.      For injunctive relief, including a public injunction for the benefit of the People of

3   the State of California;

4     4.      For reasonable attorneys' fees, pursuant to Civil Code § 1780(e);

5     On the Third Cause of Action (Unfair Competition):

6     5.      For restitution;

7     6.      For injunctive relief, including a public injunction for the benefit of the People of

8   the State of California;

9     On the Fourth Cause of Action (Violation of EFTA):

10    7.      For compensatory damages and/or statutory damages;

11    8.      For reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);

12    On All Causes of Action:

13    9.      For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

14    10.     For costs of suit;

15    11.     For pre-judgment interest; and

16    12.     For such other relief as the Court may deem just and proper.

17   Dated:  December 21, 2020               DOSTART HANNINK & COVENEY LLP

18

19                                          _____
                                            ZACH P. DOSTART
20                                          Attorneys for Plaintiff

21

22                              **DEMAND FOR JURY TRIAL**

23      Plaintiff hereby demands a trial by jury of all claims and causes of action so triable.

24   Dated:  December 21, 2020               DOSTART HANNINK & COVENEY LLP

25

26                                          _____
                                            ZACH P. DOSTART
27                                          Attorneys for Plaintiff

     935764.2
28

FIRST AMENDED COMPLAINT **EXHIBIT 1 - Page 200**

Exhibit 1

EXHIBIT 1 - Page 201

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had



not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## <u>CHANGES TO EXISTING LAW</u>

<u>Existing law</u>, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

<u>Existing law</u>, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

<u>Existing law</u> provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

<u>Existing law</u> provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

<u>Existing law</u> provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

<u>Existing law</u> provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)



**EXHIBIT 1 - Page 203**


<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.  All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.  Both of the following:
    a. on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and

    b. the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information.  The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.  In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.  The automatic

**EXHIBIT 1 - Page 204**

(800) 666-1917

LEGISLATIVE INTENT SERVICE



renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms."  (*See* Comment 4.)

## **COMMENT**

1.  <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations.  The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions.  The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.



**EXHIBIT 1 - Page 205**

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers.  Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science.  Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers.  The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election."  The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal.  (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time.  In the Assurance, Time agreed to:

- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer.  Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

(800) 666-1917    LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 206**

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4.  Key terms defined

This bill would define the following key terms:

a. "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.

b. "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:

- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.

c. "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.

d. "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.  Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices. The rule requires, among other things, that telemarketers make

(800) 666-1917

LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 207**

and maintain an audio recording of all telephone solicitations.  (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6.  <u>Author's amendments</u>

On page 3, line 17, insert:
(c)  "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

<b><u>HISTORY</u></b>

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

************

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**EXHIBIT 1 - Page 208**

Exhibit 2

**EXHIBIT 1 - Page 209**

Date of Hearing:  June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE:  37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN
"AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND
CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES,
AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC
RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

**SYNOPSIS**

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to
protect consumers from unwittingly consenting to "automatic renewals" of subscription orders
or other "continuous service" offers.  According to the author and supporters, consumers are
often charged for renewal purchases without their consent or knowledge.  For example,
consumers sometimes find that a magazine subscription renewal appears on a credit card
statement even though they never agreed to a renewal.  Indeed, this problem led 23 state
attorneys general to launch an investigation of Time, Inc., in response to claims that the
company used deceptive practices in signing up customers for automatic subscription renewals.
As part of a settlement of this dispute, Time agreed to institute new practices so that customers
are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead
of the Times' settlement, would require that renewal terms and cancellation policies be clearly
and conspicuously presented to the consumer, whether the offer is made on printed material or
through a telephone solicitation.  In addition, the bill would require that the consumer make
some affirmative acknowledgement before an order with an automatic renewal can be
completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a
crime.  The author has worked closely with affected business interests and has made several
amendments that appear to address all stakeholders' concerns.  There is no registered
opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service"
offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the
consumer's affirmative consent to the offer.  Specifically, this bill:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous
service offer to a consumer to do any of the following:

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed. Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA). (Business & Professions Code Section 17200 *et seq.*)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

**EXHIBIT 1 - Page 211**

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

COMMENTS:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

(800) 666-1917

LEGISLATIVE INTENT SERVICE

**EXHIBIT 1 - Page 212**

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:   Thomas Clark / JUD. / (916) 319-2334



LEGISLATIVE INTENT SERVICE        (800) 666-1917

**EXHIBIT 1 - Page 213**

Exhibit 3

EXHIBIT 1 - Page 214

# FAQ

— When will I get charged for my Unlimited Car Wash Membership?

  Your credit card will be charged every 30 days from the day that you sign up.

---

+ Do you have Fleet, Bulk Discount Programs?

+ Do you use brushes? Are you touchless?

+ Are my tires too wide?

+ Why do I have to clean out my truck bed before going through the wash?

+ I have a bug shield or bike rack, etc. Is it safe?

+ Is my vehicle too tall?

+ Are the vacuums really free?

+ How do I modify or cancel my Unlimited Membership?

+ Why is my car still wet after the dry cycle?

+ How does the 48 Hour Rain Check Work?

+ What is a Clean Car Guarantee?

**EXHIBIT 1 - Page 215**

# Exhibit 4

**EXHIBIT 1 - Page 216**



**EXHIBIT 1 - Page 217**

**PROOF OF SERVICE**

*Curran v. Quick Quack Car Wash Holdings, LLC*, **Case No. 34-2020-00282263-CU-BT-GDS**

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037-1474.

On December 21, 2020, I served true copies of the following document described as

**FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

> Bryan A. Merryman
> bmerryman@whitecase.com
> Catherine S. Simonsen
> catherine.simonsen@whitecase.com
> Ashley Bean
> ashley.bean@whitecase.com
> WHITE & CASE LLP
> 555 South Flower Street, Suite 2700
> Los Angeles, CA  90071-2433
> Tel: (213) 620-7700
> Fax: (213) 452-2329

*Counsel for Defendant*

**BY E-MAIL:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document to be sent from e-mail address ldozier@sdlaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 21, 2020, at La Jolla, California.

_____
Lisa A. Dozier

**EXHIBIT 1 - Page 218**